John Foster Wallace
McCONAHY, ZIMMERMAN & WALLACE
711 Gaffney Road, Suite 202
Fairbanks, AK  99701
(907) 452-2211
(907) 456-1137 facsimile
foster@mzwlaw.com

Attorney for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA AT FAIRBANKS

ROBERT PROBERT and LORETTA E.   )
PROBERT, and others similarly situated,  )
                                    )
         Plaintiffs,           )
                                      )
      vs.                  )
                                      )
FAMILY CENTERED SERVCES OF    )
ALASKA, INC.                      )
                                      )
         Defendants.       )
_____)  Case No.:  4:07-CV-00030 RRB

## OPPOSITION TO PLAINTIFFS' FIRST MOTION
## FOR PARTIAL SUMMARY JUDGMENT

Family Centered Services of Alaska, Inc. opposes the motion for partial summary judgment of the plaintiffs, Robert and Loretta Probert (hereinafter "the Proberts").  The Proberts have failed to carry their burden of proving each element of their claims, the absence of any genuine factual dispute, and affirmatively demonstrating that no reasonable jury could find against them and that they are entitled to summary judgment beyond a reasonable doubt.

**1.  Clarification of the Proberts' Employment with Family Centered Services.**

On September 23, 2005, Family Centered Services hired Robert Probert as a Youth Counselor III at the rate of $13.79 per hour.  The Youth Counselor III position was not

McCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

exempt from the wage and hour laws, and Robert was paid for any overtime and has not asserted any claim based on this employment. In July 2006, Family Centered Services offered Robert and Loretta, as a married couple, positions as Family Parents in one of its Family Homes for children. Robert was employed full-time as the primary Family Parent and Loretta was employed part-time as the secondary Family Parent. As Family Parents, Robert and Loretta were required to "reside in and manage the daily operation" of the Family Home and "provide for the overall care and supervision of up to five children" placed in the home. *See* Affidavit of Regitano, with attached employment contracts and job descriptions. In addition to their room and board, Robert was paid an annual salary of $45,000 and Loretta was paid an annual salary of $20,255.04[1]. Id. As a full-time employee, Robert was employed to work 40 hours per week and was paid for 40 hours per week for every week that he worked for Family Centered Services. Id. As a part-time employee, Loretta was employed to work 18 hours per week and was paid for 18 hours per week for every week that she worked for Family Centered Services. Id. The Proberts expressly agreed and understood that they were exempt from the state's overtime requirements and would "not be paid for any hours worked over 8 hours on a day or over 40 hours in a workweek." Id. In addition, Loretta agreed and understood that she was expected to bill "no less than 10 hours per week", but was not authorized to work and would not be paid for more than 18 hours per week. Id. The Proberts were terminated from their employment on August 29, 2007, and were timely and fully paid all compensation owed to them on August 31, 2007. Id. As the Family Parent positions are

McConahy, Zimmerman
& Wallace
Attorneys At Law
A Professional Corporation
711 Gaffney Road, Suite 202
Fairbanks, Alaska
99701-4662
(907) 452-2211

---

[1] The Proberts' hourly rate of pay increased from $21.64 to $22.07 on July 30, 2007.

*Probert v. FCSA, 4:07-CV-00030 RRB*
*OPPOSITION TO PLAINTIFFS' FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT*
*Page 2 of 28*

exempt from the Alaska overtime pay provisions[2] and are not covered by the Federal Labor Standards Act ("FLSA"), the Proberts are not owed any additional compensation or penalty.

## 2.   Standard for Summary Judgment.

The Proberts move for partial summary judgment to establish their claims that Family Centered Services violated the Federal Labor Standards Act ("FLSA") by failing to pay them overtime compensation and did not pay them for all hours they worked. "Before a court will consider granting summary judgment, the movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied", requiring that the movant present evidence that, in the absence of evidence to the contrary, "compels the conclusion the movant seeks."   11-56 Moore's Federal Practice – Civil § 56-11[1][a].   "The movant's required prima facie showing is relatively higher if the movant also bears the burden of persuasion at trial." Id.   "The claimant bears the burden of persuasion to obtain judgment, making summary judgment in favor of plaintiff less likely than for defendant, since plaintiff must show not only a lack of material factual dispute but also that under the undisputed facts no reasonable judge or jury could find against the [claimant] as a matter of law." Id "…[S]ummary judgment for claimants is relatively rare…, because a movant who is also a claimant must do more than a defendant because the burden of proof is placed on claimants rather than defendants, a factor that often proves decisive…. Id., § 56-03[4].   "…[T]he claimant movant must … establish a right to summary judgment by showing that the pretrial record demonstrates that the claimant movant is entitled to judgment as a matter of law and

McCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

---

[2]AS 23.10.055(12) exempts from Alaska's wage and hour requirements "employment by a nonprofit educational or child care facility to serve as a parent of children while the children are in residence at the facility if the employment requires residence at the facility and is compensated on a cash basis exclusive of room and board at an annual rate of not less than (A) $10,000 for an unmarried person; or (B) $15,000 for a married couple." The Proberts' have not asserted claims for overtime under AS 23.10.060. See the Proberts' first amended complaint dated October 23, 2007.

*Probert v. FCSA*, 4:07-CV-00030 RRB
*OPPOSITION TO PLAINTIFFS' FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT*
*Page 3 of 28*

that no reasonable factfinder at trial could fail to regard the claimant as having discharged its preponderance of the evidence burden." Id. "If the motion is brought by a party with the ultimate burden of proof, the movant must still satisfy its burden by showing that it is entitled to judgment as a matter of law even in absence of an adequate response by the nonmovant. Consequently, a party which has both the burden of production and the ultimate burden of persuasion must meet a 'more stringent' standard in order to satisfy the initial burden." Id., § 56-13[1]. The Ninth Circuit has distinguished the plaintiff's from the defendant's burden in moving for summary judgment:

> A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." [Celotex Corp. v. Catrett, 477 U.S. 317, 323 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)]. Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Id. If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. See Fed. R. Civ.P. 56(e); Anderson, 477 U.S. at 250. Wamboldt v. Safety-Kleen Sys., 2007 U.S. Dist. LEXIS 65683 (Aug. 21, 2007).

Plaintiffs moving for summary judgment have the initial burden of making a "prima facie showing on each of the elements essential to its case" and the absence of any genuine factual dispute, thus establishing their entitlement to summary judgment "beyond a reasonable doubt":

> In this case, the plaintiff is the party moving for summary judgment. To meet its initial burden of showing the absence of a

McCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

genuine issue of material fact, plaintiff as the moving party must make a prima facie showing on each of the elements essential to its case. *See United States v. Frey,* 708 F. Supp. 310, 312-13 (D. Kan. 1988). Further, the plaintiff must show the absence of a genuine issue of material fact as to those affirmative defenses which have been preserved for trial by defendant Gagel with regard to plaintiff's claim on the guaranty. *See id.* The party moving for summary judgment must establish its entitlement beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.,* 754 F.2d 884, 885 (10th Cir. 1985), *cited in Carland v. Metropolitan Life Ins. Co.,* 727 F. Supp. 592, 595 (D. Kan. 1989), *aff'd,* 935 F.2d 1114 (10th Cir.), *cert. denied,* 116 L. Ed. 2d 761, 112 S. Ct. 670 (1991). United Missouri Bank v. Gagel, 815 F.Supp. 837, 391 (D.Kan. 1993).

"[A] court that is ruling on summary judgment may not resolve factual disputes or make credibility determinations. In determining whether a factual dispute warranting trial exists, the court must view the record in the case and the summary judgment submissions in the light most favorable to the nonmovant." Id., § 56-11[5][a].

Consequently, as the Proberts have the ultimate burden of proving their claims against Family Centered Services, they are entitled to summary judgment only if, when viewed in the light most favorable to Family Centered Services, they can make a prima facie showing of all elements of their claims and the absence of any genuine factual disputes, thus "affirmatively demonstrate[ing] that no reasonable trier of fact could find" against them and establishing their entitlement to summary judgment "beyond a reasonable doubt."

**3.     The Proberts Have the Burden of Proving that the FLSA Applies to their Claims Against Family Centered Services.**

The Proberts claim that they were not paid as required by 29 USC §§ 206 and 207 of the Federal Labor Standards Act ("FLSA"). The FLSA applies to employees "who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce."

McCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

29 U.S.C. §§ 206(a) and 207(a)(1). The term "commerce" means interstate commerce. 29 U.S.C. § 203(b). The Proberts have the burden of proving that Family Centered Services as an enterprise, or the Proberts individually, engaged in interstate commerce so that the FLSA applies to their claims. "The burden of proof lies on employees to establish that they were engaged in interstate commerce, or in the production of goods, and that such production was for interstate commerce." Kitchings v. Florida United Methodist Children's Home, 393 F.Supp.2d 1282, 1292, fn. 25 (D.Fla. 2005). Non-profit organizations do not engage in commerce for a "business purpose" and are not subject to the FLSA, unless they actually conducted a commercial activity for a "business purpose" or "of the type[] which the last sentence of section 3(r)[3] ... declares shall be deemed to be performed for a business purposes":

> The activities described in section 3(r) are included in an enterprise only when they are performed for a "business" purpose. Activities of eleemosynary, religious, or educational organization may be performed for a business purpose. Thus, where such organizations engage in ordinary commercial activities, such as operating a printing and publishing plant, the business activities will be treated under the Act the same as when they are performed by the ordinary business enterprise. (See *Mitchell* v. *Pilgrims Holiness Church Corp.,* 210 F. 2d 879 (CA-7); cert. den. 347 U.S. 1013.) However, the nonprofit educational, religious, and eleemosynary activities will not be included in the enterprise unless they are of the types which the last sentence of section 3(r), as amended in 1966, declares shall be deemed to be performed for a business purpose. Such activities were not regarded as performed for a business purpose under the prior Act and are not so considered under the Act as it was amended in 1966 except for those activities listed in the last sentence of amended section 3(r). 29 CFR § 779.214.

MCCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

---

[3] The court is referring to 29 U.S.C. § 203(r).

The Proberts thus have the burden of proving that the FLSA applies to Family Centered Services, even though it is a non-profit organization.  Engaging in interstate commerce for a business purpose, or as deemed for a business purpose, is a prerequisite to FLSA coverage, and not an exemption.  29 USC §§ 203(b), (r), 207, 213.  The exemptions to the FLSA are found at 29 USC § 213, and do not include any "enterprise exception" or exemption based on 29 USC § 203(r).  Rather, as the Department of Labor Wage-Hour Administrator explained, "Only if enterprise or individual coverage exists should the employer ascertain whether an exemption under the FLSA is applicable."  *See* Opinion Letters dated November 15, 2005, p. 5, attached hereto as Exhibit "A".

In Kitchings, a non-profit children's home moved for summary judgment against the plaintiff, its former houseparent, on the basis that the home was not an institution within 29 USC § 203(r) and the houseparent had not individually engaged in interstate commerce.  The court recognized that the houseparent had the ultimate burden of proving that the non-profit children's home was subject to the FLSA under 29 USC 203(r), stating the houseparent's burden as the non-moving party with the ultimate burden of proof as:

> When a party moving for summary judgement points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324-25, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotations and citation omitted). Id., p. 1291.

In Segali v. Idaho Youth Ranch, 738 F.Supp. 1302 (D.Id. 1999), the court considered cross motions for summary judgment on whether a non-profit children's home was a "school" under 29 USC § 203(r) for application of the FLSA.  The court denied the plaintiff

McCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

houseparent's motion for summary judgment, finding that the "plaintiff simply failed to demonstrate that the Idaho Youth Ranch should be considered a school..., as contemplated by the FLSA or the Ninth Circuit." Id., p. 1310. However, it granted the defendant's motion for summary judgment, finding that the plaintiff houseparent, as the non-moving party with the ultimate burden of proof, failed to show that genuine factual issues could reasonably be resolved in support of his claim. Id., p. 1312. The Idaho Youth Ranch "was not established *primarily* for the purpose of providing a ... school as defined in 29 U.S.C. §§ 203(r)(1) ..." and "[a]ccordingly, ... may not be considered an enterprise under the FLSA, and is not, therefore, subject to the overtime provisions of the FLSA." Id.

The cases cited by the Proberts involved employers asserting exemptions after they were found to have engaged in interstate commerce or where their intestate commerce was not disputed. *See* Arnold v. Kanowsky, 361 U.S. 388, 391 (1960); Walling v. General Industries, 330 U.S. 545 (1947); and McComb v. Hunt Foods, 167 F.2d 905 (9th Cir. 1948). The Proberts cite Arnold v. Kanowsky, supra, pp. 392, 394, fn. 11, for the proposition that "... where the Plaintiffs come forward with admissible evidence, and the purpose of the law is remedial, **the burden to rebut that evidence shifts to the Defendant** and the **quantum of proof** necessary rises from 'preponderance' to '**clear and convincing**' or '**clearly and unmistakably**.'" [Emphasis provided by the Proberts]. *See* the Proberts' "P&A Re: First Partial Summary Judgment Motion (hereinafter "P&A"), at p. 11. However, as the court actually stated in Arnold, at fn. 11: "The employee having shown that the nature of his employment brings him within the coverage of the Act, the nature of the 'establishment' in which he is employed will be drawn into litigation only if the employer seeks an exemption

McCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

under § 13, in which event the burden of proving the nature of the establishment is on the employer."[4]

## 4.    The Proberts' Supporting Affidavits and Statements in their P&A Do Not Comply with Federal Rule 56(e) and Should be Stricken and Disregarded.

Federal Rule 56(e) requires that affidavits supporting motions for summary judgment "must be made on personal knowledge" and "set forth such facts as would be admissible in evidence...."  "Affidavits based upon 'information and belief' do not satisfy the Rule 56(e) standard."  Murphy v. Ford Motor Co., 170 FRD 82, 84 (D.Mass. 1997); Columbia Pictures Industries v. Professional Real Estate Investors, 944 F.2d 1525, 1529 (9th Cir. 1991); Taylor v. List, 880 F.2d 1040, 1045, fn. 3. (9th Cir. 1989).  "A statement in an affidavit that the information is correct 'to the best of my knowledge' is insufficient as a proffer of evidence because it does not meet the requirement that affidavits be based on the affiant's personal knowledge."  Moore's Federal Practice, supra, § 56-14[c].  In addition, Rule 56(e) "affidavits may not contain arguments or conclusory assertions."  Murphy, p. 85.  "Consequently, those paragraphs and sentences of plaintiff's affidavit" based "upon information and belief", as well as "arguments and conclusory assertions not based upon personal knowledge", shall be stricken and are afforded no weight on summary judgment.  Id.  "As the movants for summary judgment, the plaintiffs bore the burden of providing sufficient evidence to establish a prima facie case" and "conclusory assertions" that are "not based on first-hand knowledge" are "insufficient to establish a prima facie case" for summary judgment.  Washington Physicians Service Association, et. al v. Gregoire, 1998 U.S.App. Lexis 20718 (9th Cir., 1998).  "[C]onclusory allegations without specific supporting facts have no probative value."

McConahy, Zimmerman
& Wallace
Attorneys At Law
A Professional Corporation
711 Gaffney Road, Suite 202
Fairbanks, Alaska
99701-4662
(907) 452-2211

---

[4] The FLSA has been substantially revised and rewritten since Arnold was decided in 1960.  In 1961, "enterprise" coverage was added as a basis for application of the FLSA.  Prior to 1961, FLSA coverage depended on whether the individual employee's activities were in interstate commerce.  29 CFR 779.200.

<u>Kitchings</u>, <u>supra</u>, p. 1291.  The movant's "initial burden of production to demonstrate that the requisite standard for summary judgment as set forth in Rule 56(c) has been met" is not "satisfied by conclusions and unsupported factual allegations."  Moore's Federal Practice, <u>supra</u>, § 56-13[1].

The Proberts' affidavits contain allegations based "[o]n information and belief", rather than personal knowledge.  For example, the Proberts allege that: "on information and belief, FCSA is an institution primarily engaged in (i.e., more than 50% of the income is attributable to) providing domiciliary care to individuals who reside on the premises" and "[t]he individual residents are either referred by a psychological professional or seen and diagnosed shortly after arrival."  *See* Declarations of Robert and Loretta Probert, paragraphs 10 and 13 respectively.  As these allegations are based "on information and belief", and not on the Proberts' personal knowledge, they must be stricken and not considered.  Once more, the Proberts allege in their P&A, at p, 6, that "On information and belief, it also appears that some residents of FCSA are not Alaskans at all, but minor children transferred to FCSA from non-Alaska institutions" and "On information and belief, FCSA continues to subject similarly situated employees to the same claim or exemption and violations of the FLSA."  These allegations not only fail to be based on personal knowledge, they are not supported by any affidavit or other evidence produced or identified by the Proberts.  The Proberts' affidavits also contain conclusory allegations with no factual support.  The Proberts conclude that: "The persons living at the various FCSA centers are almost all severely mentally ill, Severely Emotionally Disturbed (SED) or defective"; "Despite any stated purpose to the contrary, the primary reason FCSA exists is to care for SED children"; and "My working hours per week at FCSA sometimes exceeded forty (40) hours per week and entitled me to overtime."  *See*

McCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

Declarations of Robert and Loretta Probert, paragraphs 5, 6, and 8 and 6, 7, and 9, respectively. In addition, Loretta Probert concludes that "I worked more than the 18 hours per week I was told was required throughout my employment" and "I was not paid for all hours that she worked." Declaration of Loretta Probert, paragraph 4. The Proberts provide no factual support for the conditions they attribute to the children or the "primary reason" they attribute to Family Centered Services' existence. Once more, the Proberts provide no specific facts or documentation for their assertions that they worked over 40 hours a week or that they worked hours that were not paid. The Proberts fail to specify when these alleged hours were worked, or even how many allegedly extra hours were worked. As the Proberts' conclusory allegations do not set forth specific facts that would be admissible in evidence, they should be stricken and disregarded.

**5.     Family Centered Services Was Not Engaged in Interstate Commerce for Any Business Purpose, and the Proberts were Not Individually Engaged in Interstate Commerce.**

Family Centered Services is a non-profit organization, which operates Family Homes in Fairbanks, Alaska, that do not compete with any commercial business. *See* Affidavit of Regitano. All of the children in the Family Homes are residents of the state of Alaska[5]. Id. If a child placed in a facility outside of Alaska is subsequently transferred to one of the Family Homes, the state agency arranging the transfer is responsible for transporting the child, and not Family Centered Services. Id. Family Centered Services has never (or at least only on rare occasions) taken or transported any child across state lines for placement in a Family

McCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

---

[5] The Proberts assert in their P&A that "On information and belief, it also appears that some residents of FCSA are not Alaskans at all, but minor children transferred to FCSA from non-Alaska institutions." As this statement is not based on any personal knowledge or supported by any affidavit or other evidence, it should be stricken and disregarded.

*Probert v. FCSA, 4:07-CV-00030 RRB*
*OPPOSITION TO PLAINTIFFS' FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT*
*Page 11 of 28*

Home.  Id.  However, activities that are only "isolated, sporadic, or occasional", and not "regular and recurring", do not constitute engaging in interstate commerce:

> The Act makes no distinction as to the percentage, volume, or amount of activities of either the employee or the employer which constitute engaging in commerce or in the production of goods for commerce. However, an employee whose in-commerce or production activities are isolated, sporadic, or occasional and involve only insubstantial amounts of goods will not be considered ``engaged in commerce or in the production of goods for commerce'' by virtue of that fact alone. The law is settled that every employee whose activities in commerce or in the production of goods for commerce, even though small in amount are regular and recurring, is considered ``engaged in commerce or in the production of goods for commerce''.
> 29 CFR 779.109.

Family Centered Services receives payments from Medicaid through the State of Alaska and from other insurers.  However, receipt of such payments does not constitute engaging in interstate commerce.  Kitchings, supra, p. 1292.  "The claim that the defendant received federal food subsidies or commodities ... is irrelevant to whether she was engaged in commerce or the production of goods for commerce or was employed in an enterprise so engaged."  Joles v. Johnson County Youth Service Bureau, 885 F.Supp. 1169, 1179 (S.D.Ind. 1995).

The Proberts do not assert that as Family Parents, they individually engaged in interstate commerce, and this contention is refuted.  See Affidavit of Regitano.  Indeed, house parents have consistently been found not engaged in interstate commerce.  In Kitchings, supra, the court rejected the argument that a houseparent was individually engaged in interstate commerce because he used credit cards to purchase items for the home, used the internet, handled goods (such as laundry detergent, cleaning supplies and food) which had been in interstate commerce, and handled federal money that was received through the State.

McCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

<u>Id</u>., 1292. "For an employee to be engaged in commerce, a substantial part of the employee's work must be related to interstate commerce.... [T]he activities indicated do not amount to engagement in commerce.... [A]ctivities of houseparent at non-profit group home for juveniles, who purchased food and supplies for care of residents, were 'too remote to qualify as engagement in commerce' under the FLSA." [Citing <u>Joles, supra</u>.]  <u>Id</u>., p. 1293, fn. 26. As the Wage-Hour Administrator found on November 30, 2004 and November 15, 2005, house parents who only on "isolated occasions" spend an "insubstantial amount of time" on activities in interstate commerce are not individually covered by the FLSA:

> As a practical matter, the Wage-Hour Division will not assert that an employee who on isolated occasions spends an insubstantial amount of time performing individually covered work is individually covered by the FLSA.  Individual coverage will not be asserted for house parents or other employees who occasionally devote insubstantial amounts of time to:
> • Receiving/making interstate phone calls;
> • Receiving/sending interstate mail or electronic communications;
> · Making bookkeeping entries related to interstate commerce.
> *See* Exhibit "A"-"B".

The Proberts have produced no admissible evidence that Family Centered Services was actually engaged in interstate commerce, or that they were individually engaged in interstate commerce, and it has certainly failed to prove such interstate commerce "beyond a reasonable doubt" as required for summary judgment.

**6.     The Family Home Was Not an Institution Primarily Engaged in the Care of the Mentally Ill or Defective Under 29 U.S.C. § 203(r).**

Family Centered Services' Family Homes are private, non-profit, residential care facilities for up to five children.  They are not "institutions" for the mentally ill and their children are not "mentally ill or defective".  Each Family Home obtains a "Community Care

McCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

License" to operate a "Residential Child Care Facility" for up to five children, and is not licensed as a mental institution or residential psychiatric treatment center. The primary purpose of the Family Home is to provide an alternative for children that are at risk of being placed in institutional facilities because they lack a safe and stable home environment to cope with their emotional and behavioral problems and foster their healthy development. The ultimate goal of the Family Home is to transition the children back into a private home, a stable foster home, or possibly independent living. The Family Homes are designed to replicate a family experience, in contrast to an institutional setting. The Family Homes are located in residential neighborhoods and appear, internally and externally, like private family residences. The children attend public school and obtain medical treatment from local providers, physicians, and the hospital. The children are encouraged to participate in and/or attend athletic and academic after-school activities, community functions, sporting events, and recreational outings. The Family Parents are responsible for the overall care and supervision of the children, and reside in and manage the home's daily operations. Family Parents are expected to act as positive adult role models and take parental responsibility for the children, by maintaining a safe, stable, and nurturing home environment; supporting academic endeavors such as assuring completion of homework assignments and providing or arranging for tutoring if needed; attending school meetings; scheduling routine medical services; providing opportunities for recreational, educational, cultural, religious and extra curricular activities; and ensuring basic needs are met, such as through nutritious meals, snacks, appropriate clothing, health care, and hygiene. *See* Affidavit of Regitano.

Children are referred to the Family Home by parents and guardians, the State of Alaska, public agencies, or the school district, but not by any psychiatrist, psychologist, or

McCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

physician.   Upon admission to the Family Home, the children are <u>not</u> evaluated by a psychiatrist, psychologist, or physician.   Children admitted to the Family Home receive clinical intakes, functional assessments and evaluations by a mental health clinician.   An Individual Service Plan ("ISP) is developed for each child by a treatment team, which identifies the child's diagnosis, unique needs, strengths, weaknesses, abilities, preferences, goals, resources, and timelines for goals and ultimate discharge.   The goals typically address behavioral or social adjustment problems, such as reducing swearing and classroom disruptions or improving communications.   Treatment plans usually involve participating in weekly activity groups, art projects, and community activities so the child can improve his or her social skills; learning to be successful in public school and participate in after-school activities; living in harmony with other children and parents in the home; and taking responsibility for household chores.   The children are taught skill development activities, such as common life skills (for example, cooking) and skills for coping with their emotions and getting along with others, behavioral techniques to control their behavior and act appropriately, and to participate in home, school and community events and social activities. The children have group therapy for one hour twice a week (when all children in the Family Home meet to discuss their group living arrangement), and individual therapy for one hour once a week.   The therapy is conducted by a clinician, and not by any psychiatrist, psychologist, or physician.  No psychiatrist or psychologist is employed or contracted to treat children in the Family Home, but access, if needed, could be made available through standing contractual agreements maintained by Family Centered Services.   *See* Affidavit of Regitano. The Family Home takes a holistic approach to caring for the children, providing them with a variety of services, including life skills, socialization and educational support, as well as a

MᶜConahy, Zimmerman
& Wallace
Attorneys At Law
A Professional Corporation
711 Gaffney Road, Suite 202
Fairbanks, Alaska
99701-4662
(907) 452-2211

limited amount of therapy, so that the child may transition out of the Family Home and into a private home, stable foster home, or independent living. The therapy is just one small part of the milieu of services and activities provided and made available in the Family Home, in furtherance of its main purpose of providing a home for children as an alternative to an unnecessarily more restrictive institutional environment and its ultimate goal of returning the children to private family life in the community or an alternative living arrangement. Id.

Most children admitted into the Family Home are evaluated by the mental health clinician with: Attention Deficit, Hyperactivity, Conduct Disorder, Impulse Control Disorder, Oppositional Defiant Disorder, Adjustment Disorder, Parent-Child Relational Disorder, Depressive Disorder, Mood Disorder, Reactive Attachment Disorder, Post traumatic Stress Disorder, Anxiety Disorder, Development Disorder, Learning Disorders, Enuresis (bed wetting), eating disorders, Sexual or Physical Abuse, Neglect, or alcohol, cannabis or other substance abuses. While these evaluations indicate that the child has emotional and/or behavioral problems, they do not indicate that the child is suffering from a severe mental illness or requires institutionalization. *See* Affidavit of Regitano. The Family Home is not operated to care for or treat children with severe mental illnesses. Rather, children with severe mental illnesses or defects are denied admission to the Family Home as the program operating model was not intended or designed to be a safe or effective treatment setting for their conditions. Once more, if a child is determined to have a severe mental illness at any time after admission, he or she would be discharged to a mental hospital or institution as defined by federal Medicaid regulations. Children are referred to the Family Home because they lack a safe and stable home to cope with their problems and foster healthy development, and not for the purpose of obtaining an evaluation by a psychiatrist, psychologist or other

McCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

physician.  As noted, the children are not evaluated by any psychiatrist, psychologist or other physician.  *See* Affidavit of Regitano.

The FLSA does not define an "institution" for the mentally ill or defective.  However, federal regulations define "institution for mental diseases" for Medicaid as:

> Institution for mental diseases means a hospital, nursing facility, or other institution of more than 16 beds that is primarily engaged in providing diagnosis, treatment or care of persons with mental diseases, including medical attention, nursing care and related services. Whether an institution is an institution for mental diseases is determined by its overall character as that of a facility established and maintained primarily for the care and treatment of individuals with mental diseases, whether or not it is licensed as such. An institution for the mentally retarded is not an institution for mental diseases. 42 CFR 435.1009.

As the Family Home is not a hospital, nursing facility or other institution with more than 16 beds[6] which is primarily engaged in diagnosing, treating or caring for persons with mental diseases, it is not an "institution for mental diseases" under federal law.  *See* Affidavit of Regitano.

In an almost identical case, the court considered whether the Florida United Methodist Children's Home was subject to the FLSA for its operation of a "not for profit organization dedicated to providing residential care and treatment for children ... who have been abused, neglected, or otherwise subjected to emotional damage", and were "unable to remain in their original homes due to emotional conflicts, adjustment problems, relationship disturbances, developmental delays, and issues associated with sexual, physical and emotional abuse." Kitchings, supra, p. 1285.  The children were in-state residents placed by parents or guardians who were unable or unwilling to raise them, or by the state because they were abandoned,

McCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

---

[6] Indeed, the Family Home accommodates no more than five children.  Affidavit of Regitano.

state-dependent or pre-delinquent. Id. Among their duties as "in loco parentis", the house parents provided feedback to each resident's "therapist and caregivers regarding the effectiveness of the Resident's treatment plan." Id., p. 1286. The home was not licensed as a hospital or mental care facility, but was licensed as a residential group care facility. Id., p. 1288, fn. 11. "The primary reason for placement is that the child is unable to reside with their natural parents or guardians." Id. However, "most resident are admitted due to their behavior, usually based on a psychiatric disorder." Id., fn. 12. "Most of the Residents … do have some form of psychological disorder, and many are on some form of medication." Id. The residents had "attention deficit disorders, poor impulse control, defiant behavior, dysthymic disorder, post-traumatic stress disorder, and mild conduct disorder." "…[A]t admission, approximately eighty percent of the Residents have some form of disorder." Id., fn 13. However, if a child had a serious mental illness or disorder, he was not accepted for residency because the home was not equipped for those children. Id.. The court distinguished the home from "other residential programs" for children with severe psychological problems that offered more hospital-based care, clinical care, and a more sterile and intensive (lock-down) treatment environment. Id., fn. 14. "In contrast, at the Children's Home, Residents are taught common skills for getting along with each other, behavioral techniques such as how to control their behavior, and how to act appropriately. Residents at the Children's Home require treatment or observation of a less critical nature than hospitals provide." Id., fn. 14. The goal of the home was "to heal the physical, emotional, and spiritual trauma of its residents." It provided "basic residential care, including food, clothing, shelter, and basic medical treatment, as well as psychological counseling and therapy, recreational and music therapy, vocational instruction, and religious education. Id. Each resident was "assigned to

McCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

both a Child and Family Therapist and to a Treatment Team" and the "Therapist and Treatment Team develop an Individual Treatment Plan for each Resident that established certain goals and objectives designed to overcome each Resident's past problems and to return the Resident to family life." The home employed: a "psychiatrist on contract to oversee case functions", "one therapist for each cottage" who was licensed as a mental health professional, therapists with masters degrees in social work, a part-time behavior analyst, its Director of Admissions and his assistant were both mental health professionals, and a nurse with a certificate in substance abuse. Id., p. 1289. The psychiatrist might evaluate residents prior to admission, but often they came with a psychological evaluation performed elsewhere. Id., fn. 18. The home received "Medicare payments for its behavioral services, which funding the Children's Home includes as part of 'state contracts,' because although Medicare funds are federal funds, they come to the Children's Home from the state." Id., 1290. The court stated the law that:

> [A] private charitable nonprofit institution engaged in providing care for neglected and dependent children is . . . not covered by the enterprise provisions of the FLSA, provided such institution is not operated in conjunction with a hospital, covered institution, or school within the meaning of section 3(s)(1)(B) of the FLSA and is not a public agency under section 3(s)(1)(C) of the FLSA. Dept. of Labor Opinion Letter, 2004 WL 3177887, at 2 (December 13, 2004); see also Dept. of Labor Opinion Letter, 2004 WL 3177888, at 2 (November 30, 2004) ("enterprise coverage does not apply to a private, nonprofit enterprise providing care for neglected and dependent children unless it is operated in conjunction with a hospital, residential care facility, school or a commercial enterprise operated for a business purpose.") (finding that the based on information provided, the Children's Home "satisfies none of these tests and, thus, is not covered on an enterprise basis."); Dept. of Labor Opinion Letter, 2004 WL 2146930 at 2 (April 9, 2004) ("Enterprise coverage, however, does extend to private, nonprofit organizations that operate ... an institution primarily

McCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

> engaged in the care of the ... mentally ill or defective, ...[or] a preschool, ... (regardless of whether or not such ... institution, or school is public or private or operated for profit or not for profit)."). The Children's Home is clearly a nonprofit organization. However, the Department of Labor opinion letters indicate that institutions such as the Children's Home are not included in the FLSA's enterprise coverage *as long as* they are not operated in conjunction with an entity listed in section 203(s)(1)(B). Id., p. 1295.

The court found that "[t]he word 'primarily' has been interpreted to mean 'of first importance,' 'principally,' 'essentially,' and 'fundamentally.'" [Citations omitted]. Id., p. 1296. The court found that the "primary purpose" of the home was not to treat the mentally ill:

> In the instant case, the Defendant has pointed out facts showing that the Children's Home's primary purpose is not to treat the mentally ill, noting, for example: the Children's Home is not licensed as a mental hospital; the psychological therapy and counseling it offers are merely part of, or incidental to, its purpose of providing a home for dependant children and the ultimate goal of returning each Resident to family life in the community; the primary criteria for admission is the fact that a child cannot be raised by his or her natural parents or guardians, and is not necessarily related to the mental health of the child; and the fact that many Residents suffer from psychological and emotional problems is incidental to their status as neglected or dependent children.... These facts support the conclusion that, rather than being primarily engaged in treating the mentally ill, the Children's Home operates as a religion-based organization that takes a holistic approach to working with Residents in a variety of ways, and which provides many more services than merely psychological or psychiatric treatment. Id., pp. 1296-1297.

*          *          *

> Additional facts are compelling in demonstrating that the Children's Home is not primarily engaged in the treatment of the mentally ill: the Children's Home is a religious, not-for-profit organization dedicated to providing residential care and treatment of children who have been abused, neglected, or

MCCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

*Probert v. FCSA*, 4:07-CV-00030 RRB
*OPPOSITION TO PLAINTIFFS' FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT*
*Page 20 of 28*

otherwise subjected to severe emotional damage, (Doc. 105, Att. 1, Aff. of Alexander Carmichel, at 2); the Children's Home is not required to provide psychological counseling unless the initial treatment plan suggests that the Resident needs to see a psychiatrist, (Doc. 116, Att. 6, Depo. of Alexander Carmichel, at 67); those Residents that do suffer from a mental disorder require only general treatment or observation of a less critical nature than in a hospital, (Doc. 116, Att. 47, Depo. of Dr. Bruce Henry, at 17); if a child has a serious psychological disorder, they will not be accepted for residency because the Children's Home is not equipped to help those children, (Doc. 105, Att. 1, Aff. of Alexander Carmichel, at 3); counseling is only part of the Children's Home's "holistic approach" to caring for the Residents, which also includes medical and health services, recreational therapy, music therapy, education and tutoring, vocational instruction, horticulture therapy, therapeutic work programs, and religious life and education, (Doc. 105, Att. 1, Aff. of Alexander Carmichel, at 3-4; Doc. 105, Att. 2, Ex. 4); the Children's Home's goal is to help the Residents grow, to develop emotionally, psychologically, behaviorally and spiritually, and to teach the Residents interacting skills, to build social habits, to teach positive behaviors, so the Residents can learn to live with others in a community, and so the Residents can gain skills to go out and live with smaller groups and smaller families, (Doc. 116, Att. 3, 8, Depo. of Alexander Carmichel, at 22, 94); and psychological care is only provided to some of the Residents (id. at 58). Id., p. 1297, fn. 32.

The court rejected the plaintiff's arguments based on the Department of Labor's Field Operations Handbook "fifty percent test" because "evaluations of mental or emotional disturbance" were not "the cause for referral" to the home:

In support of their position, the Plaintiffs offer the conclusory assertions that in order to be paid for housing children in the care of the State, the Children's Home "must provide intense psychological and psychiatric care for the children," and the State sends children to the Children's Home "because it can provide psychological and psychiatric services." (Doc. 115 at 7). The former statement is belied by the facts, and while the latter statement may be true, it does not demonstrate that the Children's Home is primarily engaged in treating the mentally ill. Next, the Plaintiffs point the Court to Section 12g12 of the

McCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

Department of Labor Field Operations Handbook (the "Handbook"), which provides:

> For enforcement purposes, a private institution for the residential care of emotionally disturbed persons would come within the coverage of Sec. 3(s)(5) [now 3(s)(1)(B)] of the Act if more than 50% of its residents have been admitted by a qualified physician, psychiatrist, or psychologist. For purposes of the 50% test, the term "admitted" includes evaluations of mental or emotional disturbance by a qualified physician, psychiatrist, or psychologist either subsequent to admission to the institution or preceding admission and being the cause for referral. Dept. of Labor, Field Operations Handbook, s. 12g12 (1990).

> The Plaintiffs then assert that over half of the children who reside at [the Children's Home] have been referred because of [the Children's Home's] ability to handle psychological and psychiatric issues for the children. It is undisputed that an important reason the State refers children in its care to [the Children's Home] is because of (sic) provides the necessary psychiatric evaluations upon admittance and ongoing therapy thereafter. (Doc. 115 at 7-8).

> This assertion is deficient for several reasons. First, although Plaintiffs clearly attempted to follow the pattern of the Handbook, nowhere do they assert that "evaluations of mental or emotional disturbance" are "the cause for referral," which is a requirement of the Handbook's "fifty percent test." Second, even if the Plaintiffs' assertion could be read to make such a statement, they make no reference to the "fifty percent test," and fail to offer any evidence to support such a test. Id., pp. 1298-1299.

In Joles, supra, the court considered a non-profit organization operating a group home for juveniles, whose "primary objectives" were to "provide temporary shelter and care to troubled youths ... who are referred by juvenile courts or county residents, including welfare and probation departments." The court found that the home "did not qualify as any of the organizations or activities listed in 29 U.S.C. § 203(r)(2)." Id., p. 1175. See also Segali v. Idaho Youth Ranch, supra, where the court held that the Idaho Youth Ranch "was not

McCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

established *primarily* for the purpose of providing a ... school as defined in 29 U.S.C. §§ 203(r)(1)....” and “[a]ccordingly, ... may not be considered an enterprise under the FLSA, and is not ... subject to the overtime provisions of the FLSA.”

In its Opinion Letters, the Wage and Hour Administrator found that non-profit group homes for children were not subject to the FLSA.  The Wage-Hour Administrator described the Florida United Methodist Children’s Home as a “religious, not-for-profit organization dedicated to providing residential care and treatment to children who have been abused, neglected or otherwise subjected to severe emotional damage”, who were “orphans of the living” and “unable to remain in their natural homes due to emotional conflicts, life adjustment problems, relationship disturbances, developmental delays, and the spiritual/psychological wounding associated with sexual, physical, and emotional abuse.” The home provided residential care, counseling, recreational therapy, tutoring and vocational and religious instruction.  As the Wage and Hour Administrator advised: “...[E]nterprise coverage does not apply to a private, nonprofit enterprise providing care for neglected and dependent children unless it is operated in conjunction with a hospital, residential care facility, school or a commercial enterprise operated for a business purpose.”  [Citing Joles, supra].  “Based on the information provided, it appears that Florida United Methodist Children’s Home satisfies none of these tests and, thus, is not covered on an enterprise basis.” *See* Exhibit “B”.  On September 2, 2005, the Wage-Hour Administrator did not determine that a non-profit group home was engaged in operating "an institution primarily engaged in the care of ... the mentally ill or defective who reside on the premises of such institution.”  Rather, the Wage-Hour Administrator found that based on the information provided, it could not make any determination.  Exhibit “C”.

McCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

The Proberts rely on the Department of Labor's Field Operations Handbook, which provides "interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance", but is not the official resource for regulatory information published by the Department of Labor.   The Field Operations Handbook recognizes that: "Private nonprofit institutions providing care for neglected and dependent children are not covered by the enterprise provisions of the FLSA, provided that such institution is not operated in conjunction with a hospital, covered institution, or school within the meaning of Secs 3(r) and 3(s) of the Act." § 12g18.   The Proberts have not provided or identified any admissible evidence that the Family Home was primarily an institution for the mentally ill.   The Proberts assert only that "[o]n information and belief", that Family Centered Services "is an institution primarily engaged in (i.e., more than 50% of the income is attributable to) providing domiciliary care to individuals who reside on the premises" and "[t]he individual residents are either referred by a psychological professional or seen and diagnosed shortly after arrival."   *See* Declarations of Robert and Loretta Probert, paragraphs 10 and 13 respectively.   However, as these assertions are not based on the Proberts' personal knowledge, they are entitled to no consideration.   Federal Civil Rule 56(e); Murphy, supra; Columbia Pictures v. Professional Real Estate Investors, supra; Taylor v. List; Washington Physicians Service v. Gregoire, supra.   Once more, as in Kitchings, "nowhere do they assert that 'evaluations of mental or emotional disturbance' are 'the cause for referral,' which is a requirement of the Handbook's 'fifty percent test.'"  Id., p. 1299.   Children are referred to the Family Home because they lack a safe and stable home to cope with their problems and foster healthy development, and not for the purpose of obtaining an evaluation by any psychiatrist, psychologist or physician.   Rather, children are evaluated only by a clinician, and not by any

McCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

psychiatrist, psychologist or physician as required by the "fifty percent test." Field Operating Handbook § 12g12.  Affidavit of Regitano.  Once more, any child evaluated with a severe mental illness or defect is denied admission to the Family Home as it was not intended or designed for their condition.  Id.

Consequently, the Proberts have failed to prove as a matter of law and "beyond a reasonable doubt" that Family Centered Services operated its Family Home primarily as an institution for the mentally ill or defective under 29 U.S.C. § 203(r).

**7.    Family Centered Services Timely Paid the Proberts All Compensation they Were Owed and There is No Basis for Any Penalty.**

As the FLSA does not apply to Family Centered Services, § 206 of the FLSA does not apply.  Once more, the Proberts were paid substantially more than the $5.15 hourly minimum wage prescribed by 29 U.S.C. § 206 at the time of their employment.  *See* Affidavit of Regitano.   Even if the FLSA did apply, the Proberts' employment agreements were reasonable and enforceable:

> An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted.... 29 CFR 785.23.

The Proberts also assert violations of AS 23.05.140(b) and (d), which require that:

> (b) If the employment is terminated, all wages, salaries, or other compensation for labor or services become due immediately and shall be paid within the time required by this subsection at the place where the employee is usually paid or at a location

MCCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

agreed upon by the employer and employee.  If the employment is terminated by the employer, regardless of the cause for the termination, payment is due within three working days after the termination.  If the employment is terminated by the employee, payment is due at the next regular pay day that is at least three days after the employer received notice of the employee's termination of services.

(d) If an employer violates (b) of this section by failing to pay within the time required by that subsection, the employer may be required to pay the employee a penalty in the amount of the employee's regular wage, salary, or other compensation from the time of demand to the time of payment, or for 90 working days, whichever is the lesser amount.

The Alaska statutes exempt Family Parents from its wage and hour laws[7]:

23.10.055.   Exemptions;   compensation   of   executives, administrators, and professionals
    (a) The provisions of AS 23.10.050-23.10.150 do not apply to

    (12) employment by a nonprofit educational or child care facility to serve as a parent of children while the children are in residence at the facility if the employment requires residence at the facility and is compensated on a cash basis exclusive of room and board at an annual rate of not less than
    (A) $10,000 for an unmarried person; or
    (B) $15,000 for a married couple;

Once more, AS 23.10.095 authorizes the adoption of "regulations and interpretations that are made by the administrator of the Wage and Hour Division of the federal Department of Labor and that are not inconsistent with AS 23.10.050 - 23.10.150", such as reasonable agreements for employees residing on the premises under 29 CFR 785.23.

The Proberts were employed as Family Parents of a home for children, were required to reside at the home, and were compensated more than $65,000 annually exclusive of their room and board.   They were thus exempt from Alaska's wage and hour laws.   AS

MCCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

---

[7] Alaska minimum wage and overtime requirements are set forth at AS 23.10.060 - .065.

23.10.055(a)(12).   The Proberts' employment terminated on August 29, 2007 and they received their final payment of compensation on August 31, 2007.   Affidavit of Regitano. The Proberts were thus timely and fully paid all compensation owed under their employment contracts.  AS 23.05.140(b).  The Proberts' general allegations that they worked hours that they were not paid, without any supporting documentation or specific facts, provide no support for their motion for summary judgment.  Such "conclusory allegations" do not "set forth such facts as would be admissible in evidence" as required by Federal Rule 56(e), are not probative and should not be considered.  Murphy, p. 85,  Kitchings, supra, p. 1291, Gregoire, supra, Moore's Federal Practice, supra, § 56-13[1].

The Proberts have failed to prove as a matter of law and "beyond a reasonable doubt" that Family Centered Services owes them any additional compensation or violated AS 23.05.140(b), (d).

## CONCLUSION

The Proberts have failed to carry their burden of proving each element of their claims, the absence of any genuine factual disputes, and affirmatively demonstrating that no reasonable jury could find against them and they are entitled to summary judgment beyond a reasonable doubt.  In particular, but not exclusively, the Proberts have not proved that Family Centered Services engaged in interstate commerce for application of the Federal Labor Standards Act or that they are owed any additional compensation or penalty.  Consequently, the Proberts' motion for partial summary judgment must be denied.

McCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

DATED at Fairbanks, Alaska, this 11th day of February, 2008.

McCONAHY, ZIMMERMAN & WALLACE
Attorneys for Defendants

By: _____
John Foster Wallace, ABA #9211115

CERTIFICATE OF SERVICE

This certifies that a copy of the foregoing will be electronically served simultaneous with filing to the following attorneys and/or parties of record:

Kenneth L. Covell
Law Offices of Kenneth L. Covell
kcovell@gci.net

_____    02/11/2008
Barbi Montgomery for McConahy, Zimmerman & Wallace

McCONAHY, ZIMMERMAN
& WALLACE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
711 GAFFNEY ROAD, SUITE 202
FAIRBANKS, ALASKA
99701-4662
(907) 452-2211

*Probert v. FCSA*, *4:07-CV-00030 RRB*
*OPPOSITION TO PLAINTIFFS' FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT*
*Page 28 of 28*