Kenneth Covell
LAW OFFICE OF KENNETH COVELL
712 Eighth Avenue
Fairbanks, AK 99701
Phone: (907) 452-4377
Fax:    (907) 451-7802
E-mail: kcovell@gci.net

Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA AT FAIRBANKS

| | |
|---|---|
| **ROBERT PROBERT** and **LORETTA E.** ) | |
| ) | |
| **PROBERT**, and others similarly situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| **FAMILY CENTERED SERVICES OF** ) | |
| **ALASKA, INC**. and **DOES I to X,** (Managerial) | |
| Employees Jointly Liable) ) | |
| ) | |
| Defendants. ) | |
| _____ ) | Case No. 4:07-cv-00030-RRB |

## REPLY TO OPPOSITION TO FIRST PARTIAL SUMMARY JUDGMENT MOTION

Plaintiffs, Robert Probert and Loretta E. Probert**,** and others similarly situated, by and

through their undersigned counsel, Reply to Defendant, FCSA's Opposition to their Partial

Summary Judgment Motion.

Proberts v. FCSA,
Case No. 4:07-cv-00030-RRB
Reply to Opposition To Partial Summary Judgment Motion
Page 1 of 25

FCSA is subject to the FLSA overtime provisions enacted in 1966. If FCSA provides domiciliary care to persons, 50% or more of the which were admitted by a mental health or medical professional it is subject to the FLSA . If the institution providing domiciliary care derives more than 50% of its income from providing residential care to the infirm, including the mentally infirm, it is subject to the FLSA.

FCSA is an institution primarily engaged in the care of the mentally ill or defective, who reside on the premises.  In fact, the seriousness of the mental problems these residents exhibit is the very reason why the house parents are needed. Many of the children are referred from an in-patient psychiatric center such as North Star Behavioral in Anchorage. The individual clients are thus either referred by a psychological professional and/or are also seen and diagnosed shortly after arrival by the psychiatrist.  The FLSA specifically defines this organization as within FLSA overtime coverage. 28 USC §203(r)

The Plaintiffs are not attempting to close FCSA and recognize the need for this program in Alaska.  Plaintiffs suggest, however, that following the overtime laws will not conflict with providing quality services, and in fact, will ensure that the services rendered will be of greater quality and benefit for the ultimate recipient, the child in need. Paying an appropriate wage as required by law will attract and motivate the houseparents, thus increasing the quality of applicants and care.  Providing needed time off will avoid "burn-out", thus ensuring better quality of service to the patient, greater consistency of service, and limit turnover (it is traumatic for a child in these placements for a houseparent to quit).

## Inadequate Discovery And Opportunity To Supplement

FCSA failed to produce the "med notes" requested by Proberts which may contain specific documentation about the issues in this Summary Judgment Motion.  (Exh. 1) Plaintiff's counsel agreed to permit FCSA to file a supplemental brief following this Reply. Following that production and such other discovery, Plaintiff's too should be permitted to supplement this Reply as needed.

## Summary of Arguments

Plaintiffs claim that Family Centered Services of Alaska, (FCSA) is an institution of a type specially designated by Congress to be subject to FLSA protections  (29 USC §203(r)). FCSA claims it is not covered by the FLSA.  The key question is whether the Proberts and their co-Plaintiffs, are covered by the FLSA.

To the best of Plainiffs' counsels' knowledge, this issue has never been decided by an Appellate Court, and the District Court opinions are rare and in conflict.

Plaintiffs maintain that FCSA is expressly defined by Congress as engaged in commerce because FCSA is an institution primarily engaged in the care of the sick or mentally ill or defective who reside on its premises.  29 USC §203(s)(1)(B); 29 CFR §779.21.  Where the burden of proof is raised, FCSA must provide more than the self-serving, contradicted conclusory claims by its CEO. (Discussed *infa.*)

FCSA has taken issue with this claim relying upon three issues which mostly consist of splitting hairs about the words used in the statutes and the CFRs.[1] FCSA takes issue with:

1)     Whether its stated **purpose** will override the Congressional Language that makes the test whether the institution is **primarily engaged** in the designated activities. Proberts will provide evidence that demonstrates that FCSA is **primarily engaged** in the care of the **mentally ill or defective** who reside on the premises.

2)     FCSA seizes on the language defining **primarily engaged** and reads it restrictively. "An institution primarily engaged in the care of the . . . mentally ill or defective who reside on the premises of such institution."[2] A DOL Opinion Letter instructs that a non-profit is so engaged where **"[not] fewer than 50% of the children residing with the organization were admitted by a qualified physician, psychiatrist, or psychologist.**"[3] This test is also articulated in Wage And Hour Division's (WHD's) Field Operations Handbook ("FOH"), an **operations manual that provides WHD investigators and staff**

---

[1]     **Split hairs**: to argue about whether unimportant details are correct. Cambridge Dictionaries On-line at http://dictionary.cambridge.org/define.asp?dict=CALD&key=76707

[2]  Opinion Letter No. FLSA2005-8NA of Sept. 2, 2005, 2005 DOLWH LEXIS 46, available at http://www.dol.gov/esa/whd/opinion/FLSANA/2005/) 2005_09_02_8NA_FLSA.pdf. (Exh. 2)

[3]  *Id.* , *citing,* U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div., Field Operations Handbook §12g12 (1990)(Exh. 3), available at http://www.dol.gov/esa/whd/FOH/FOH_Ch12.pdf. (emphasis added)

with interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance.[4] (emphasis added)

3)    FCSA also fails to rebut the FOH and opinions containing the **second method, an economic one,** for determining the "**primarily engaged**" question. **The FOH defines institutions "primarily engaged in the care of . . . the mentally ill or defective** residing on the premises" as follows: "Such an institution (other than a hospital) is an **institution primarily engaged in (i.e., more than 50% of the income is attributable to) providing domiciliary care to individuals who reside on the premises . . . . Such institutions are not limited to nursing homes, whether licensed or not licensed, but include those institutions generally known as nursing homes, rest homes, convalescent homes, homes for the elderly and the infirm, and the like."** [5]

The Proberts here demonstrate that FCSA's own promotional materials and grant application, together with internal guidelines, require that a child be mentally ill and/or severely emotionally disturbed in order to be eligible for placement.[6] To the same effect is

---

[4] The FOH provides administrative guidance and is entitled to great weight. The well-reasoned views of the agencies implementing a statute "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-140, (1944); *quoted in Bragdon v. Abbott,* 524 U.S. 624, 642 (U.S. 1998); *see also, Samsom v. Apollo Res., Inc.,* 242 F.3d 629 (5th Cir. 2001).

[5] Field Operations  Handbook §12g02 (Exhibit 3 at 3); *see also,* Opinion Letter FLSA, 2004 DOLWH LEXIS 45, 2004 WL 3177888 (Nov. 30, 2004). (Exhibit 4 at 3)(emphasis added)

[6] Mr. Regitano tries to counter these allegations, but does so with the same type of conclusory statements that FCSA complains about when it challenges Probert's preliminary Declarations. Here, especially, actions and documents speak louder than the self serving conclusory statement by the General Manager of FCSA. FCSA has promulgated admissible evidence directly contradicting Mr. Regitano's Affidavit. So, too, in a grant application that

FCSA's  Theraputic Family Home (TFH) Policies and Procedures (Exh 6, pp. 2 – 5 and Exh. 7 at 4, 6); and the FCSA TFH Program Description. (Exh. 7 at 2, 4 - 5)

Proberts' evidence demonstrates that most of FCSA's referrals are from other mental health programs and that all the clients see a psychiatrist shortly after admission.  Most of the children in the FTH program are on medications,  and have a DSM-IV AXIS I diagnosis.  FCSA's own promotional materials, in-house rules and publications[7], and grant requests, illustrate that FCSA provides care for the mentally ill or emotionally disturbed.[8]

This is really a case where two decisions, by two diverse District Courts, in two different Circuits, differ on similar facts.  Plaintiffs have discussed briefly the 2005 *Kitchens*[9] case where the FLSA was found not to apply.  Plaintiffs think that *Kitchens* was wrongly decided.  Plaintiffs suggest that *Bowdren v. Catholic Guardian Society*, 417 F. Supp. 2d 449

---

refers to Mr. Regitano (Exh 5), he makes claims that contradict his affidavit.  The facts directly contradicting Mr. Regitano's claims show that the affidavit must be considered as unsupported evidence and give the slight to no weight that it deserves.  This unsupported affidavit cannot provide the contrary evidence required to overcome Plaintiffs evidence and Summary Judgment is the result.

[7] There is circumstantial evidence to suggest that the current Policy and Procedure Manual has been altered to fit the language contained in *Kitchings vs. Florida Methodist Church Children's Home,* 393 F. Supp. At 1282 (Middle District of Florida, 2005).  A state lawsuit with a Plaintiff named Powell was served in October 2006.  The changes in the policy, which appear to change the policy to bring it within the language of *Kitchings* began by February, 2007.  These changes change the language used in former materials.  Proberts' suggest this was for the precise purpose of defending against lawsuits challenging FCSA's designation of the houseparents as "exempt" from overtime.

[8] All the criticisms of the CEO Mr. Regitano's Declaration are attributable to the sections attempting to support this proposition also.

[9] *Kitchings v. Fla. United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282 (M.D. Fla. 2005)

Proberts v. FCSA,
Case No. 4:07-cv-00030-RRB
Reply to Opposition To Partial Summary Judgment Motion
Page 6 of 25

(SDNY, 2006) is better decided and reasoned and tracks what the Ninth Circuit will require if such a case ever is appealed. *Bowdren* considered a program called ACT. This program provided residential care to severely mentally ill children who had an AXIS I diagnosis from the DSM-IV. The *Bowrin* court found the ACT homes to be covered by the FLSA overtime provisions, a result contrary to *Kitchens*.

## The FLSA And Its Interpretation

The Courts are to construe the FLSA "liberally to apply to the furthest reaches consistent with congressional direction."[10] The Department of Labor's ("DOL") regulations, which provide "guiding principles for applying coverage and exemption provisions," confirm that "it is clear that Congress intended the Fair Labor Standards Act to be broad in its scope." An employer who claims an exemption under the Act has the burden of showing that it applies.[11]  Exemptions under the FLSA are "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit," and that "the burden of invoking these exemptions rests upon the employer"[12]

An employer is therefore subject to the FLSA's maximum hours provision if either of two conditions exist: (1) if the employee individually was "engaged in commerce or in

---

[10] *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296(1985) (internal quotation marks and citation omitted).

[11] *Id.* (*citing Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, (1959); *Walling v. General Indus. Co.*, 330 U.S. 545, (1947)

[12] *Id.*

the production of goods for commerce," or (2) the employer was an "**enterprise**" "engaged in commerce or in the production of goods for commerce," regardless of whether the individual employee was so engaged.[13]

The 1961 amendments to the FLSA introduced the "enterprise theory" and broadened FLSA's coverage by providing that all employees in a particular business unit that constitutes FCSA's particular "enterprise," are covered by the Act, irrespective of their individual coverage status.[14]

In 1966 Congress further broadened the scope of enterprise coverage when it defined certain activities to be deemed within interstate commerce without regard to the usual tests. One of these activities is the gravamen of the Probert's claim.

### Issue I, Primarily Engaged

The FLSA deems activities performed in connection with the operation of . . . an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped . . . regardless of whether or not such .. . . institution or school is operated for

---

[13] *Id.*; 29 C.F.R. § 779.100; *see also Joles v. Johnson County Youth Svc. Bureau, Inc.*, 885 F. Supp. 1169, 1173- 74 (S.D. Ind. 1995)

[14] *see generally,* Fair Labor Standards Amendments of 1961, Pub. L. No. 87-30, 75 Stat. 65 (codified in scattered sections of 29 U.S.C.) and *Bowrin v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449, 458 (S.D.N.Y. 2006)

profit or not-for-profit as within the FLSA's coverage.  Such activities are deemed to be activities performed for a business purpose.[15]

If FCSA constitutes an "enterprise" because it has a business purpose under the foregoing definition, that enterprise will be subject to the overtime requirements of Section 7 of the FLSA if it is also found to be "engaged in commerce." An enterprise is engaged in commerce where, *inter alia*, it "is engaged in the operation of … an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution . . . ."[16]

Proberts' claim that FCSA is engaged in such activities.  FCSA denies this interpretation.

### Despite FCSA's Self-Declared Purpose, In Reality It Primarily Cares For The Mentally Ill And/Or Defective Who Reside On Its Premises

### (Primary Purpose Does Not Equal Primarily Engaged)

The FCSA is subject to the FLSA because the activities are performed:

(1) In connection with the operation of . . . an institution **primarily engaged** in the **care of** the . . . **mentally ill or defective** who reside on the premises of such institution, . . . .[17]

---

[15] 29 U.S.C. § 203(r)(2)(A)

[16] 29 U.S.C. § 203(s)(1)(B) and according to a DOL opinion letter issued on September 2, 2005 (Exhibit 2) , "the enterprise provision of the FLSA generally does not cover a private non-profit institution providing care for . . . **neglected children**, **unless** that institution is operated as . . . **an institution primarily engaged in the care of the . . . mentally ill or defective who reside on the premises of such institution.**"  Opinion Letter No. FLSA2005-8NA of Sept. 2, 2005, 2005 DOLWH LEXIS 46. (Exhibit 2)(emphasis added)

[17] 29 CFR §779.21(emphasis added)

FCSA claims that its **primary purpose** is to provide an alternative for children that are at risk of being placed in institutional facilities because they lack . . . suitable home environment . . . to cope with their emotional and behavioral problems. (Opposition at 14) The "institutional facilities" referred to by FCSA are actually "psychiatric institutional facilities" and omission of the word "psychiatric" is confusing.

Examine FCSA's own advertising literature and the 2005 Annual Report to see that services that FCSA provides are mental health related and funded for that reason.

FCSA is a non-profit, 501(c)(3) corporation, founded July 1, 1989, for the **purpose of expanding the availability of specialized mental health services for Alaskan Children and their families. FCSA has historically provided these unique services in a concerted effort to address each child's mental health needs** while keeping the child as close to their family, community and region as possible and in the least restrictive setting. (2005 Annual Report found at http:// www.familycenteredservices.com/ Consumer_Information.htm at Exh 9, page 4 (emphasis added).

FCSA has become **recognized as a forerunner in the delivery of individualized mental health services**, *Id*. at pp. 4 (emphasis added).

This year again we were able to add qualified professional staff members dedicated to the delivery of **individualized services to severely emotionally disturbed children.** *Id*. at page 4 (emphasis added)

Two out of the ten programs currently in operation are recent developments, including **Therapeutic Family Homes (TFH) (January 2004)** and **Youth Education Support Services (YESS) Elementary** (November 2004). The **YESS Secondary High School is the longest running program of FCSA, in operation since 1989.** Placement (ATOP) began operation in 1991; foster care licensing in 1993. **As the needs of Alaskan children and their families requiring mental health and dual diagnoses services have changed over time FCSA has continually changed over the years to meet those needs**. *Id. at page* 4 (emphasis added)

FCSA's **Therapeutic Family Homes provide quality residential care to** male and female **youth** ages 12-18 **that are experiencing mental health and**

**behavioral issues and are at imminent risk of *psychiatric* placement outside of their community.** *Id.* at page 9 (emphasis added) [Why would someone not mentally ill need psychiatric placement?]

***Therapeutic Family Home Expansion:*** FCSA has constructed three additional Therapeutic Family Homes. Two of the homes will provide services to children 13 and older; one of those will provide services to youth who are **dually diagnosed with substance abuse and mental health disorders**. One of the homes will provide services to children 12 and younger. The three new homes will provide 16 additional **beds for children currently placed out of state in *psychiatric* facilities or for children in danger of being sent out of state.** *Id.* at page 12(emphasis added) [Why would someone not mentally ill need psychiatric placement?]

In 2008 FCSA sought a grant for a quarter million dollars to build therapeutic youth homes. (Exh. 5) Describing its project and justification, FCSA said:

This funding will complete the funding necessary to build six new therapeutic youth homes in the Mat-Su and Fairbanks as part of the cornerstone of the "Bring The Kids Home" initiative. The therapeutic youth homes will provide residential service to five children per home. Children are typically ages 6 – 18(male and female) who are **experiencing some form of mental health illness**, often combined with substance abuse and at **risk of psychiatric placement outside their community**.[18]

### Issue II, Primarily Engaged Means:

**Primarily engaged** is a term of art defined by the Fifth Circuit in a similar situation as an indispensable prerequisite for the operation of the enterprise.[19] The Therapeutic Family Homes were created to care for mentally ill or severely emotionally disturbed children and such mental health issues are a pre-condition to admission. (*See*,

---

[18]    FCSA Grant Application found at http://www.google.com/search?hl=en&q=family+centered+youth+services obtained July 16, 2008 (emphasis added)

[19]  *Dole v. Odd Fellows Home Endowment Bd.,* 912 F. 2d 689, 695 (4th Cir. 1990)

Declarations)[20] (*See Also,* 2005 Report, (Exh 9, at 9 – 10, and 12); TFH Policies (Exh 6 at 2, 4 and Exh. 7); TFH Program Description (Exh. 8 at 2, 5); Grant Application (Exh. 5.) Taking together: FCSA's purpose, the nature of the clients it serves, the type of care it provides, the number of mentally ill or severely emotionally disturbed children residing on the premises with a mental health diagnosis from the DSM-IV, AXIS I or II. (Regitano Admits this at pp. 6, ¶9 of his affidavit) Taken together with the large percentage of children receiving psychotropic medications,[21] there is no other reasonable interpretation but that FCSA is primarily engaged in the care of the mentally ill and severely emotionally disturbed.

Irrespective of its claimed purpose, the reality is that the majority of residents at FCSA are mentally ill and/or severely emotionally disturbed and FCSA is **primarily engaged** in their care while they live at the TFH facility and are thus, by definition, engaged in commerce.

## The Admitting Entity Argument

FCSA claims that no psychiatrist, psychologist or physician admits children to the FCSA program. Nor, says FCSA, are the children evaluated by a psychologist, psychiatrist or physician upon admission. (Regitano Affidavit at pp. 4, ¶8 & ¶10.)

Plaintiffs counter this unsupported allegation with specific Declarations.[22] Further Proberts *et. al.* produce evidence promulgated by FCSA itself. This evidence constitutes

---

[20] Robert Probert Declaration, Loretta Probert Declaration, Donna Grimes Declaration, John Grimes Declaration, Gene Grissom Declaration, Sandra Grissom Declaration, Andrea Quintyne Declaration, *hereinafter,* "Declarations."

[21] Declarations

admissions directly contradicting the Regitano affidavit. (TFH Policies, Exh 6 at 5 and 7;

TFH Program Description, Exh. 8 at 3, 5; *see also*, Medicaid Requirements, Exh 10 at 3)

(diagnosis), and (an interdisciplinary team including psychiatrist, (Exh. 10 at 5), and finally

the required clinical records which must include a psychiatric assessment report. (Exh.10 at

6)

FCSA claims that the newly created positions which use a  "clinician," similar in

training and skills to those of psychiatrist and psychologist, and which did not commonly

exist in 1966, avoids 29 USC §203(r).  Proberts claim that Congress would have included

these clinicians in the definition if it had foreseen their existence.  The interpretations of the

DOL recognize these positions, differing only in name and not in duties performed. The

liberal interpretation to be given the FLSA instructs that these newly common positions in

the world of mental health treatment should be of no significance when interpreting

application of the Congressional inclusion of these houseparents as entitled to overtime.

Psychologist Steven Parker examined Mr. Regitano's list of diagnosis contained at

Opposition 16 – 17.  Dr. Parker declares:

> The difference between emotional disturbance and mental illness is not well-
> defined: in my opinion, they are very similar terms.   The Fairbanks North Star
> Borough School district uses the term "emotional disturbance" to qualify
> children for special education; obviously it would not be a good idea for the
> School District to call any of its students "mentally ill".  These are the criteria
> the School District uses (from the **Alaska Special Education Handbook**):
>
> **Emotional Disturbance**

---

[22]  Declarations

*To be eligible for special education and related services as a child with emotional disturbance, a child must:*

A. have a condition exhibiting one or more of the following characteristics over a long period of time and to a marked degree that adversely affects educational performance:

    I. an inability to learn that cannot be explained by intellectual, sensory, or health factors;

    II. an inability to build or maintain satisfactory interpersonal relationships with peers and teachers;

    III. inappropriate types of behavior or feelings under normal circumstances;

    IV. a generally pervasive mood of unhappiness or depression; or

    V. a tendency to develop physical symptoms of fears associated with personal or school problems.

B. require special facilities, equipment or methods to make his or her educational program effective; and

C. be diagnosed as emotionally disturbed by a psychiatrist or psychologist; and

D. be certified by a group consisting of qualified professionals and a parent of the child as qualifying for and needing special education services.

Dr. Parker Continues:

The State of Alaska uses the term "mental illness" as a critical criteria in commitment proceedings, and provides a legal definition: "*Mental illness" means an organic, mental, or emotional impairment that has substantial adverse effects on an individual's ability to exercise conscious control of the individual's actions or ability to perceive reality or to reason or understand; mental retardation, epilepsy, drug addiction, and alcoholism do not per se constitute mental illness, although persons suffering from these conditions may also be suffering from mental illness*." AS *47.30.915*

Adolescents are considered to be in a state of development; for example, one cannot diagnose someone under eighteen with a personality disorder. (Adolescents have "conduct disorders".) Similarly "mental illness"

is often a term applied to adults more than it is applied to children or adolescents.

In most cases, the diagnosis of a child as severely emotionally disturbed would be the equivalent of saying the child had a mental illness.

In order to differentiate the somewhat arbitrary distinction between "emotional disturbance" and "mental illness" of any child under consideration, it would be necessary to fully review the child's medical records and school records. There may be cases where it would be necessary to evaluate the child directly to make the distinction, if there has not been a thorough psychological or psychiatric evaluation.

It is my understanding that most of the adolescents at FCSA are on medications. Such medications are almost always prescribed by a psychiatrist and used to treat the symptoms of mental illness; I would suggest that the prescription of a psychotropic medication often suggests the presence of a mental illness.

Parker Declaration at ¶¶ 5 – 10, 13 and 15.

The attempt to differentiate these children to avoid the clear Congressional intent to include these houseparent within the coverage of the FLSA is unsupported and contradicted by the FCSA's own published materials and admissions contained in those materials.

Contrary to FCSA's assertion in its brief at 24, Opinion Letters by the Wage and Hour Division (WHD) and the Field Officers Handbook (FOH) are entitled to great weight in this decision.[23]

---

[23] The FOH provides administrative guidance and is entitled to great weight. *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-140, (1944); *quoted in Bragdon v. Abbott*, 524 U.S. 624, 642 (U.S. 1998); *see also, Samsom v. Apollo Res., Inc.,* 242 F.3d 629 (5th Cir. 2001)

Sources for FCSA's income include Federal money mostly paid through Medicaid. FCSA's 2004 Annual Report, (Exh. 9 at page 16) says that 66% of its revenue is derived from Medicaid.

In an opinion letter issued by the WHD, "the enterprise provision of the FLSA covers a private non-profit institution providing care for . . . neglected children, if it is operated as . . . an institution primarily engaged in the care of the . . . mentally ill or defective who reside on the premises of such institution."[24]

The letter further instructs that a non-profit is so engaged where "not fewer than 50% of the children residing with the organization were **admitted by a qualified physician, psychiatrist, or psychologist**."[25] "The term 'admitted' includes evaluations of mental or emotional disturbance by such a qualified practitioner, either subsequent to or preceding admission, as the cause for referral."[26]

The evidence and Declarations contradict Mr. Regitano's unsupported claim that no psychiatrist is involved. FCSA had a staff psychiatrist until recently, Dr. Ackley. The children were often referred from other, more intensive psychiatric placement and/or were

---

[24] Opinion Letter No. FLSA2005-8NA of Sept. 2, 2005, 2005 DOLWH LEXIS 46, available at http:// www.dol.gov/esa/whd/opinion/FLSANA/2005/2005_09_02_8NA_FLSA.pdf. (Exh. 2)

[25] *Id.*, *citing* U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div., Field Operations Handbook § 12g12 (1990), available at http:// www.dol.gov/esa/whd/ FOH/FOH_Ch12.pdf. (Exh. 3)

[26] Id. (*citing* same).

evaluated by a psychiatrist on FCSA's staff, or on contract, soon after admission. (Declarations) Since almost all the children at a TFH were on psychotropic medication[27] a psychiatrist had to evaluate the child. Moreover, the Medicaid rules required a psychiatrist's assessment as part of the child's medical records. (Exh. 10, at 10 at 6)

Most of the children were taking psychotropic medications. This, in itself is evidence of involvement by a psychiatrist. (Parker Declaration at ¶13.)(Declarations)

A psychiatrist was involved in referral and subsequent evaluation of these children, thus triggering FLSA coverage.

### Issue III: The 50% Suffering From Any Mental Infirmity Test

Another method to determine the "**primarily engaged**" question defines institutions "primarily engaged in the care of the mentally ill or defective residing on the premises" as follows: such an institution (other than a hospital) is an institution primarily engaged in (i.e., more than 50 percent of the income is attributable to) providing domiciliary care to individuals who reside on the premises and who, if **suffering from physical or mental infirmity or sickness of any kind**, will require only general treatment or observation of a less critical nature than that provided by a hospital. **Such institutions include** those institutions generally known as nursing homes, rest homes, convalescent homes, homes for

---

[27]  Declarations

Proberts v. FCSA,
Case No. 4:07-cv-00030-RRB
Reply to Opposition To Partial Summary Judgment Motion
Page 17 of 25

the elderly and the infirm, and the like *to wit*, **a domiciliary home for mentally ill or emotionally disturbed youth.**[28] 29 USC §203(r) and (s).

FCSA derives 66% of its income from Medicaid payments. (2004 Report Exh 9 at 15 and Declarations) most of its activities involve domiciliary care for disturbed or mentally ill youth. (Exh. 1, at 5 - 9) For instance, the 2005 Annual Report discusses the importance of domiciliary care to the program in the form of FCSA's **Therapeutic Family Homes which provide quality residential care to** male and female **youth** ages 12-18 **that are experiencing mental health and behavioral issues and are at imminent risk of** *psychiatric* **placement outside of their community.** (Exh. 9, at 9 and 12)

Therapeutic Family Homes provide services to youth who are **dually diagnosed with substance abuse and mental health disorders** or **beds for children currently placed out of state in** *psychiatric* **facilities or for children in danger of being sent out of state.** (Exh. 9, at 9) (emphasis added)

Examine also FCSA's 2008 grant application for a quarter million dollars to build therapeutic youth homes. Describing its project and justification, FCSA said:

> The therapeutic youth homes will provide residential service to five children per home. Children are typically ages 6–18(male and female) who are **experiencing some form of mental health illness**, often combined with substance abuse and at **risk of psychiatric placement outside their community**. (Exh. 5)

---

[28]  *Field Operations Handbook* § 12g02 (Exh. 3); *see also* Opinion Letter FLSA, 2004 DOLWH LEXIS 45, 2004 WL 3177888 (Nov. 30, 2004)(Exh. 4).

## FLSA Exception Summary

The DOL WHD Opinions and FOH are unanimous. If the residents are mentally ill or defective, and reside on the premises, then the houseparents are entitled to overtime and the other FLSA benefits.

FCSA's attempt to require Proberts *et. al.* to prove their entitlement "beyond a reasonable doubt" misunderstands the law. Proberts claim and have come forward with admissible evidence that they are within a specific inclusion in the FLSA coverage. Any attempt to avoid this coverage requires more than a preponderance of the evidence. It is either an affirmative defense or a request that the court create an exception to the rule. The U.S. Supreme Court has spoken to this issue in the context of the statutory exemptions to the FLSA's coverage. Where the Plaintiffs come forward with admissible evidence, and the purpose of the law is remedial, the **burden to rebut that evidence shifts to the Defendant** and the **quantum of proof** necessary rises from" preponderance" to "**clear and convincing" or "clearly and unmistakably**."

It is well settled that exemptions from the Fair Labor Standards Act are to be narrowly construed.[29] In determining whether an exemption applies, the "FLSA is construed liberally in favor of employees; exemptions 'are to be narrowly construed against the employers seeking to assert them. . . " [30] "An FLSA exemption will not be found 'except in contexts plainly and unmistakably within the given exemption's terms and spirit."[31]

---

[29] *Mitchell v. Kentucky fin. Co.*, 359 U.S. 290, 295 (1959)

Proberts *et. al.* have provided extensive documentary evidence promulgated by FCSA itself, together with detailed Declarations to support their claim to overtime pursuant to the FLSA. Mr. Regitano's affidavit is contradicted by other assertions by the FCSA and unsupported by any demonstration that his basis of knowledge is other than a conclusory statement, made in an effort to support FCSA's attempt to avoid paying the houseparents overtime as required by federal law. FCSA has not met its burden to demonstrate it can present clear and convincing evidence, sufficient to raise a triable issue of fact.

### Application To FCSA

FCSA is an institution primarily engaged in the care of the mentally ill or defective, who reside on the premises. (Declarations)(Grant application and Exh 5; 2005 Annual Report and other documentary evidence) In fact, the seriousness of the mental problems these residents exhibit is the very reason why the house parents are needed. (Declarations)

Many of the children are referred from an in-patient psychiatric center such as North Star Behavioral in Anchorage. The individual clients are thus either referred by a psychological professional and are also seen and diagnosed shortly after arrival by the psychiatrist. (Declarations)

---

[30] *Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005); *citing, Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)

[31] *Id*.; *Klem v. County of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000); *See also*, *Whitesides v. U-Haul Co.*, 16 P.3d 729, 731 (Alaska 2001)

The children are all diagnosed with an AXIS I DSM-IV diagnosis and most received psychotropic medications. (Declarations) Most receive Medicaid and this constitutes more than 50% of the income to FCSA. (Declarations and Exh 9 at 15)

Proberts and their co-plaintiffs have come forward with admissible evidence to prove their *prima facie* case. The Congressional designation of these homes as within the purview of the FLSA is unmistakable.

FCSA's conclusory affidavit by Mr.Regitano is unequivocally contradicted by the 2008 grant application which refers the State of Alaska to Mr. Regitano. (Exh 5) The other published materials create admissions contrary to the text of Mr. Regitano's conclusory assertions. (*See,* exhibits cited in the text). The affidavit thus fails to raise a factual dispute sufficient to meet the employer's burden to show it is within any exemption to coverage by the FLSA and defeat this Summary Judgment motion.

### Kitchens vs. Bowdrin

This case is more like *Bowdrin* than it is like *Kitchens*. Importantly, *Kitchens* rests partly on a paucity of evidence produced by the Plaintiffs. Proberts *et. al.* have not made that error. If anything, FCSA has only included its CEO's Affidavit which is conclusory and contradicted by FCSA's own published admissions.

*Bowdrin* is well reasoned and applies the law and interpretive decisions and materials to reach the only logical conclusion, that the houseparents there fell within the Congressional intent of 29 USC §203(r) and (s).

This case should be decided like *Bowdrin,* because Proberts and their co-plaintiffs expect that our Ninth Circuit would reach this conclusion, with similarly scholarly jurisprudence.

### Having Come Forward With Evidence, Both The Burden Of Proof And Quantum Of Evidence Shift To Favor Plaintiffs

The FCSA claim that Proberts must prove their case "beyond a reasonable doubt" is simply more play on words. Once Plaintiffs come forward with admissible evidence to support the *prima facie* case, and the purpose of the law is remedial, the **burden to rebut that evidence shifts to the Defendant**, and the **quantum of proof** necessarily rises from "preponderance" to "**clear and convincing" or "clearly and unmistakably**." *Clark v. J.M. Benson, Co.,* 789 F.2d 282, 286 (4th Cir. 1986); *.Renfro v. Indiana Michigan Power Co.,* 370 F.3d 512, 515 (6th Cir. 2004); *Aaron v. City of Wichita,* 54 F.3d 652, 657 (10th Cir. 1995); *Klinedinst v. Swift Investments, Inc.,* 260 F.3d 1251, 1254 (11th Cir. 2001).

If the FCSA seeks an exemption from the FLSA overtime requirements, the burden of proving the nature of the exemption shifts to the employer. *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 394, n.11, (1960).

### FLSA Application Summary

Defendants rely on the claim that the FLSA does not apply to these houseparents. If they are wrong they have alleged no further defense and Plaintiffs must prevail. The defendants must come forward with clear and convincing evidence that there are questions of fact to decide at trial or be subject to summary judgment. Summary judgment is not a rare

thing, as the defense would suggest. (Opposition at 3)  In fact, it is a required result where the non-movant fails to carry its burden. FRCP 56(c).[32]

## MISCELLANEOUS ISSUES

Plaintiffs withdraw the Motion for Summary Judgment as to the claim relying on AS 23.05.140(b), Count III, only, without prejudice to its examination at a later date.

## UNPAID HOURS WORKED
### (29 U.S.C. §206))

FCSA failed to pay Plaintiffs, and each of them, for all hours that they worked in violation of the FLSA, 29 USC §206.  This failure entitles the Proberts, and other similarly situated, to back pay,  potential prejudgment interest or liquidated damages, together with costs, full attorney fees and other such damages.  The question is the subject of a different motion.  Only liability is at question here.

## UNPAID OVERTIME
### (29 U.S.C. §207))

If FCSA failed to pay Plaintiffs, and each of them, for overtime pay in violation of the FLSA, 29 U.S.C. § 207(a)(1) Plaintiffs will be entitled to such pay.  This motion deals only with liability.

---

[32] The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  FRCP 56(c)

## ALASKA NINETY DAY PENALTY FOR FAILURE TO PAY WAGES DUE WITHIN THREE DAYS.
### (AS 23.05.140(d))

If FCSA was required to make the payment of wages due to Plaintiffs pursuant to this statute and failed to do so, FCSA will be liable for an appropriate amount to be proven at trial or in another motion.

## CONCLUSION

There are two ways to subject FCSA to overtime liability based upon the 1966 expansion of the FLSA coverage.  One way is to show that 50% or more of the residents were admitted by a mental health or medical professional.  The other way is to show that the institution providing domiciliary care derives more than 50% of its income from providing residential care to the infirm, including the mentally infirm.  FCSA meets both tests, despite its loud protestations that it does not.

The Plaintiffs' evidence supporting the underlying facts demonstrate that  the FLSA applies to the FCSA.  The FLSA applies to FCSA as it provides residential care where **"[not] fewer than 50% of the children residing with the organization were admitted by a qualified physician, psychiatrist, or psychologist.  FCSA is an institution primarily engaged in (i.e., more than 50% of the income is attributable to) providing domiciliary care to individuals who reside on the premises . . . . Such institutions are not limited to nursing homes, whether licensed or not licensed, but include those institutions generally known as nursing homes, rest homes, convalescent homes, homes for the elderly and the infirm, and the like."**

Independently and indisputably, FCSA receives more than 50% of its revenue from the domiciliary care of the infirm and/or the mentally ill. The FLSA is applicable to FCSA unless they can demonstrate why they should be exempted.

FCSA has not overcome this evidence with clear and convincing, or even a preponderance of the evidence, and no reasonable jury could disagree on this record. To the contrary, Summary Judgment is thus required by rule to enter against FCSA for each of the Plaintiffs for liability. Damages will wait for another day.

**RESPECTFULLY SUBMITTED** this 29th day of July, 2008.


S\ Kenneth Covell
Kenneth Covell (8611103)


CERTIFICATE OF SERVICE
This is to certify that a copy of the foregoing has been
Served electronically, via ECF, to the following party(s):

John Foster Wallace

Dated: 07/29/2008
By: /s/ Wendy Blakeman


S\ W. Blakeman
Wendy Blakeman for Kenneth L. Covell