Kenneth Covell
LAW OFFICE OF KENNETH COVELL
712 Eighth Avenue
Fairbanks, AK 99701
Phone: (907) 452-4377
Fax: (907) 451-7802
E-mail: kcovell@gci.net

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT FAIRBANKS

ROBERT PROBERT and LORETTA E. )
PROBERT, and others similarly situated, )
)
Plaintiffs, )
)
vs. )
)
FAMILY CENTERED SERVICES OF )
ALASKA, INC. and DOES I to X, (Managerial )
Employees Jointly Liable) )
)
Defendants. )
_____ ) Case No. 4:07-cv-00030-RRB

DECLARATION BY ANDREA QUINTYNE

I, ANDREA QUINTYNE, declare and state that:

1) I am an adult resident of the State of Alaska, fully competent to testify and I testify about the following facts upon my personal knowledge.

2) I was formerly employed as a "COORDINATOR I" by Defendant Family Centered Services of Alaska, Inc. (hereafter FCSA) from about 2004 to 2005. In this job I supervised youth counselors and foster parents. I provided on

call supervision to the TFH (Theraputic Family Home) personnel when I was on call.

3) Almost all of the children at FCSA came to the home with a diagnosis from another institution such as North Star Behavioral in Anchorage, DFYS, Colorado Boys & Girls Ranch. Many of these children had been placed outside Alaska and were being brought back now that an alternative was available.

4) When a child came without a professional referral and diagnosis they were seen shortly thereafter by Dr. Ackley, the psychiatrist. I have sat in the room with Dr. Ashley and the patient while this was done and observed Dr. Ashley look up the appropriate diagnosis in the literature and write the medications for the child based upon the diagnosis he assigned to the child. The children were then seen by Dr. Ashley at least every 3 months for evaluation and often more frequently if needed. I was responsible for gathering treatment team together and scheduling appointments.

5) Each child had a therapy plan that included group, and/or family therapy one time per week and at least one individual therapy session per week. I know this because it was my job to schedule these meetings.

6) Almost every child at FCSA was on strong psychotropic medications such as lithium. I know this because it was my responsibility to gather the medication sheets for each child in my case load and ensure that medication refills and evaluation appointments were scheduled.

7) I estimate that about 70% of the revenues for FCSA came from Medicaid based upon my personal knowledge of what was contained in the case notes and how much of this was billable to Medicaid. The other approximately 30% came from private health insurance and sources such as grants.

8) When I first came to FCSA there was a OCS statement saying that FCSA was a child placement facility. The fact is that this was an in-patient facility dedicated to the treatment and needs of severely emotionally disturbed children.

9) Medicaid required the use of certain key words to pay the FCSA claims. One of these was SED (severely emotionally disturbed). Absent the use of these words, Medicaid would not pay. FCSA was quite emphatic in requiring that these key words be used in the notes regardless of the true nature of the service rendered.

10) The Medicaid service requirements were applied to all children before they were sent to differing treatment programs unless private billing to a private insurer applied. The services rendered required we use words such as severely emotionally disturbed or chronically mentally ill when defining the services rendered. What is more, the services had to be defined so as to be "medically necessary" as the term is defined by Medicaid to insure payment to FCSA. (Service Requirements at 1 and 2) An Individualized Treatment Plan. (Service Requirements at 3) All children determined to be severely emotionally disturbed required assignment to an inter-disciplinary team. That team required the participation of a psychiatrist, psychologist or mental health professional clinician. (Service

Requirements at 5) All mental health providers must maintain clinical records and part of that record is a psychiatric assessment. (Service Requirements at 6)

11) I know that until the time that I left FCSA they were still paying the therapeutic house parents as exempt employees.

### Declaration

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed on July 26, 2008.            _____
                                                  Andrea Quintyne

# Service Requirements

## General Information

There are two kinds of services within Community Mental Health, which are outlined in the following two paragraphs. All services must be medically necessary, as defined below.

*Updated 06/01*

## Clinic Services

The "clinic" services listed in Table I-1 do not require prior authorization unless they exceed service limits. An enrolled provider of mental health services shall refer a recipient for mental health **rehabilitation** services if, during an assessment, evaluation, or treatment the provider determines the recipient may be:

- A severely emotionally disturbed child
- A severely emotionally disturbed adult
- A chronically mentally ill adult

*Updated 02/05*

## Rehabilitation Services

The "rehabilitation" services are listed in Tables I-2 and I-3 and do not require prior authorization unless they exceed service limits. Mental Health Rehabilitation Services are provided in combination with other mental health, medical, or social services provided as active treatment that can be expected to increase the recipient's ability to function within their home, school, and community. Mental health rehabilitation services may be provided on the premises of a community mental health clinic, in the recipient's home, or any other location that is appropriate for providing the services specified in the recipient's individualized treatment plan.

Mental health rehabilitation services may be recommended for a severely emotionally disturbed **child** by the recipient's outpatient interdisciplinary team and included in the individualized treatment plan. The outpatient interdisciplinary team shall meet at least quarterly while the recipient is in treatment to review the plan and its effectiveness.

Mental health rehabilitation services may be recommended for a severely emotionally disturbed **adult** or a chronically mentally ill **adult** by a physician or mental health professional clinician, and included in the individualized treatment plan. The physician or mental health professional clinician shall review the individualized treatment plan at least every six months for adult recipients age 21 and over. Mental health rehabilitation services may be provided on the premises of a community mental health clinic, in the recipient's home, or any other location that is appropriate for providing the services specified in the recipient's individualized treatment plan.

*Updated 02/05*

## Medical Necessity

All services must be medically necessary as described below.

The division will, in its discretion, periodically review the recipient's clinical record to determine whether the services requested are medically necessary. A medically necessary mental health rehabilitation service is a service designed to:

- screen recipient's for the presence of a mental or emotional disorder;
- assess the nature and extent of the mental or emotional disorder and its impact upon the recipient's ability to meet the demands of daily living, social, occupational, or educational functioning;
- diagnose the mental or emotional disorder;

Behavioral Health

I-4

Exhibit AQ page 1 of 6

- treat the mental or emotional disorder;
- provide rehabilitation for the mental or emotional disorder;
- prevent the relapse or deterioration of the recipient's condition due to the mental or emotional disorder.

In making its determination as to whether the proposed services are medically necessary, the division will consider the following:

- the recommendations of the referring physician, mental health professional clinician, or interdisciplinary team that prescribed, ordered, recommended, or approved the service;
- the recipient's diagnosis and level of functioning;
- the risk of danger from the recipient to self or other individuals;
- the appropriateness of the level of care and the need for inpatient or residential care;
- whether the intervention targets specific symptoms and behavioral and social dysfunction, and logically derives from the assessments and diagnosis;
- whether the proposed services in the individualized treatment plan are consistent with generally accepted community-based treatments and practices for the treatment of the specific symptoms and behavioral and social dysfunction;
- whether the recipient agrees with the referring physician, mental health professional clinician, or interdisciplinary team that the focus of the treatment will be the symptoms and behavioral and social dysfunction targeted for intervention;
- the extent to which past and current treatment has been successful in treating the symptoms and behavioral and social dysfunction;
- if the recipient is under 21 years of age, whether the recipient has, as indicated by the American Psychiatric Association's (DSM IV), dated 1994, an Axis V Global Assessment of Functioning (GAF) rating at admission of 50 or less, or the recipient has an Axis V Global Assessment of Functioning (GAF) rating at admission of more than 50, but exhibits specific mental, behavioral, or emotional disorders that place the recipient at imminent risk for out-of-home supervision or protective custody of state or local authorities;
- the extent to which a less restrictive or intrusive alternative treatment is not available;
- the extent to which a less expensive alternative is not available;
- the extent to which the units of service requested are no more than are necessary to meet the treatment or rehabilitation needs of the recipient;
- the extent to which the duration of services requested are no more than are necessary to reach the recipient-approved goals outlined in the individualized treatment plan;
- if the requested services are intended to prevent the relapse or deterioration of a mental disorder, the extent to which social functioning is improved through interventions provided as active treatment, targeted in specific therapeutic goals, and included in the individualized treatment plan;
- the likelihood that the recipient will benefit from any therapy provided on the same day as the recipient has received crisis intervention services.

Payment for services determined not to be medically necessary under this section is subject to recovery under 7 AC 43.081.

*Updated 06/01*

## Active Treatment

Active treatment means the planning, delivery, and monitoring of a dynamic set of inter-related, effective, culturally appropriate, individualized mental health rehabilitation and related support services designed to meet the mental health service needs of the recipient using a specific and clear intervention strategy targeting behaviors identified in an intake assessment and individualized treatment plan, and designed to improve functioning, reduce or eliminate negative symptoms, demonstrate ongoing measurable progress, and enhance the quality of the recipient's life; "active treatment" must be provided by qualified staff to a recipient who is an active participant in the treatment process; and must have a goal more specific than simply the avoidance of institutional care.

*Updated 06/01*

## Individualized Treatment Plan

All clients receiving services at a Community Mental Health Clinic must have a treatment plan. An individualized treatment plan is a written document that is developed in cooperation with the recipient and other members of any interdisciplinary team and is in compliance with all program rules, regulations, and statutes.

All Community Mental Health Clinic services must be specified in an individualized treatment plan, which describes the recipient's diagnosis, symptoms, and plans for intervention and treatment, and is included in the recipient's clinical medical record. The individualized treatment plan must include:

Identifying recipient information

- A list of the members of any interdisciplinary team participating in the planning and implementation of the plan
- A prioritized summary of the presenting problems and needs as stated by the recipient and identified during the intake and functional assessments
- A summary statement of the strengths and current resources of the recipient
- A diagnosis established through an intake assessment
- Clearly stated goals and measurable objectives derived from the intake and functional assessments designed to accomplish specific, observable changes in skills, symptoms, behaviors, or circumstances that directly relate to a better quality of life for the recipient
- Specific interventions, services, or activities that are designed to accomplish the stated goals or objectives, that promote active treatment, and are medically necessary
- The frequency and duration of each intervention, service, or activity included within the plan
- Identification of the individual provider responsible for implementing each goal, intervention, and service included in the treatment plan
- Locations where the intervention, service, or activity will be provided
- Specific time periods for attainment of each goal or objective
- Documentation that the recipient or the recipient's representative actively participated in the development of the treatment plan, or if active involvement is not possible, a statement of the reasons for the lack of participation
- Signatures of the following individuals, indicating review and approval: a) the recipient or the recipient's representative, unless the recipient or the recipient's representative is not willing or able to participate as described above; b) at least one physician or mental health professional clinician; c) the case manager, if one is assigned; d) those participating members of any interdisciplinary team who have reviewed and approved the plan
- A description of any need for additional evaluation or assessment

The person rendering the service and either the directing physician of the Community Mental Health Clinic or a mental health professional clinician must review, authorize, date, and sign the individualized treatment plan.

*Updated 06/01*

## Treatment Plan Review

The directing physician or mental health professional clinician must review the individualized treatment plan at least every three months for recipients under age 21, and at least every six months for recipients age 21 and over.

A treatment plan review must include:

- Recipient name, date of birth, address, and other identifying information;
- Date of the review;
- Period covered by the review;
- Updated or new assessments completed during the review period;
- Any change in the recipient's diagnosis;
- Brief analysis of recipient's progress toward each goal established in the individualized treatment plan;
- Brief analysis of the effectiveness of the strategies or techniques recommended by the mental health professionals treating the recipient;
- Brief analysis of the recommendations for and changes to treatment goals, objectives, strategies, interventions, frequency, or duration;
- Brief analysis of any change of individual providers, or any recommendations to change individual providers;
- Brief analysis of the expected duration of the medical necessity for the recommended changes;
- Examination of the recommended individualized treatment plan for the least restrictive setting and for services that are conducive to normal behavior;
- Examination of recommendations for discharge or transition criteria necessary to move the recipient to less restrictive services;
- Examination of recommendations for satisfaction of the recipient and recipient's legal representative, if any, with the treatment planning process, services provided, and progress toward established goals; and
- Dated signatures from the recipient or the recipient's legal representative; the primary mental health professional clinician; and mental health professionals treating the recipient, with indication of appropriate credentials for any mental health professional clinicians and mental health clinical associates.

*Updated 06/01*

## Interdisciplinary Team: Children's Mental Health Rehabilitation Services

### Definition

An interdisciplinary team is a group of individuals and professionals who are directly involved in the mental health treatment of a severely emotionally disturbed child. All children determined to be severely emotionally disturbed must be assigned an interdisciplinary team.

*Updated 06/01*

### Interdisciplinary Team Membership

The team members must include the:

- recipient;
- recipient's family members; including parents, guardians, siblings or other similarly involved in providing general oversight of the recipient;
- psychiatrist, psychologist or mental health professional clinician;
- recipient's mental health provider (if different from the mental health professional clinician);
- staff member of the Office of Children's Services if the child is in the custody or under the supervision of the state;
- a staff member of the Division of Juvenile Justice, if that division is involved with the care of the recipient;
- representative of a facility if the recipient resides in an alternative living arrangement; including foster care, residential care or institutional care and;
- representative of the recipient's public, private, or home educational system, including a teacher, special education consultant, speech therapist, or other representative involved in the recipient's education if the recipient is currently unable to succeed in school
- the case manager

*Updated 04/04*

### General Responsibilities

The recipient's interdisciplinary team must:

- Meet initially to develop, implement, monitor, and evaluate an individualized treatment plan designed to improve the quality of the recipient's life.
- Meet at least quarterly while the recipient remains in treatment to conduct a treatment plan review to review the child's individualized treatment plan and the effectiveness of the services being provided under that plan. The team must record the results of the review and changes in the individualized treatment plan in the recipient's clinical record.
- Include a recommendation for services and receive prior authorization by the division as described in 7AAC 43.486 to extend any service limit.
- Attend meetings of the interdisciplinary team in person or by telephone and be involved in team decisions unless the clinical record documents that
    - the other team members determine that participation by the recipient or other individual involved with the recipient's care is detrimental to the recipient's well being;
    - family members, school district employees, or government agency employees refuse to participate after the provider's diligent efforts to encourage participation; or
    - weather, illness or other circumstance beyond a team member's control prohibits the team member from participating

*Updated 06/01*

I-8                                                                                                                         Behavioral Health

Exhibit AQ 1 page 5 of 6

### Other Responsibilities

- If Medical Assistance rules require the approval, concurrence, or recommendation of the interdisciplinary team, the team may issue that approval concurrence or recommendation only upon the concurrence of:
    1. each team member;
    2. the recipient or the recipient's representative; and
    3. the majority of the team members other than those identified in 1 and 2 directly above.
- The Community Mental Health Clinic provider shall notify all absent interdisciplinary team members of the proceedings and decisions of the team meeting.

*Updated 06/01*

## Clinical Records

A provider of mental health services shall maintain a clinical record of services provided to a recipient.

A clinical record must include:

- An intake assessment report
- An individualized treatment plan report
- A psychiatric assessment report
- A functional assessment report, if the recipient receives mental health rehabilitation services in a community mental health clinic
- A progress note for each service for each day the service was provided. The progress note must:
    - be signed by the individual provider;
    - describe the credentials of the provider;
    - describe the service provided;
    - record the date of the service;
    - record the duration of each service;
    - document the recipient's progress toward identified treatment goals.
- The documentation of concurrence in accordance with 7AAC 43.470 by any interdisciplinary team organized under that section for each extension of a rehabilitation service beyond the limits in 7AAC 43.727
- A clinical record must include reports of the following services if provided to the recipient and reimbursed to a provider by the division:
    - A psychiatric assessment provided in a community mental health clinic;
    - A report describing the evaluation procedure and findings of any psychological testing and evaluation.

There is more information regarding record requirements and record retention discussed in Section III.

*Updated 04/04*

### Policy Clarifications

1. During the time period between the intake assessment and the development of a comprehensive treatment plan, mental health providers may utilize an interim treatment plan described in an addendum to the intake assessment. A comprehensive, written treatment plan must be appropriately developed and implemented within 30 days after treatment begins. (5/10/2001)