IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ROBERT PROBERT and LORETTA E. PROBERT, and others similarly situated,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>FAMILY CENTERED SERVICES OF ALASKA, INC., and DOES I to X (Managerial Employees Jointly Liable),<br><br>　　　　Defendants. | Case No. 4:07-cv-0030-RRB<br><br><br>**ORDER REGARDING MOTION**<br>**FOR PARTIAL SUMMARY JUDGMENT** |

I.   INTRODUCTION

　　　　Plaintiffs Robert and Loretta Probert have filed a Motion for Partial Summary Judgment at Docket 9 seeking determination of liability only.  Defendant has opposed the motion at Docket 18 and Plaintiffs replied at Docket 35.  Defendant was permitted to file a sur-reply, which was filed at Docket 46, and oral argument was requested.[1]  The Court now enters the following order.

---

　　　[1] Inasmuch as the Court concludes the parties have submitted memoranda thoroughly discussing the law and evidence in support of
　　　　　　　　　　　　　　　　　　　　　　　　　　(continued...)

## II. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing that there is no genuine dispute as to material fact.[2] The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[3] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[4] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable

---

(...continued)
their positions, it further concludes oral argument is neither necessary nor warranted with regard to the instant matter. See Mahon v. Credit Bureau of Placer County Inc., 171 F.3d 1197, 1200 (9th Cir.1999)(explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required). As a result, Plaintiffs' Request for Oral Argument at Docket 49 is hereby **DENIED**.

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[3] *Id.* at 323-325.

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

inferences must be drawn in favor of the non-movant.[5] However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[6]

### III. BACKGROUND

This matter arises from an employment dispute between Robert and Loretta Probert and their former employer, Family Centered Services of Alaska, Inc. ("FCSA"). According to FCSA, in July 2006 it offered Robert and Loretta, as a married couple, positions as "family parents" in one of its "therapeutic family homes" for children. Robert was employed as the primary parent to work 40 hours per week, while Loretta was employed as the secondary parent at 18 hours per week. As family parents, the Proberts were required to "reside in and manage the daily operation" of the family home and to care for up to five children placed in the home. They were compensated more than $65,000 annually, exclusive of their room and board. The Proberts were terminated from their employment on August 29, 2007.

The dispute revolves around the Proberts' payment. FCSA alleges that Robert and Loretta Probert were salaried employees,

---

   [5]   *Id.* at 255.

   [6]   *Id.* at 248-49.

employed to work 40 and 18 hours respectively, and that the Proberts expressly agreed and understood that they were exempt from the state's overtime requirements.[7] The Proberts argue that they were entitled to overtime payment under the Federal Fair Labor Standards Act and seek reimbursement for past unpaid overtime wages.[8] FCSA's position is that the Fair Labor Standards Act does not apply.

**IV.   DISCUSSION**

    **A.   Fair Labor Standards Act - 29 U.S.C. § 201, et. seq ("FLSA")**

The FLSA of 1938 was established to regulate industries engaged in commerce or in the production of good for commerce in order to maintain the "minimum standard of living necessary for health, efficiency, and general well-being of workers. . ."[9] Section 204 created a Wage and Hour Division in the Department of Labor.  Section 206 established the minimum wage, and section 207 established the maximum hours employees may work under the Act:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is

---

   [7] See  AS §23.10.055(a)(12).

   [8] Plaintiffs do not seek summary judgment on the state law issues at this time.  See Docket 35 at 23.

   [9] 29 U.S.C. § 202.

ORDER RE MOTION FOR PARTIAL SUMMARY JUDGMENT - 4
4:07-CV-0030-RRB

>employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.[10]

Pursuant to § 207, therefore, an employer is subject to the FLSA's maximum hours provision if either of two conditions exist: (1) the employee is engaged in commerce or in the production of goods for commerce, or (2) the employee is employed by an *enterprise* engaged in commerce or in the production of goods for commerce.

>(1) "Enterprise" means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose,. . . .
>
>(2) For purposes of paragraph (1), the activities performed by any person or persons-
>
>(A) in connection with the operation of a hospital, **an institution primarily engaged in the care of** the sick, the aged, **the mentally ill** or defective **who reside on the premises of such institution**, a school for mentally or physically handicapped or gifted children, a preschool, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is operated for profit or not for profit) . . . . shall be deemed to be activities performed for a business purpose.[11]

---

[10] 29 U.S.C. § 207(a)(1).

[11] 29 U.S.C. § 203(r)(emphasis added).

An "enterprise engaged in commerce or in the production of goods for commerce" includes an employer that is "engaged in the operation of . . . an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution," regardless of whether or not the institution is operated for profit or not for profit.[12]  Once it is established that the FLSA applies, Section 213 establishes numerous exemptions.

### B.   Enterprise or Individual Coverage

Plaintiffs do not argue that they, as employees, were individually engaged in commerce or in the production of goods for commerce.  Rather, they assert that they were "employed by an *enterprise* engaged in commerce or in the production of goods for commerce."  Plaintiffs argue that FCSA is an institution of a type specially designated by Congress to be subject to FLSA protections under 29 U.S.C. §203(r), because it is "engaged in the operation of . . . an institution primarily engaged in the care of the . . . mentally ill or defective who reside on the premises of such institution."

FCSA argues it is not subject to FLSA.  Specifically, FCSA argues that it is a non-profit organization that does not

---

[12]   29 U.S.C. § 203(s)(1)(B). The FLSA does not define "institution" or "mentally ill."

engage in interstate commerce for any business purpose, that all of the children in the therapeutic family homes are residents of the State of Alaska, and that the homes are not "institutions" and the children are not "mentally ill or defective." The homes are licensed as a "residential child care facility," not a mental institution or residential psychiatric treatment center. FCSA states that the children in its care are referred by parents and guardians, the State, public agencies, or the school district, but not by psychiatrists, psychologists, or physicians. Children in the family homes are evaluated by a clinician/social worker and an Individual Service Plan is developed for each child. Weekly therapy is provided by a clinician, not a psychiatrist, psychologist, or physician. The goal of the family homes is to transition the child from the home into a private home, stable foster home, or independent living. While many of the children are diagnosed with emotional and/or behavioral problems, they are not suffering from severe mental illnesses, nor do they require institutionalization. FCSA asserts that children are referred to the family home because they lack a safe and stable home to cope with their problems and foster healthy development.

In rebuttal, Plaintiffs argue that FCSA's promotional materials and grant application, together with internal guidelines, *require* that a child be mentally ill and/or severely emotionally

disturbed in order to be eligible for placement.[13]  In support, Plaintiffs have filed numerous exhibits indicating that FCSA established its "therapeutic youth homes" specifically for the purpose of providing residential services to children experiencing some form of mental illness.[14] Plaintiffs argue that most of FCSA's referrals are from other mental health programs and that all clients see a psychiatrist shortly after admission.  They allege that a psychiatrist is part of the "interdisciplinary team" that serves each child and the required clinical records must include a psychiatric assessment report.[15]  Plaintiffs rely on the opinion of Dr. Steven Parker, a psychologist, who opines that "in most cases, the diagnosis of a child as severely emotionally disturbed would be the equivalent of saying the child had a mental illness."[16] Plaintiffs argue: "the attempt to differentiate these children to avoid the clear Congressional intent to include these houseparent [sic] within the coverage of the FLSA is unsupported and

---

[13]  Docket 35 at 5.

[14]  See Docket 36, Exhibits 5, 6, 7, 8, 9 & 10.  It appears that the parties use the phrase "therapeutic youth homes," "therapeutic family homes," and "family homes" interchangably.

[15]  Docket 36, Ex. 10 at 6.

[16]  Docket 35 at 15.

contradicted by the FCSA's own published materials and admissions contained in those materials."[17]

In its sur-reply, Defendant disputes both the authenticity and the relevance of many of the documents attached to Plaintiffs' reply.[18] Defendant complains that Plaintiffs fail to distinguish those exhibits which pertain to the therapeutic family homes versus FCSA's other programs and services. In addition, several of the exhibits are dated as early as 1998, before FCSA opened its therapeutic family homes program in 2003, and even the 2005 manual cited by Plaintiffs pre-dates the Plaintiffs' 2006-07 employment. Some of the documents are incomplete, and other exhibits combine pages from multiple documents. Defendant objects to the use of statements by Andrea Quintyne because she was employed by FCSA in a program other than the therapeutic family homes program and she lacks personal knowledge regarding the program. Defendant's Executive Director, John Regitano, states under oath that children with serious mental illnesses are not admitted into therapeutic family homes.

---

[17] *Id.*

[18] Docket 46 at 4-5.

## C. Similar Cases

This issue appears to be a matter of first impression in the Ninth Circuit. Indeed, there are few case in any circuit that address this specific issue.

In *Kitchings v. Florida United Methodist Children's Home, Inc.*,[19] the Court found there was no enterprise coverage where the religion-based, non-profit organization was dedicated to providing residential care and treatment to children who had been abused, neglected, or otherwise subjected to severe emotional damage. The Court found this organization was not "primarily engaged in treating the mentally ill." One significant fact was that if a child had a serious psychological disorder, he or she would not be accepted for residency.[20]

In *Bowrin v. Catholic Guardian Soc.*,[21] the Court noted that the FLSA is intended to be "broad in its scope," citing 29 C.F.R. § 779.101. The Court found that four "assertive community treatment" homes ("ACT homes"), designed to serve hard-to-place children with diagnosed mental illness, qualified as an "enterprise" covered by FLSA. Although the executive director of

---

[19] 393 F. Supp. 2d 1282, 1297 (M.D. Fla. 2005).

[20] *Id.* at fn. 32.

[21] 417 F. Supp. 2d 449 (S.D.N.Y. 2006).

the ACT homes stated in his deposition (as amended) that the "fundamental purpose is to care for abused and neglected children or persons in need of supervision who happen to have severe mental illness, as opposed to that its primary intent is to care for severely mentally ill children," the Court concluded that treatment of mental illness was "fundamental to ACT's mission" and mental health status was a significant factor to the program.[22] "Taking together the ACT program's purpose, the nature of the population it serves, the type of care it provides, and the factors considered for admission, the Court finds that it is 'primarily engaged' in providing residential care to the mentally ill, and therefore is operated for a business purpose under the Act."[23]

V.   CONCLUSION

Although the determination of "enterprise coverage" under the FLSA is a question of law, it must be resolved on the facts of each case.  *Donovan v. Weber*.[24]  *Kitchings* and *Bowrin* were decided on specific facts unique to each case.  In this matter, the mental status of the children housed in FCSA's therapeutic family homes is a genuine issue of material fact.  The Court cannot determine if

---

[22]   *Id.* at 462.

[23]   *Id.*

[24]   723 F.2d 1388, 1392 (8th Cir. 1984).

the FLSA applies to this matter absent clear resolution of this issue. The record before the Court is, at best, contradictory.

Accordingly, the Motion for Partial Summary Judgment at Docket 9 is **DENIED** without prejudice.

ENTERED this 12th day of September, 2008.

                                        S/RALPH R. BEISTLINE
                                      UNITED STATES DISTRICT JUDGE