Kenneth Covell
LAW OFFICE OF KENNETH COVELL
712 Eighth Avenue
Fairbanks, AK  99701
Phone: (907) 452-4377
Fax:     (907) 451-7802
E-mail: kcovell@gci.net

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT FAIRBANKS

| | |
|---|---|
| ROBERT PROBERT and LORETTA E. PROBERT, <br><br>　　　　Plaintiffs, <br><br>　　vs. <br><br>FAMILY CENTERED SERVICES OF ALASKA, INC. <br><br>　　　　Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 4:07-CV-00030-RRB |

**PROBERT, *ET. AL.* – SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT.**
**(The Children at Defendant's Therapeutic Homes Are Sick, Defective, Or The Like.)**

This court has previously decided a Partial Summary Judgment Motion concerning

the applicability of the FLSA where the standard considered was "mentally ill."  This Partial

Summary Judgment Motion focuses on the applicability of the FLSA under a broader criteria

than the definition of "mentally ill."  Whether or not the residents of the Therapeutic Family

Homes are mentally ill, they are admittedly sick, defective, or in need of care in some way. This is all that 29 USC §203(r)(2)(A) and (s)(1)(B) require to impose the duty to pay overtime.

Proberts, and those similarly situated, who have joined them in this lawsuit (Probert), move this court for Partial Summary Judgment ruling that 29 USC §203(r) and (s) make Family Centered Youth Services (FCYS) subject to the overtime provisions of the Fair Labor Standards Act (FLSA).

## Summary

FCYS' 2008 internet publication informs us that: "Family Centered Services of Alaska (FCSA) was rated number one this year by the State of Alaska, Department of Health and Social Services who rated each of the 63 **mental health treatment grantees** in Alaska . . ." (Exh. 1 at pp. 1, ¶2)(emphasis added)[1]

FCYS seeks to avoid the overtime obligation imposed by 29 USC §203(r) and (s). FCYS has expended substantial effort to characterize its organization as exempt, by portraying itself as analogous to the institution in *Kitchings v. Fla. United Methodist Children's Home, Inc.*[2] Mr. Regitano repeatedly expresses facts and conclusions in language that will support the claim that FCYS is "strikingly" similar to the organization in *Kitching*. This is undeniably good lawyering, but it relies too much on a technical definition of "mentally ill" rather than grasping the big picture Congress had in mind, extension of FLSA

---

[1] http://www.familycenteredservices.com/Announcements.htm

[2] *Kitchings v. Fla. United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282 (M.D. Fla. 2005).

protections to institutions caring for the sick, aged, mentally ill or defective, and similar institutions, all providing less intensive care than provided by hospitals.

Mental illness is not required to trigger 29 USC §203(r) and (s). What is required is serving those who require care because of any infirmity, when the care required is less than that requiring institutionalization in a hospital. Examining the statute, the Department of Labor interpretation, and the sworn testimony of FCYS's own executive director, it becomes apparent that FCYS, and its Therapeutic Family Home's, is an institution covered by the FLSA.

When litigating the prior summary judgment motion FCYS focused the motion upon the status of the Therapeutic Family Home residents as "mentally ill." John Regitano (Regitano), the executive director of FCYS, provided two affidavits. To demonstrate that the Theraputic Family Homes residents are not mentally ill, Mr. Regitano makes a very convincing case that the residents are sick, defective, or in need of care in some way.

Lacking statutory definitions, or precedent, this court must construe the statute in accord with its legislative intent. Because the Department of Labor has spoken, this court is required to apply that interpretation. When the appropriate construction of 29 USC §203(r) and (s) is applied to the facts admitted by Mr. Regitano, and evidenced elsewhere, 29 USC §203's applicability makes FCYS responsible for paying its house parents overtime.

FCYS will argue that it is not "primarily engaged" in these activities and thus escapes the requirements of the FLSA. Mr. Regitano's affidavits, FCYS's own published literature,

and FCYS' grant application conclusively demonstrate that FCYS is "primarily engaged" in these activities and subject to the FLSA.

### Mr. Regitano's Description Of Who The Clients Are and What FCYS Does For Those Clients

Mr. Regitano has provided two affidavits in this case. Both of these affidavits support Probert's assertion that FCYS is required to pay its Therapeutic Family Homes' house parents overtime.

Mr. Regitano begins by describing the Theraputic Family Homes as providing **residential care** for children who are experiencing **emotional and behavior problems**, and are **at risk of placement of institutional facilities.** (Regitano Affidavit I, ¶2)(emphasis added)

Mr. Regitano says that Medicaid pays for services rendered by the caregivers in the Therapeutic Family Homes. (Regitano I, ¶14) Medicaid is designed to pay for **medical treatment**.[3]

Mr. Regitano describes the **primary purpose** of the Therapeutic Family Homes as **providing an alternative for children at risk of being institutionalized** because they lack an environment in which to cope with their problems. (Regitano I at ¶2)

Mr. Regitano has told us that the children in a Therapeutic Family Home have **emotional and behavioral problems severe enough to make institutionalization a risk**. (Regitano I at ¶2)

---

[3] Medicaid is a federal program to finance **health care** for the poor, in cooperation with the states. Statute: Social Security Act, Title XIX. enacted by the Social Security Amendments of 1965, Pub.L. 89-97, 79 Stat. 343, codified as amended at 42 USC 1396-1396v.

Mr. Regitano tells us that the clients **admitted** to a Therapeutic Family Home are not evaluated by a psychiatrist, psychologist, or a physician. (Regitano I, ¶8)  Mr. Regitano instructs us that "[c]hildren admitted to the Family Home receive **clinical intakes, functional assessments, and evaluations by a mental health clinician.**  An Individual Service Plan ("ISP") is developed for each child by a **treatment team**, which identifies the child's **diagnosis** . . . goals and ultimate **discharge."** (Regitano I, ¶8)(emphasis added)  The goals typically address **behavioral or social adjustment problems**, . . . The children are taught . . . **skills for coping with their emotions**, . . . **behavioral techniques to control their behavior** . . . The children generally have one hour of group **therapy** . . . and one hour of **individual therapy** once a week.  **Therapy is conducted by a clinician**, and not by a psychiatrist, psychologist or physician.  (Regitano I, ¶8)(emphasis added)

The Family Home provides a variety of services, ". . . as well as **a limited amount of therapy**, . . . **Therapy is just one small part of a milieu of services provided** . . ." (Regitano I, ¶9)(emphasis added)

FCYS has **master's level clinicians**. (Regitano II, ¶5 and 8) (emphasis added) FCYS also has a **contracted psychiatrist**. (Regitano II, ¶6)  At least some of the children in the Therapeutic Family Homes require **medication**. (Regitano II, ¶6)  Children admitted into the Family Home are **evaluated by the mental health clinician and provided with a diagnosis**.[4]  The **most common diagnoses** are set forth in paragraph 10 of Regitano I and

---

[4] Probert thinks it would be more appropriate to say that the clinician *identifies* the child's diagnosis.  The DSM-IV is used.  This is a Multi-axial system.  The DSM-IV organizes each psychiatric diagnosis into five levels (axes) relating to different aspects of disorder or

include: Attention Deficit, Depressive Disorder, Reactive Attachment Disorder, Post Traumatic Stress Disorder, Anxiety Disorder, and many others. (Regitano I, ¶10)

Mr. Regitano admits that these evaluations indicate that the child **has emotional and/or behavioral problems**, although he also says they do not constitute metal illness or require institutionalization. (Regitano I, ¶10) Mr. Regitano acknowledges that the children admitted to a Therapeutic Family Home need a stable and supportive residence and **have behavioral problems which, if not addressed, could ultimately develop into a serious mental illness and require institutionalization.** (Regitano II, ¶9) According to Mr. Regitano, a child with severe mental illness would not be admitted to a Therapeutic Family Home.

Presumably, a child with a less severe affliction is the object of the care provided in the Therapeutic Family Home. As Mr. Regitano said: "Some diagnosis require intense treatment . . ., while others do not." (Regitano II, ¶17) "**Children residing in Therapeutic Family Homes have Axis I diagnosis**. However, they are stable, have conscious control of themselves, are able to perceive reality, reason and understand, and their diagnoses are usually related to behavioral **health** problems. Children residing in Therapeutic Family Homes do not require **intense treatment** or institutionalization. . . . **The low level of treatment . . . would be inadequate for children with more serious diagnoses.** (Regitano II, ¶17)(emphasis added)

---

disability. For instance, the Axis I identifies the clinical disorders, including major mental disorders, as well as developmental and learning disorders.

Mr. Regitano's affidavits were already filed in this court and are attached, with highlighting, for the court's convenience. (Exh. 2 and 3)

Other evidence supports the proposition that these children, even if not meeting the technical definition given to mentally ill, are in need of care and it is sensible to regard them as being sick, ill, defective, or otherwise infirm. For instance, the application for employment asks a houseparent about what problems he or she expects when dealing with **Severely Emotionally Disturbed** youth. (Exh. 4) FCYS' Therapeutic Family Home Policies and Procedures apparently promulgated in 2004 describes the program in words which mimic Mr. Regitanos, except the written description goes a bit further and says that, "**All the children in the home will meet the mental health criteria for severely emotionally disturbed (SED)** . . ." (Exh. 5 at pp. 2, ¶1)(emphasis added) The client Profile in the Policies and Procedures Manual says that all children admitted to the program will:

   1) Require stabilization for actions that are the result **of mental illness and/or behavior disorders**;

   2) Have been determined through clinical assessment to be **suffering from a mental illness** not of an organic origin;

   3) Be in **imminent need of placement in a mental health treatment facility**;

   4) Have been determined by the TFH admission review that placement would **be beneficial for the child's stabilization and/or reduction or resolution of their mental illness**.

(Exh. 5 at pp 4, ¶4)

The Policies and Procedures Manual also says that children who generally *will not* be **admitted** to the program include those who need a **temporary foster care** placement **but**

**who do not require stabilization and/or treatment due to their mental illness**. (Exh. 5 at pp. 5, ¶2)

Mr. Regitano's testimony and FCYS' published materials, together with questions on the house parent application, are consistent: these patients are sick or infirm, or the like, and the FLSA specifically makes the heroic house parents in these homes entitled to overtime.

### 29 USC §203(r) And (s) Makes An Institution Primarily Engaged In The Care Of The Sick, Aged, Ill Or Defective Subject To The Overtime Requirements Of The FLSA

29 USC §203 (r) says:

> (1) "Enterprise" means the related activities performed . . . by any person for a common business purpose . . .
>
> (2) . . . [T]he activities performed . . .
>
> (A) in connection with the operation of . . . an institution primarily engaged in the care of the sick, . . . or defective who reside on the premises of such institution, . . . (regardless of whether or not such hospital, institution, or school is operated for profit or not for profit) . . .

29 USC §203 (s) says:

> (1) "Enterprise engaged in commerce . . . means an enterprise that . . ."
>
> (B) is engaged in the operation of . . . an institution primarily engaged in the care of the sick, . . . or defective who reside on the premises of such institution, . . . (regardless of whether or not such hospital, institution, or school is public or private or operated for profit or not for profit).

Statutory construction is a matter of law allocated to this court.[5]  Because there is no definition of "sick" or "defective" in the statute, and no case law was found which will assist

---

[5] *Southwest Marine, Inc. v. United States*, 535 F.3d 1012, 1016 (9th Cir. 2008).

this court, it becomes this court's duty to interpret the statute in light of its intent, history, purpose and structure.[6]

### The Field Operations Handbook (FOH)

The Secretary of Labor's interpretation of its regulations is entitled to deference and is controlling unless plainly erroneous or inconsistent with the regulation.[7] The only available administrative construction seems to be in the FOH.(Exh. 6)  The Wage And Hour Division's (WHD's) Field Operations Handbook (FOH) is an operations manual that provides WHD investigators and staff with interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance.[8] This is administrative interpretation of the statute and, because it is consistent with the statute, is a binding interpretation.[9]  The FOH construction confirms Probert's thinking.

The FOH, at section 12g02, says that 29 USC §203 applies to . . . "individuals who reside on the premises and who, if suffering from **physical or mental infirmity or sickness of any kind**, will **require only general treatment and observations** of a **less critical nature than that provided by a hospital**.  Such institutions are not limited to nursing homes, . . . but include those institutions generally known as nursing homes, rest homes,

---

[6] *Resident Councils v. Leavitt*, 500 F.3d 1025, 1031 (9th Cir. 2007).

[7] *Auer v. Robbins,* 519 U.S. 452, 461, (1997).

[8] *See e.g., Jacobs v. New York Foundling Hospital,* 483 F. Supp. 251, 260 (Dist. N.Y. 2007), citing,  *Reich v. Miss Paula's Day Care Ctr., Inc.,* 37 F3d 1191, 194 (6th Cir. 1994).

[9]  *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842-43, (1984).

convalescent homes, homes for the elderly and infirm, **and the like.**" (FOH 12g02)(emphasis added)

Observe the similarity between the institutions described in the FOH and the Therapeutic Family Homes. The patients admitted to the Therapeutic Family Homes have a physical or mental infirmity (of any kind) and require only general treatment and observation of a less critical nature than supplied by a hospital. **A Therapeutic Family Home is a home for the infirm and/or the like.** (FOH 12g02)

Remember that Mr. Regitano said that, "Children residing in Therapeutic Family Homes have Axis I diagnosis and do not require intense treatment or institutionalization. . . . The low level of treatment . . . would be inadequate for children with more serious diagnoses." (Regitano II, ¶17) In other words, like the FOH discussion, these patients have a mental infirmity (whether it is a technical mental illness or not) and require, and are provided with, less intensive treatment than would be given at a hospital.

Similarly, FOH 12g12 talks about "Institutions for the Residential Care of Emotionally Disturbed Persons." The FOH does not use the words "mentally ill." The FOH says "mental or emotional disturbance." Mr. Regitano described a "Therapeutic Family Home as providing residential care for children who are experiencing **emotional and behavior problems**, and are at risk of placement of institutional facilities**.** (Regitano Affidavit I, ¶2)(emphasis added) Probert suggests that "emotional and behavioral problems" equal "mental or emotional disturbance." Therefore, FOH 12g12 makes the FLSA applicable.

The FOH 12g15 discusses the meaning of the word "care" in expansive terms. The FOH says that "Institutions which care for the aged (as well as other institutions which care for the sick, or for the mentally ill or defective) can vary in the care provided." By analogy, if the . . . occupants, . . . must be closely watched because their . . . condition necessitates their being supervised and guided, even though they receive no medical attention, they may . . . be receiving care.

### Statutory Construction

When interpreting the FLSA, this court should be "mindful of the directive that [the statute] is to be liberally construed to apply to the furthest reaches consistent with Congressional direction."[10] Where there are two equally plausible interpretations, and one favors the employee, that interpretation should be adopted.

Statutory interpretation begins with the statutory language.[11] Where the statutory terms are clear, the inquiry is at an end.[12] Where statutory terms are not otherwise defined, individual words in a statute carry "their ordinary, contemporary, common meaning."[13]

The relevant statutory language is quoted above. Probert contends that it is clear that an institution is covered if it cares for the sick; it cares for the defective; it cares for the aged;

---

[10] *Biggs v. Wilson*, 1 F.3d 1537, 1539 (9th Cir. 1993).

[11] *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980).

[12] *Rubin v. United States*, 449 U.S. 424, 430 (1981).

[13] *Perrin v. United States*, 444 U.S. 37, 42 (1979).

it cares for the mentally ill. Regardless of whether the Therapeutic Family Home's patients fall within the technical reading of the term "mentally ill" as used by FCYS, the patients are at very least "sick" because they require "care" and receive "treatment." Probert thus claims that enterprise liability attaches, entitling the house parents to overtime.

The word "sick" means in need of care or the state of being infirm. The Merriam Webster's Medical Dictionary defines "sick" to mean affected with disease or ill health and mentally or emotionally unsound or disordered.[14]

The ordinary contemporary and common meaning of the word "sick" supports Proberts' position.

This meaning is also consistent with the Department of Labor's interpretation found in its FOH, a book used in the enforcement of the law. The FOH at section 12g02 says that 29 USC §203 applies to . . . "individuals who reside on the premises and who, if suffering from **physical or mental infirmity or sickness of any kind**, will **require only general treatment and observations** of a **less critical nature than that provided by a hospital**.[15]

When reviewing an agency's construction of a statute it is charged with administering, this court will determine if the statute is ambiguous. If it is not, then the language in the statute controls.[16] If the statute is uncertain or ambiguous with respect to a specific issue,

---

[14] The Merriam Webster's Medical Dictionary (1995) at 643, *see also,* The Merriam Webster's Online Dictionary at http://mw1.m-w.com/dictionary/sick.

[15] (FOH 12g02)(emphasis added).

[16] *Contract Mgmt., Inc. v. Rumsfeld*, 434 F.3d 1145, 1146-47 (9th Cir. 2006) (*per curiam*) (*quoting, Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842-43, (1984).

this court cannot simply impose its own construction."[17] *Chevron* requires that this court defer to the agency's interpretation if it is based on "a permissible construction of the statute."[18] This court must accept the Department of Labor's interpretation embodied in the FOH as if it were controlling precedent.[19]

Either way, sections 203(r) and (s) must be applied as including within their scope any sickness, whether rising to the level of technically "mentally ill" or not, so long as the sickness requires treatment and observation of a less intensive nature than that provided in a hospital.

Applying this interpretation FCYS is obligated by 29 USC §203(r) and (s) to pay Proberts overtime.

### Primarily Engaged – Test I

The FLSA deems activities performed in connection with the operation of . . . an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution, . . . regardless of whether or not such . . . institution or school is operated for profit or not-for-profit as within the FLSA's coverage. Such activities are deemed to be activities performed for a business purpose.[20]

---

[17] *United States v. Lopez-Perera,* 438 F.3d 932, 935 (9th Cir. 2006).

[18] *Chevron,* 467 U.S. at 843.

[19] *Id.*

[20] 29 U.S.C. § 203(r)(2)(A)

An enterprise is engaged in commerce where, *inter alia*, it "is engaged in the operation of … an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution . . . ."[21]

Proberts claim that FCSA is engaged in such activities. FCSA will without doubt deny this interpretation.

### Despite FCSA's Self-Declared Purpose, In Reality It Primarily Cares For The Mentally Ill And/Or Defective Who Reside On Its Premises

### (Primary Purpose Does Not Equal Primarily Engaged)

The FCSA is subject to the FLSA because the activities are performed:

> (1) In connection with the operation of . . . an institution **primarily engaged** in the **care of** the sick, the aged,. . . **the mentally ill or defective** who reside on the premises of such institution, . . . .[22]

FCSA claims that its **primary purpose** is to provide an alternative for children that are at risk of being placed in institutional facilities because they lack . . . suitable home environment . . . to cope with their emotional and behavioral problems. (Regitano I at ¶2 and (Regitano II, ¶9)

---

[21] 29 U.S.C. § 203(s)(1)(B) and according to a DOL opinion letter issued on September 2, 2005 (Exhibit 4) , "the enterprise provision of the FLSA generally does not cover a private non-profit institution providing care for . . . **neglected children**, **unless** that institution is operated as . . . **an institution primarily engaged in the care of the sick, the aged**, **. . . the mentally ill or defective who reside on the premises of such institution.**" Opinion Letter No. FLSA2005-8NA of Sept. 2, 2005, 2005 DOLWH LEXIS 46. (Exhibit 6)(emphasis added)

[22] 29 CFR §779.21(emphasis added)

Examine FCSA's own advertising literature and its 2005 Annual Report[23] to see that services that FCSA provides are related to sickness, infirmity, or mental health related and funded for that reason.

> FCSA is a non-profit, 501(c)(3) corporation, founded July 1, 1989, for the **purpose of expanding the availability of specialized mental health services for Alaskan children and their families. FCSA has historically provided these unique services in a concerted effort to address each child's mental health needs** while keeping the child as close to their family, community and region as possible and in the least restrictive setting. (2005 Annual Report found at http:// www.familycenteredservices.com/ Consumer_Information.htm at Exh. 7, page 4 (emphasis added).
>
> FCSA has become **recognized as a forerunner in the delivery of individualized mental health services**, *Id.* at pp. 4 (emphasis added).
>
> This year again we were able to add qualified professional staff members dedicated to the delivery of **individualized services to severely emotionally disturbed children.** *Id*. at page 4 (emphasis added)
>
> Two out of the ten programs currently in operation are recent developments, including **Therapeutic Family Homes (Therapeutic Family Home) (January 2004)** and **Youth Education Support Services (YESS) Elementary** (November 2004). The **YESS Secondary High School is the longest running program of FCSA, in operation since 1989.** Placement (ATOP) began operation in 1991; foster care licensing in 1993. **As the needs of Alaskan children and their families requiring mental health and dual diagnoses services have changed over time FCSA has continually changed over the years to meet those needs**. *Id. at page* 4 (emphasis added)
>
> FCSA's **Therapeutic Family Homes provide quality residential care to** male and female **youth** ages 12-18 **that are experiencing mental health and behavioral issues and are at imminent risk of** *psychiatric* **placement outside of their community.** *Id*. at page 9 (emphasis added)
>
> *Therapeutic Family Home Expansion:* FCSA has constructed three additional Therapeutic Family Homes. Two of the homes will provide services to children 13 and older; one of those will provide services to youth who are

---

[23] This report is still published by FCYS on its website at http:// www. familycenteredservices.com.

**dually diagnosed with substance abuse and mental health disorders**. One of the homes will provide services to children 12 and younger. The three new homes will provide 16 additional **beds for children currently placed out of state in *psychiatric* facilities or for children in danger of being sent out of state.** *Id*. at page 12(emphasis added)

In 2008 FCSA sought a grant for a quarter million dollars to build therapeutic youth homes. (Exh. 8) Describing its project and justification, FCSA said:

This funding will complete the funding necessary to build six new therapeutic youth homes in the Mat-Su and Fairbanks as part of the cornerstone of the "Bring The Kids Home" initiative. The therapeutic youth homes will provide residential service to five children per home. Children are typically ages 6 – 18(male and female) who are **experiencing some form of mental health illness**, often combined with substance abuse and at **risk of psychiatric placement outside their community**.[24]

### Primarily Engaged Test I, Summary

The Therapeutic Family Homes were created to care for sick, infirm, mentally ill or severely emotionally disturbed children, and the like, and such problems are a pre-condition to admission. (*See,* 2005 Report, (Exh. 7 at 9 – 10, and 12); Therapeutic Family Home Policies (Exh. 5 at 2, 4); The Employment Application (Exh. 4); and the Grant Application (Exh. 8.)

Examine FCSA's Therapeutic Family Home's purpose, the nature of the patients it serves, the type of care it provides, and the number of sick, infirm and/or mentally ill or severely emotionally disturbed children residing on the premises with a mental health diagnosis from the DSM-IV, AXIS I. (Regitano I, ¶10) Taken together with the fact that at least some, and perhaps many, children are receiving psychotropic medications, there is no

other reasonable interpretation but that FCSA is primarily engaged in the care of the sick, infirm, defective, mentally ill, severely emotionally disturbed, or the like (as interpreted in the FOH).

Irrespective of any claimed purpose, the reality is that the majority of residents at FCSA are sick, infirm, defective, or mentally ill and severely emotionally disturbed, or the like and FCSA is **primarily engaged** in their care while they live at the Therapeutic Family Home facility and are thus, by definition, engaged in commerce.

**Primarily Engaged – Test II**
**(The 50% Suffering From Any Infirmity Test**)

Another method to determine the "**primarily engaged**" question defines covered institutions as follows: "such an institution (other than a hospital) is an institution primarily engaged in (i.e., more than 50 percent of the income is attributable to) providing domiciliary care to individuals who reside on the premises and who, if **suffering from physical or mental infirmity or sickness of any kind**, **will require only general treatment or observation of a less critical nature than that provided by a hospital**. **Such institutions include** those institutions generally known as nursing homes, rest homes, convalescent homes, homes for the elderly and the infirm, and the like.[25]   These are **domiciliary homes for mentally ill or emotionally disturbed youth.**  29 USC §203(r) and (s) applies.

---

[24]   FCSA Grant Application found at http://www.google.com/search?hl=en&q=family+centered+youth+services obtained July 16, 2008 (emphasis added)(Exhibit **7**)

[25]   *Field Operations Handbook* § 12g02 (Exh. ##); *see also* Opinion Letter FLSA, 2004 DOLWH LEXIS 45, 2004 WL 3177888 (Nov. 30, 2004)(Exh. ##).

In 2005 FCSA derived 66% of its income from Medicaid payments. (2005 Report Exh 7 at 15 found in the current website)  Most of FCYS's activities involve domiciliary care for disturbed or mentally ill youth.  The 2005 Annual Report discusses the importance of domiciliary care to the program in the form of FCSA's **Therapeutic Family Homes which provide quality residential care to** male and female **youth** ages 12-18 **that are experiencing mental health and behavioral issues and are at imminent risk of** *psychiatric* **placement outside of their community.**  (Exh. 7, at 9 and 12)(emphasis added)

Therapeutic Family Homes provide services to youth who are **dually diagnosed with substance abuse and mental health disorders** or **beds for children currently placed out of state in** *psychiatric* **facilities or for children in danger of being sent out of state.** (Exh. 7, at 9) (emphasis added)

Inspect also FCSA's 2008 grant application for a quarter million dollars to build therapeutic youth homes.  Describing its project and justification, FCSA said:

> The therapeutic youth homes will provide residential service to five children per home. Children are typically ages 6–18 (male and female) who are **experiencing some form of mental health illness**, often combined with substance abuse and at **risk of psychiatric placement outside their community**. (Exh. 8)

### Test II - Summary

How can it be more clear?  At least fifty percent of FCYS's income is attributable to providing domiciliary care to individuals who reside on the premises and who are **suffering from physical or mental infirmity or sickness of any kind**, and **will require only general treatment or observation of a less critical nature than that provided by a hospital**.

## CONCLUSION

FCYS' own executive director's testimony combined with its own published materials demonstrate conclusively that FCYS and its Therapeutic Family Homes care for sick, infirm, mentally disturbed children. When the Department of Labor's interpretation of the statute is applied to these facts the conclusion is inescapeable: The FLSA applies to FCYS and its Therapeutic Family Homes. The Proberts were entitled to overtime.

### Partial Summary Judgment For Liability Is Appropriate

Where there is no material question of fact to decide, summary adjudication is appropriate and should be granted.[26]

The preceding discussion establishes that there are no serious and supportable facts to dispute Probert's interpretation of the statute and its application to the admitted facts. FCYS is subject to the overtime provisions of the FLSA by reason of 29 USC §203(r) and (s) as interpreted in the FOH and by its plain language. Liability is established. Judgment must enter.

---

[26] FRCP 56(c)

RESPECTFULLY SUBMITTED this 22nd day of October, 2008.

LAW OFFICES OF KENNETH L. COVELL  
Attorney for the Plaintiffs

By:/s/____Kenneth L. Covell_____  
KENNETH L. COVELL  
ABA Bar No. 8611103

CERTIFICATE OF SERVICE  
This is to certify that a copy of the foregoing has been  
Served electronically, via ECF, to the following party(s):

John Foster Wallace

Dated: 10/22/2008  
<u>By: /s/ Wendy Blakeman</u>  
Wendy Blakeman for Kenneth L. Covell