John Foster Wallace / McCONAHY, ZIMMERMAN & WALLACE
711 Gaffney Road, Suite 202, Fairbanks, AK  99701
(907) 452-2211 / (907) 456-1137 facsimile
foster@mzwlaw.com
Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT FAIRBANKS

| | |
|---|---|
| ROBERT PROBERT and LORETTA E. PROBERT, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| FAMILY CENTERED SERVICES OF ALASKA, INC. ) | |
| ) | |
| Defendants. ) | |
| ) | Case No.:  4:07-CV-00030 RRB |

**MOTION FOR RECONSIDERATION**

Family Centered Services of Alaska, Inc., requests that this Court reconsider and reverse its order granting plaintiffs' second motion for summary judgment.

    **1.**    **The Proberts Had the Ultimate Burden of Proof.**

The Proberts had the ultimate burden of proving that the Federal Labor Standards Act applied to the Therapeutic Family Homes.  "The burden of proof is upon the plaintiff to show by a preponderance of the evidence the existence of the enterprise."  Wirtz v. Old Dominion Corp., 286 F. Supp. 378, 380 (D.Va. 1968).  "The plaintiff has the burden of proof to establish a preponderance of the evidence that all three defendants constitute related business activities performed through unified operation and common control for a common business purpose and constitute enterprise within the meaning of 3(r) of the Act."  Wirtz v. Barnes Grocer Co., 398 F.2d 718, 721 (8th Cir. 1968).  "The burden of proof lies on employees to establish that they were engaged in interstate commerce, or in the production of goods, and that such production was for interstate commerce."  Kitchings v. Florida United Methodist, 393 F.Supp.2d 1282, 1292, fn. 25 (M.D. Fla. 2005)].  *See* Morales v. M&M Painting & Cleaning Corp., 2008 U.S. Dist. LEXIS 73011  (D.Fla. 2008); Jimenez v. Southern Parking, Inc., 2008 U.S. Dist. LEXIS 70147 (D.Fla. 2008).  "To prove a violation of either § 206 or § 207, Plaintiffs would have had to demonstrate,

inter alia, that Defendants constituted an enterprise engaged in commerce…; as mentioned, the term 'enterprise engaged in commerce' … is defined at 29 U.S.C. § 203…. All of these requirements formed part of Plaintiffs' burden of proof. Velez v. Vassallo, 203 F. Supp. 2d 312, 322 (D.N.Y. 2002).

As the moving parties with the ultimate burden of proof, the Proberts must not only prove the absence of any genuine issue of material fact, but produce evidence to "affirmatively demonstrate" that the FLSA applied so that "no reasonable trier of fact could find other than for" them. Wamboldt v. Safety-Kleen Sys., 2007 U.S. Dist. LEXIS 65683 (N.D. Cal. 2007). In Celotex Corp. v. Catrett, 477 U.S. 317, 323-325 (1986), the court stated the standard for summary judgment where the nonmoving party "will bear the burden of proof at trial." "…[T]he nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id.

**2.      29 U.S.C. § 203(r)-(s) Must Be Interpreted as Congress Intended in 1966, and is Not Entitled to an Expansive Construction.**

The FLSA was enacted in 1938, and broadened in 1961 to cover enterprises, including non-profit groups operating commercial businesses. In 1966, the FLSA was amended to include designated non-profits that substantially competed with commercial enterprises. However, unlike the broad coverage ordinarily afforded to the FLSA, the extension of coverage to designated non-profits was intended to be "narrow":

> …In fact, the legislative history suggests the opposite: that the extension of coverage was intended to be narrow, rather than broad….
>
> In contrast, the legislative history of the section that designates which non-profits are explicitly covered under the FLSA offers further evidence that non-profits such as Foundling were not intended to be covered under the Act. As previously discussed, § 203(r)(2)(A), passed as an amendment in 1966, specifies that non-profit hospitals and institutions primarily engaged in the care of the sick, the aged or the mentally ill who reside on the premises are covered under the FLSA. The legislative history regarding this provision indicates that these types of non-profits were chosen for inclusion because they were in substantial competition with similar activities carried on by enterprises organized for a business purpose. Sen. Rep. No. 89-1487 (1966), reprinted in 1966 U.S.C.C.A.N. 3010. Congress concluded that the failure to cover these non-profits under the Act would undermine one of the basic purposes of the law: the elimination of conditions that constitute an unfair method of competition in commerce. Id. In sum, Congress clearly chose to include these types of non-profits for a specific reason, and did not include non-profits similar to Foundling. Jacobs v. N.Y. Foundling Hosp., 483 F. Supp. 2d 251, 261 (U.S. D.N.Y. 2007).

*See* Marshall v. Rosemont, Inc., 584 F.2d 319 (9th Cir. 1978), where the court narrowly interpreted "preschool" to exclude child care centers. The FLSA extends coverage to non-profits that are "engaged in the operation of … an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective…." 29 U.S.C. § 203(r)-(s). The FLSA does not define "institution" or "the sick, the aged, or the mentally ill or defective." However, "[t]he doctrine of *expressio unius est exclusio alterius* as applied to statutory interpretation creates a presumption that when a statute designates certain persons…, all omissions should be understood as exclusions." United States v. Fuller, 531 F.3d 1020, 1027 (9th Cir. 2008). The inclusion of the specific term "mentally ill" precludes emotionally disturbed children from being covered as "the sick" or "defective." "It is a well-established principle of statutory construction (and of common sense) that when … 'two words or expressions are coupled together, one of which generically includes the other, it is obvious that the more general term is used in a meaning excluding the specific one.'" City of Columbus v. Ours Garage & Wrecker Serv., 536 U.S. 424, 445 (2002) (dissenting opinion). Consequently, the FLSA covers the Therapeutic Family Homes only if they were an institution caring for "the mentally ill" as intended by Congress in 1966. Jacobs, supra, p. 261.

In 1966, mental disorders were diagnosed according to the first edition of the Diagnostic and Statistical Manual for Mental Disorders (DSM-I), published in 1952. The DSM-I listed approximately one hundred disorders. *See* Appendix "A". In contrast, the DSM-IV lists more than three-hundred disorders, and has been criticized as medicalizing common life challenges and adolescent behaviors. *See* Appendix "B". In his sworn affidavit, Family Centered Service's executive director, John Regitano, listed common Axis I diagnoses for children in Therapeutic Family Homes. *See* First Affidavit of Regitano dated February 11, 2008, paragraph 10. More recently, Mr. Regitano has determined that from July 2005 through June 2007, twenty-six children were in the Therapeutic Family Homes, with diagnoses that included: Reactive Attachment Disorder, Attention-Deficit/Hyperactivity Disorder, Major Depressive Disorder, Posttraumatic Stress Disorder, Oppositional Defiant Disorder, Conduct Disorder, Sexual Abuse of a Child, Victim, and Adjustment Disorder. *See* Appendix "C". None of these diagnoses were recognized under DSM-I. In addition, DSM-I recognized that the degree of "psychiatric impairment"

depended on "the degree to which the individual's total functional capacity is affected by the psychiatric condition." Appendix "A".

Their diagnoses of children in Therapeutic Family Homes were made by clinicians, related primarily to behavioral health problems, and did not include serious mental illnesses. *See* First Affidavit of Regitano, paragraph 10; Second Affidavit of Regitano dated September, 5, 2008, paragraphs 7 and 11. All children had conscious control of themselves, were able to perceive reality, reason and understand, and were not "mentally ill" under AS 47.30.915. The children attended public school, and the vast majority did not qualify for special education services from the school district. Second Affidavit of Regitano, paragraphs 15-17. The Therapeutic Family Homes' services consisted of parental-role modeling, life skills, socialization, behavioral techniques, and educational support, with a very limited amount of therapy. First Affidavit of Regitano, paragraphs 2-3, 8-9; Second Affidavit of Regitano, paragraph 12. The children were supervised and cared for by house parents, such as the Proberts, who were not mental health care professionals. The Proberts' own affiant, psychologist Stephen Parker, admitted that many of the common diagnoses were unlikely to constitute mental illnesses, while others depended upon their severity and duration. Declaration of Parker, paragraphs 10-11.

Congress could not have intended the "mentally ill" to include children with diagnoses that were not recognized in 1966 and did not seriously affect their total functional capacity.

**3.  John Regitano's Sworn Affidavits Created Genuine Issues of Material Fact, and Were Not Mere Denials.**

Whether the Therapeutic Family Homes was an institution caring for the mentally ill depended on their "purpose, the nature of the population it serve[d], the type of care it provide[d], and the factors considered for admission", which "is consistent with the DOL's approach" of "look[ing] at the nature and amount of services provided…." Bowrin v. Catholic Guardian Soc'y, 417 F. Supp. 2d 449, 463 (D.N.Y. 2006). The sworn affidavits of Regitano set forth detailed facts, to which he was competent to testify, concerning the mental health status of the children and the services provided by the Therapeutic Family Homes. The factual assertions set forth in these affidavits were entitled to this Court's belief. Anderson

v. Liberty Lobby, 477 U.S. 242, 255 (U.S. 1986).  Regitano's affidavits created genuine issues of material fact as to whether the Therapeutic Family Homes were caring for the "mentally ill", and were not mere denials.  United States v. Parcel of Real Property, 904 F.2d 487, 491-492 (9th Cir. 1990).

Family Centered Services operates a variety of programs that provide a wide range of services to a diverse group of patients who, as a whole, have a wide spectrum of mental health issues, ranging from mild disfunctions to serious mental illnesses requiring intensive treatment.  The focus must be on the actual residents and type of services provided in the Therapeutic Family Homes, and not on the agency's other programs or general mission.  Bowrin, supra, pp. 460, 464-465; Jacobs, supra, p. 262; Kitchens, supra, p. 1298.  Family Centered Services' general statements as to its "mission" and description of its Therapeutic Family Homes as originally envisioned did not establish how the Therapeutic Family Homes were actually operated or that the residents were actually "mentally ill", especially in view of Mr. Regitano's explanations that the original vision for the program was modified and his detailed descriptions of the homes' actual operations and condition of its residents.  The Proberts did not carry their ultimate burden of proving that the residents were "mentally ill" for application of the FLSA, as that term was understood in 1966 or even as that term is commonly understood today.  As this Court previously ruled, "the mental status of the children residing in FCSA's therapeutic family homes is a genuine issue of material fact.  This Court cannot determine if the FLSA applies to this matter absent clear resolution of this issue."  This Court's order on the Proberts' second motion for summary judgment should be reconsidered and reversed.

        McCONAHY, ZIMMERMAN & WALLACE
        Attorneys for Defendants

Dated:  January 29, 2009        By:  /s/John Foster Wallace
        John Foster Wallace, ABA #9211115

CERTIFICATE OF SERVICE
This certifies that a copy of the foregoing will be electronically served simultaneous with filing to the following attorneys and/or parties of record:
    Kenneth L. Covell @ kcovell@gci.net
/s/Sarah S. Haines        1/29/2009
Sarah S. Haines for McConahy, Zimmerman & Wallace