Kenneth Covell
LAW OFFICE OF KENNETH COVELL
712 Eighth Avenue
Fairbanks, AK 99701
Phone: (907) 452-4377
Fax: (907) 451-7802
E-mail: kcovell@gci.net

Attorney for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT FAIRBANKS**

ROBERT PROBERT and LORETTA E. PROBERT, *et. al*.

Plaintiffs,

vs.

FAMILY CENTERED SERVICES OF ALASKA, INC., JOHN W. REGITANO, KATHY CANNONE, SUSAN DALE, LONNIE HOVDE, DEBORAH L. COXON, and ADDITIONAL DOES I to X, (Managerial Employers, Jointly Liable),

Defendant,

Case No. 4:07-CV-000030 RRB

**OPPOSITION TO FAMILY CENTERED SERVICES OF ALASKA, INC.'S MOTION TO RECONSIDER**

**I. No Motion to Reconsider is Appropriate**

An interlocutory judgment "is subject to revision at any time before the entry of [final] judgment."[1] **A party seeking reconsideration must "set forth concisely the matters or controlling decisions which counsel believes the court has**

[1] Fed. R. Civ. P. 54(b)

*Proberts', et. al. v. FCSA, et. al.
Case No. 4:07-CV-000030 RRB
Opposition to Family Centered Services of Alaska, Inc.'s Motion to Reconsider
Page 1 of 17*

**overlooked."**[2] While a district court has broad discretion to grant reconsideration, **parties should not be allowed simply to reargue their case, or present new facts and issues that they failed to argue in the first instance.**

**"[A] Rule 59(e) (or Rule 60(b)) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled, nor is it a vehicle for presenting theories or arguments that could have been advanced earlier."**[3]

FCYS' Motion to Reconsider merely reiterates FCYS' arguments, adds theories, and tries to dispute evidence it did not think important before the decision. FCYS does not provide newly discovered evidence or argue any other basis for reconsideration.[4] Relief under this rule is warranted only if "extraordinary circumstances" exist.[5]

FCYS had its opportunity to present its evidence and argue its case. The pleadings and exhibits are in and were considered. A decision has been made. There is an interest in the finality of litigation. There is nothing to reconsider and the motion should be denied.

---

[2] *Id*.

[3] *See e.g.*, *Fresh Kist Produce, LLC v. Choi Corp*., 251 F. Supp. 2d 138, 140 (D.D.C. 2003) (internal quotation marks and citations omitted). "While the [C]ourt has considerable discretion in ruling on a Rule 59(e) motion, the **reconsideration and amendment of a previous order is an extraordinary measure.**" *Id*. at 140 (*citing, e.g., Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)(emphasis added).

[4] *See, Maraziti v. Thorpe*, 52 F.3d 252, 255 (9th Cir. 1995).

[5] *Ackermann v. United States*, 340 U.S. 193 (1950); *Waggoner v. R. McGray, Inc*., 743 F.2d 643, 645 (9th Cir. 1984).

**II. Probert's Carried Their Burden**

This argument has been made and decided. It is inappropriate for reconsideration. The burden of proof is upon the plaintiffs to show by a preponderance of the evidence the existence of the covered enterprise. Proberts have done this.

> "Enterprise" means the related activities performed…by any person or persons…in connection with the operation of…an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution,…(regardless of whether or not such hospital, institution, or school is operated for profit or not for profit),…
>
> 29 U.S.C. § 203 (r)(1)

> (s)(1) ``Enterprise engaged in commerce or in the production of goods for commerce'' means an enterprise that--(B) is engaged in the operation of…an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution,…(regardless of whether or not such hospital, institution, or school is public or private or operated for profit or not for profit)…
>
> 29 USC §203(s)(1)

The Department of Labor has interpreted this statute in its Field Operations Handbook at section 12g02 to apply to "individuals who reside on the premises and who, if suffering from physical or mental infirmity or sickness of any kind, will require only general treatment and observations of a less critical nature than that provided by a hospital. Such institutions are not limited to nursing homes,...but include those

*Proberts', et. al. v. FCSA, et. al.*
*Case No. 4:07-CV-000030 RRB*
*Opposition to Family Centered Services of Alaska, Inc.'s Motion to Reconsider*
*Page 3 of 17*

institutions generally known as nursing homes, rest homes, convalescent homes, homes for the elderly and infirm, and the like."[6]

Proberts` affirmative burden was to demonstrate that FCYS was a covered enterprise entitling them to overtime. Proberts` extensive discussion and evidentiary showing was not adequately disputed with either argument or evidence. The burden then shifted to FCYS to prove that it falls within an exception to the statutorily mandated inclusion. The quantum of proof required to demonstrate an exception also changed from "preponderance" to "clear and convincing."[7]

Proberts have done their part. Even without the content of the FCYS website, about which FCYS bitterly complains (but about which it said nothing before), the other evidence presented, including Employment Applications and Alaska State Grant Applications, supports Proberts' position and this Court's decision.

With or without the website evidence, FCYS has itself **failed** to come forward with admissible evidence that it was **not covered** by the statutory inclusion of their enterprise in application of the FLSA.

One of FCYS` few precedential citations in this section answers the question.

> Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.[8]

---

[6] (FOH 12g02)(emphasis added); Docket 53 exhibits.

[7] *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (U.S. 1960), *Walling v. Gen. Indust.*, 330 U.S. 545 (1947) and *McComb v. Hunt*, 167 F.2d 905 (9th Cir. 1948).

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

*Proberts', et. al. v. FCSA, et. al.*
*Case No. 4:07-CV-000030 RRB*
*Opposition to Family Centered Services of Alaska, Inc.'s Motion to Reconsider*
*Page 4 of 17*

FCYS' own testimony and evidence, with or without the protested website, fails to support an exemption from the rule, or prove any disputed fact, concerning the character of its TFH residents as being "individuals who reside on the premises and who, if suffering from **physical or mental infirmity or sickness of any kind, will require only general treatment and observations** of a **less critical nature than that provided by a hospital.** Such institutions are not limited to nursing homes…but **include those institutions** generally known as nursing homes, rest homes, **convalescent homes, homes for** the elderly and **infirm, and the like.**"[9]

Proberts made their showing and FCYS did not. Reconsideration based upon some previously available evidence or argument should be denied.

**III. Broad, and Not Narrow, Construction is Required**

This argument has been made and decided. It is inappropriate for reconsideration.

Since its 1938 inception the FLSA has been considered remedial and required broad interpretation. "Such a statute must not be interpreted or applied in a narrow, grudging manner."[10]

> Congress' purpose in passing the FLSA as a whole was "to protect all covered workers from substandard wages and oppressive working hours, labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well being

---

[9] (FOH 12g02) (emphasis added); Docket 53 exhibits.

[10] *Tenn. C. v. Muscoda*, 321 U.S. 590, 597 (U.S. 1944).

*Proberts', et. al. v. FCSA, et. al.*
*Case No. 4:07-CV-000030 RRB*
*Opposition to Family Centered Services of Alaska, Inc.'s Motion to Reconsider*
*Page 5 of 17*

> of workers.” Courts construe the FLSA "liberally to apply to the furthest reaches consistent with congressional direction." In addition, any employer who claims an exemption under the Act has the burden of showing that it applies.[11]

The precise issue before the *Jacobs* court was interpretation of two subsections of 29 U.S.C. § 203(r)(2). The Court discussed this as follows;

> [A]s a whole, it is clear that Congress specified certain non-profits to be covered under the statute: those listed in § 203(r)(2)(A). Subsection (A) lists hospitals and institutions "primarily engaged in the care of the sick, the aged, the mentally ill or the defective who reside on the premises of such an institution…regardless of whether or not such hospital [or] institution…is operated for profit or not for profit." 29 U.S.C. § 203(r)(2)(A). In contrast, there is no "regardless of" language in § 203(r)(2)(C). By including the "regardless of" language in § 203(r)(2)(A), Congress intended to subject these types of institutions, whether they were non-profit or not, to coverage under the Act. The absence of this "regardless of" language in 203(r)(2)(C), however, implies that Congress did not intend to extend public agency coverage to persons working in non-profits.[12]

FCYS relies upon a sentence from *Jacobs*[13] (a N.Y. Dist. Court case) which construed a **1974 amendment** to the FLSA. Close reading of this excellently reasoned decision explains that the 1966 substitution which indisputably applies to this case was not written to be “narrowly” construed.

In *Jacobs,* the 1974 amendment was claimed to extend enterprise coverage under the Act to all non-profit organizations that act "in connection with" public

[11] *Jacobs v. N.Y. Foundling Hosp.,* 483 F.Supp. 2d 251, 256 - 257 (N.Y. Dist. 2007) (citations omitted)

[12] *Jacobs*, 483 F. Supp. 2d at 260.

[13] *Jacobs,* 483 F.Supp. 2d at 261.

*Proberts', et. al. v. FCSA, et. al.*
*Case No. 4:07-CV-000030 RRB*
*Opposition to Family Centered Services of Alaska, Inc.’s Motion to Reconsider*
*Page 6 of 17*

agencies. No specific language in the act, or in the legislative history, suggested this intention. After comparing the 1974 amendment with the 1966 substitution we here address, the District Court said that that "the extension of coverage (in the 1974 amendment) was intended to be narrow, rather than broad."

The *Jacobs* court discussed the **1966 Substitutions** as follows:

> In contrast,…§ 203(r)(2)(A), passed as an amendment [sic] in 1966, specifies that non-profit…institutions primarily engaged in the care of the sick, the aged or the mentally ill who reside on the premises are covered under the FLSA. The legislative history regarding this provision indicates that these types of non-profits were chosen for inclusion because they were in substantial competition with similar activities carried on by enterprises organized for a business purpose…[14]

*Jacobs* does not stand for the proposition that this court should deviate from seventy-one years of unrelenting broad interpretation of the FLSA so that FCYS can avoid paying its house parents overtime. *Jacobs* says only that the history of one particular section of a 1974 amendment to the FLSA demonstrated that Congress intended to limit its scope.

*Jacobs* certainly does not justify reconsideration.

**A. What's in a Name?**

This argument has been made and decided. It is inappropriate for reconsideration.

[14] *Jacobs*, 483 F. Supp. 2d at 261.

*Proberts', et. al. v. FCSA, et. al.*
*Case No. 4:07-CV-000030 RRB*
*Opposition to Family Centered Services of Alaska, Inc.'s Motion to Reconsider*
*Page 7 of 17*

If an infirmity is named in a list, it is covered. If not, we can avoid paying overtime. This is FCYS' theory. They say, "The inclusion of the term 'mentally ill' precludes emotionally disturbed children from being covered as 'the sick' or 'defective."[15] This is not a reasonable conclusion.

The word "sick" means in need of care or the state of being infirm. The Merriam Webster's Medical Dictionary defines "sick" to mean affected with disease or ill health and mentally or emotionally unsound or disordered.[16]

29 U.S.C. § 203(s)(1) defines enterprise to include an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective. The Department of Labor interprets this to mean individuals who reside on the premises and who, if suffering from **physical or mental infirmity or sickness of any kind, will require only general treatment and observations** of a less critical nature than that provided by a hospital. Such institutions are not limited to nursing homes…**but include those institutions** generally known as nursing homes, rest homes, **convalescent homes, homes for** the elderly and **infirm, and the like.**[17]

Our Supreme Court instructs that when reviewing an agency's construction of a statute it is charged with administering, *Chevron* requires that this court defer to the agency's interpretation if it is based on "a permissible construction of the statute."[18]

---

[15] Motion for Reconsideration at 3; Docket 68.

[16] The Merriam Webster's Medical Dictionary (1995) at 643, *see also,* The Merriam Webster's Online Dictionary at http://mw1.m-w.com/dictionary/sick.

[17] (FOH 12g02) (emphasis added); Docket 53 exhibits.

[18] *Chevron,* 467 U.S. at 843.

*Proberts', et. al. v. FCSA, et. al.*
*Case No. 4:07-CV-000030 RRB*
*Opposition to Family Centered Services of Alaska, Inc.'s Motion to Reconsider*
*Page 8 of 17*

**This Court must accept the Department of Labor's interpretation embodied in the FOH as if it were controlling precedent.**[19]

FCYS cannot avoid its overtime obligation with semantics and loose reasoning. House parents caring for the mentally ill are covered. So too are house parents caring for those afflicted with a physical or mental infirmity or sickness **of any kind** in nursing homes, rest homes, convalescent homes, homes for the elderly and infirm, **and the like**.

In 2008 FCSA sought a grant for a quarter million dollars to build therapeutic youth homes. Describing its project and justification, FCYS said:

> This funding will complete the funding necessary to build six new therapeutic youth homes in the Mat-Su and Fairbanks as part of the cornerstone of the "Bring The Kids Home" initiative. The therapeutic youth homes will provide residential service to five children per home. Children are typically ages 6 – 18(male and female) who are **experiencing some form of mental health illness**, often combined with substance abuse and at **risk of psychiatric placement outside their community**.[20]

(It is interesting that this application has been repeatedly mentioned by Proberts and the court – yet Mr. Regitano has yet to say anything about the application.)

The residents of the TFHs are afflicted with an infirmity of some kind and reside in a home like a convalescent home, a home for the infirm, or the like.

This Court has no reason to reconsider this part of its decision.

---

[19] *Id.*

[20] FCSA Grant Application found at http://www.google.com/search?hl=en&q=family+centered+youth+services obtained July 16, 2008 (emphasis added) (Second Summary Judgment Motion Exh. 8); Docket 53 exhibits.

*Proberts', et. al. v. FCSA, et. al.*
*Case No. 4:07-CV-000030 RRB*
*Opposition to Family Centered Services of Alaska, Inc.'s Motion to Reconsider*
*Page 9 of 17*

**B. DSM Change**

This is a new argument based on evidence available throughout the litigation. Because no new evidence is presented, reconsideration is unavailable.

FCYS claims that, "Congress could not have intended the "mentally ill" to include children with diagnoses that were not recognized in 1966 and did not seriously affect their total functional capacity."

The most striking thing about this argument is that Congress never required any diagnosis of any kind to trigger 29 U.S.C. § 203(s) and (r). The DSM isn't mentioned at all.

The DSM diagnosis is important to FCYS because without one FCYS does not get paid by Medicare. The services provided must be medically necessary. Each admitted child is assigned a diagnosis.[21] A precondition to admission is that the child be severely emotionally disturbed.

FCYS' Therapeutic Family Home Policies and Procedures, apparently promulgated in 2004, describes the program in words which mimic Mr. Regitano's, except the written description goes a bit further and says that, "**All the children in the home will meet the mental health criteria for severely emotionally disturbed (SED)**…" [22]

Even if a DSM diagnosis had been made a precondition to coverage, Congress normally can be presumed to have had knowledge of the interpretation given to the

---

[21] Regitano's first affidavit at ¶10; Docket 46, exhibits.

[22] Second Motion for Summary Judgment, Exh. 5 at p. 2, ¶1 (emphasis added); Docket 53, exhibits.

*Proberts', et. al. v. FCSA, et. al.*
*Case No. 4:07-CV-000030 RRB*
*Opposition to Family Centered Services of Alaska, Inc.'s Motion to Reconsider*
*Page 10 of 17*

incorporated law, at least insofar as it affects the new statute."[23] The first Diagnostic Statistical Manual (DSM) was published in 1949. Successive versions of the manual were the DSM II (1968); DSM III (1980); DSM IIIR (1987); DSM IV (1994); and the DSM IV-TR (2000). It is inconceivable that Congress is unaware of the changes in this manual. If Congress wanted to change what diagnosis it required in order to qualify as an institution covered by the FLSA, it could, and should, have said so.

This argument was not made previously and depends on no additional evidence. Moreover, the argument depends on a premise that does not exist, that Congress considered the DSM when drafting the statute. Reconsideration is unavailable for this argument.

## III. Regitano's Affidavits Contain Only Denials Insufficient to Defeat Summary Judgment.

This Court characterized Mr. Regitano's affidavit testimony as being mere denials.[24] The affidavits did not meet FCYS' burden when defending against Summary Judgment.

### A. Regitano's Third Affidavit

This affidavit is really not evidence at all, and certainly not evidence undiscovered when the briefing was done. This affidavit cannot support Reconsideration.

Why persons with actual training or knowledge do not support FCYS is a mystery. Mr. Regitano talks about psychological matters when there is a psychiatrist on

---

[23] *CF., Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 802-803 (1985) (*quoting, Lorillard v. Pons,* 434 U.S. 575, 581 (1978).

[24] Second Summary Judgment Decision at 14; Docket 63.

*Proberts', et. al. v. FCSA, et. al.*
*Case No. 4:07-CV-000030 RRB*
*Opposition to Family Centered Services of Alaska, Inc.'s Motion to Reconsider*
*Page 11 of 17*

the FCYS staff. Mr. Regitano continuously offers conclusory allegations, speculation or conjecture to support FCYS' position.

**1. Paragraphs 1 & 2**

This information is simply irrelevant.

**2. Paragraph 3.**

All this paragraph says is that FCYS does a lot of things for a lot of different people.

**3. Paragraph 4.**

This paragraph says that the Mission Statement on the website does not apply to the TFH in particular and that it was drafted before the first TFH. No detailed factual dispute is provided. This paragraph says nothing except to imply that the statement is incorrect and cannot be relied upon. But, the statement remains on the website to this day and constitutes an admissible admission against the interests of a party opponent.

**4. Paragraph 5.**

This paragraph says that the material in the website is outdated and should not be relied upon. Nowhere does the testimony address a specific fact that is not presently true. The credit to be assigned this paragraph is found where it says, "For example, the children residing in Therapeutic Homes are not "at risk of psychiatric` placement outside their community."[25] Compare this language with a 2008 Grant Application where Mr. Regitano is the contact person that seeks $250,000.00 from the State of Alaska. In the application psychiatric placement is the risk sought to be avoided.

[25] Regitano's Third Affidavit at paragraph 5; Docket 68, exhibit.

*Proberts', et. al. v. FCSA, et. al.*
*Case No. 4:07-CV-000030 RRB*
*Opposition to Family Centered Services of Alaska, Inc.'s Motion to Reconsider*
*Page 12 of 17*

> The therapeutic youth homes will provide residential service to five children per home. Children are typically ages 6 – 18(male and female) who are experiencing some form of mental health illness, often combined with substance abuse and at **risk of psychiatric placement outside their community**.[26]

Both statements are conclusory. Neither is factual. But one got FCYS a quarter million dollars.

**5. Paragraph 6.**

The Letter from the Executive Director and Annual Report for 2005 is said to cover only the fiscal year 2005/2006. There are actually no facts denied by this paragraph. There is only an implication that the information on the website is of questionable authority.

Examine other sections of the Website. The history section goes through 2009. The Announcements section talks of a January 22, 2009 meeting of the Board of Directors. When it is useful, Mr. Regitano would have us believe that the inconvenient facts are purely puffing. A close examination demonstrates that his affidavit testimony is even less than that. What the website is an admission by a party opponent and the material is both admissible and relevant.

**C. Denials and Summary Judgment**

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."[27] "An issue of fact is

---

[26] FCSA Grant Application found at http://www.google.com/search?hl=en&q=family+centered+youth+services obtained July 16, 2008 (emphasis added) (Second Summary Judgment Motion Exh. 8) ; Docket 53 exhibits.

[27] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

*Proberts', et. al. v. FCSA, et. al.*
*Case No. 4:07-CV-000030 RRB*
*Opposition to Family Centered Services of Alaska, Inc.'s Motion to Reconsider*
*Page 13 of 17*

'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"[28]

To defeat a properly supported motion for summary judgment, the non-moving party must "'set forth specific facts showing that there is a genuine issue for trial.'"[29] Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment.[30] The non-moving party must come forth with "significant probative evidence" demonstrating that a factual dispute does in fact exist.[31] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[32]

All of FCYS' evidence, collectively, supports only that there is a specific definition for mentally ill, and that FCYS thinks that the TFHs do not meet that criteria and so, FCYS does not need to pay overtime. That is their case.

Mr. Regitano files numerous affidavits, each of which is conclusory in nature and lacking in facts. These affidavits do not meet FCYS's burden to demonstrate that a genuine issue exists for the jury to try.

---

[28] *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000) (*quoting Anderson*, 477 U.S. at 248.

[29] *Matsushita*, 475 U.S. at 587, *quoting* Fed. R. Civ. P. 56(e).

[30] *See, Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998); *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

[31] *Anderson*, 477 U.S. at 249.

[32] *Id.* at 249-250 (citations omitted).

*Proberts', et. al. v. FCSA, et. al.*
*Case No. 4:07-CV-000030 RRB*
*Opposition to Family Centered Services of Alaska, Inc.'s Motion to Reconsider*
*Page 14 of 17*

## IV. Other Evidence Supports Proberts' Position and the Decision

The FCYS website is not the only source of evidence relied upon by this court. Mr. Regitano's affidavits contributed much of the material relied upon by Proberts and, presumably, by this Court. This rendition of Mr. Regitano's admissions is found at pages 4 to 7 of the Proberts' Second Motion for Summary Judgment.[33]

Other evidence supports the decision. The application for employment asks a houseparent about what problems a potential house parent expects when dealing with **Severely Emotionally Disturbed** youth.[34] FCYS' Therapeutic Family Home Policies and Procedures, apparently promulgated in 2004, describe the program in words which mimic Mr. Regitano's affidavit testimony, except that the written description goes a bit further and says that, "**All the children in the home will meet the mental health criteria for severely emotionally disturbed (SED)** . . ."[35] The client Profile in the Policies and Procedures Manual says that all children admitted to the program will:

1) Require stabilization for actions that are the result **of mental illness and/or behavior disorders**;

2) Have been determined through clinical assessment to be **suffering from a mental illness** not of an organic origin;

3) Be in **imminent need of placement in a mental health treatment facility**;

---

[33] Docket 53 and exhibits.

[34] Proberts' Second Motion for Summary Judgment, Exhibit 4; Docket 53, exhibits.

[35] Proberts' Second Motion for Summary Judgment, Exh. 5 at pp. 2, ¶ 1 (emphasis added) ; Docket 53, exhibits.

*Proberts', et. al. v. FCSA, et. al.*
*Case No. 4:07-CV-000030 RRB*
*Opposition to Family Centered Services of Alaska, Inc.'s Motion to Reconsider*
*Page 15 of 17*

4) Have been determined by the TFH admission review that placement would **be beneficial for the child's stabilization and/or reduction or resolution of their mental illness**.[36]

The Policies and Procedures Manual also says that children who generally ***will not* be admitted** to the program include those who need a **temporary foster care** placement **but who do not require stabilization and/or treatment due to their mental illness**.[37]

And finally, let us not forget the quarter million dollar grant application that talks of mental illness and psychiatric placements.[38]

**CONCLUSION**

Reconsideration is not appropriate. The Proberts carried their burden and FCYS did not. Applying the expansive interpretation which this statute deserves, the language of the statute and the Department of Labor's FOH interpretation compels the conclusion that the TFHs were covered enterprises.

The DSM has no relevance to this discussion and Mr. Regitano's self serving affidavits support Proberts more than they create an issue of fact.

As a result, the Court's Decision was correct and Reconsideration must be denied.

---

[36] Proberts' Second Motion for Summary Judgment, Exh. 5 at pp 4, ¶4; Docket 53, exhibits.

[37] Proberts' Second Motion for Summary Judgment, Exh. 5 at pp. 5, ¶ 2 (emphasis added); Docket 53, exhibits.

[38] FCYS Grant Application found at http://www.google.com/search?hl=en&q=family+centered+youth+services obtained July 16, 2008, Proberts Second Motion for Summary Judgment, Exh. 8 (emphasis added); Docket 53, exhibits.

*Proberts', et. al. v. FCSA, et. al.*
*Case No. 4:07-CV-000030 RRB*
*Opposition to Family Centered Services of Alaska, Inc.'s Motion to Reconsider*
*Page 16 of 17*

RESPECTFULLY SUBMITTED this 23rd day of February, 2009 at Fairbanks, Alaska.

LAW OFFICE OF KENNETH L. COVELL
By: /s/ Kenneth L. Covell
Kenneth L. Covell
ABA No. 8611103

**CERTIFICATE OF SERVICE**
This is to certify that a copy of the foregoing has been served electronically, by ECF, to the following attorney(s) and/or parties of record:

John Foster Wallace

Dated: February 23, 2009

By: /s/ Yauna Taylor
Yauna Taylor for Kenneth L. Covell

*Proberts', et. al. v. FCSA, et. al.*
*Case No. 4:07-CV-000030 RRB*
*Opposition to Family Centered Services of Alaska, Inc.'s Motion to Reconsider*
*Page 17 of 17*