Kenneth Covell
LAW OFFICE OF KENNETH COVELL
712 Eighth Avenue
Fairbanks, AK  99701
Phone: (907) 452-4377
Fax:     (907) 451-7802
E-mail:  kcovell@gci.net

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT FAIRBANKS

| | |
|---|---|
| ROBERT PROBERT; LORETTA E. PROBERT; GENE GRISSOM; SANDRA GRISSOM; JOHN GRIMES; DONNA GRIMES; KENNETH MCDANIELS; LEONA MCDANIELS; ERIC CLONINGER; DEBRA CLONINGER; and LORETTA REES,<br><br>             Plaintiffs,<br><br>vs.<br><br>FAMILY CENTERED SERVICES of ALASKA, INC.; JOHN W. REGITANO; KATHY CANNONE; SUSZAN DALE; LONNIE HOVDE; DEBORAH L. COXON, and ADDITIONAL DOES I to X, Managerial Employers, Jointly Liable,<br><br>             Defendants. | Case No. 4:07-CV-000030 RRB |

**MOTION FOR INDICATIVE RULING**
**(In the Nature of a Rule 62.1 Motion)**

COMES NOW the Plaintiffs, by and through counsel, and moves the Court for an Order concerning evidence that became available subsequent to its ruling.

Plaintiffs ask the Court to review the evidence and indicate to the Appellate Court whether or not it would have relied upon this evidence in issuing its ruling in this case.

The main issue in this case to date is whether or not defendant FCSA is subject to the

FLSA under 29 U.S.C. §203(r) and (s).

Those sections provide that there is FLSA coverage if the defendant "has engaged in the operation of…an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution." In issuing its ruling, the Court relied upon the affidavits of the Executive Director of FCSA, John Regitano, the exhibits attached to Plaintiffs' motions, the FCSA website, the mission statements of FCSA, and other information.

## INTRODUCTION

This Court granted Summary Judgment in Plaintiffs' favor, finding that FCSA, through its Therapeutic Family Homes is clearly engaged in the operation of an institution primarily engaged in the care of the mentally ill or defective who reside on the premises of such institution, pursuant to 29 U.S.C. §203(r). Doc. 63, pg. 15. (Transcript of Oral Argument on Summary Judgment Motion is attached as Exhibit. 1.) On Motion to Reconsider, the Court once again and further found that the defendant, through its Therapeutic Family Homes is clearly engaged in the operation of an institution primarily engaged in the care of the sick, mentally ill, or defective, who reside on the premises of such institution. Doc. 84, p. 8. In issuing these rulings, the Court considered various materials submitted by both the plaintiff and the defendant.

The Court issued its initial order at Doc. 63 on January 22, 2009, and renewed this Order in denying Defendant's Motion for Reconsideration at Doc. 84 on February 26, 2009.

The defendant filed a Motion to Stay Proceedings on May 12, 2009 at Doc. 117; and the Court granted such motion on June 15, 2009 at Doc. 129 (all pending interlocutory appeal).

Since those rulings, the plaintiff houseparents have obtained further documentation in

which FCSA unequivocally admits that it provides care to the mentally ill.

These materials consist of FCSA's "Million Dollar Grant" application of 2006 (Exh. 2) and the "Quarter-Million Dollar Grant" application of 2008 (Exh. 3); in addition to the State of Alaska, Department of Health and Social Services residential childcare facilities evaluations of FCSA's Therapeutic Family Homes, with checklists (Exh. 11).

Plaintiff Houseparents submit these materials to the Court and ask the Court to make an "indicative ruling" that, had these materials been available to it at the time it had decided the "sick or mentally ill" issue, it would have considered these materials, and furthermore, would have relied on them in its ruling.

For instance, in regard to a request for funding for new Therapeutic Family Homes, Mr. John Regitano, Executive Director of FCSA, states in a July 21, 2006 letter to the State of Alaska, Department of Commerce that, "the homes will…be used [for] mental health treatment in a residential setting." Exh. 2, p. 115.

## **PROCEDURAL MATTERS**

The Court has previously referred to the grant applications in this matter as being indicative of Defendant's admission that it treats the mentally ill. *See*, Doc. 50, p. 7-8 and Doc. 84, p. 2-3. Plaintiffs had few grant materials then. e.g. *see*, Doc. 36-5.

The materials in Exhibits 2, 3 and 4,[1] since obtained by the State, are obviously materials

---

[1] Exhibit 4 consists of materials pertaining to the FCSA grants that were provided to the plaintiffs by the State of Alaska, Office of the Governor, Office of Management and Budget. The documents that were filed with Plaintiff's Opposition to Petition for Permission to Appeal, had consisted of only a faxed copy of the FY09 materials. At the time of that filing, Plaintiffs'

that would be in the possession of the defendant, yet they have never been produced.

Plaintiff suggests that the Court obviously would have relied on these admissions of the defendant that conclusively prove that they treat the "sick or mentally ill;" and asks the Court to issue an Order to that affect.[2]

The Court has issued its own stay (Doc. 129) in this matter and can lift its own stay, and rule in this matter.

## **62.1**

To the extent the Court feels otherwise constrained; the Court can follow Rule 62.1 (appended hereto), which provides a procedure for consideration of motions, pending appeal. FRCP 62.1 provides that the Court can (1) do nothing, (2) deny the motion, or (3) state that it

---

counsel was still awaiting the certified copies of the OMB documents that have been filed herewith as  . *See*, DktEntry 6980115 (Unnumbered Doc. 7), p. 2, fn.1.

Carla Smith's Declaration, Exh. 12, speaks of the OMB at Exhibit 4 to DktEntry 6980115 (Unnumbered Doc. 7). That Exhibit 4 is only the 2009 documents from OMB. The Exhibit 4 attached to this motion is a complete set of certified OMB documents. The Exhibit 4 attached to this motion consists of documents from years 2007, 2008, and 2009. Exhibit 4 from DktEntry 6980115 are the same documents as those at the end of  Exhibit 4 herein.

Counsel notes that the first page of the materials, titled TPS Report 49803, in the July 8th materials, is the same document as is filed with Plaintiffs' Motion for Summary Judgment at Doc. 36-5.

[2] Application had been made to the Ninth Circuit to supplement the record with these materials. *See*, Motion at DktEntry 7074315 (Unnumbered Doc. 9). The Ninth Circuit issued an Order stating that the Ninth Circuit may take judicial notice of them. *See*, Clerk's Order construing motion as judicial notice at DktEntry 7076507 (Unnumbered Doc. 10). *See* also, Defendant's Response to Motion at DktEntry 7085942 (Unnumbered Doc. 12). Plaintiff thinks that this might mean that indeed the Ninth Circuit will take judicial notice of them as a governmental record. However, to ensure inclusion of these highly relevant and conclusive documents, the plaintiff asks the Court for this Order.

would grant the motion if the Court of Appeals remands for that purpose or if the motion raises a substantial issue.

This is obviously not a "do nothing court."

The granting of the motion could save the litigants years of time and costs.

The defendants should have produced these materials in discovery.

The defendants have an unexplained discovery anomaly where page numbers 1066 – 1202 of discovery have never been produced to the plaintiffs. See, Exhibit 5, May 26 letter of Covell to Wallace.

In any event, Plaintiff Houseparents request that the Court issue the Order.

## DISCUSSION OF NEWLY DISCOVERED EVIDENCE AND THEIR APPLICABILITY TO THE "SICK AND MENTALLY ILL" QUESTION

There is additional newly discovered evidence concerning the "Million Dollar Grant," attached as Exh. 2, and the "Quarter-Million Dollar Grant," attached as Exh. 3, which reaffirms defendant FCSA's admission(s) that it cares for the sick, the aged the mentally ill or defective in a residential setting. Plaintiff also received similar paperwork from the State of Alaska, Office of the Governor, Office of Management and Budget (OMB), attached as Exh. 4; and inspection records from the State of Alaska, Division of Public Health, Certification and Licensing as Exh. 11.[3]

In Exhibit 2 and 4, FCSA and its Executive Director unequivocally acknowledge the

---

[3] Exhibits 2, 3, 4, and 11 are certified copies, under seal, of the records of the State of Alaska.

purpose of the homes. The homes will be used for mental health treatment in a residential setting, Exh. 2, p. 4, 27. *See*, also Exh. 2, p. 28, 47, 48, 56, 57, 76, 77, 115 and 117 and Exh. 4, p. 26, 38, 46, 47 and 55.[4]

> …[n]eed for lower level community based mental health treatment in Alaska, FCSA operates 4 homes in Fairbanks/North Pole area and works in conjunction with the Division of Behavioral Health, Office of Children's Services, and the Mental Health Trust Authority; is [l]icensed by the State of Alaska and the homes [p]rovide residential child care to children who are: experiencing some form of mental illness and are at risk of psychiatric placements.
>
> Exh. 2, p, 28 and 47.

> The primary goal of the TFH is to provide an alternative for children that are currently being placed in higher level, more restrictive, and more costly residential psychiatric treatment facilities in and outside of Alaska. The cost for providing mental health treatment in a TFH is approximately $180 per day.
>
> *See*, "Million Dollar Grant", Exh. 2, p. 48, 57, 76 and 77. *Esp. see*, p. 115 and 117, where on July 21, 2006, executive director of FCSA, John Regitano, states:
>
> The homes will also be used [for]…mental health treatment in a residential setting.[5]

Should there be any doubt as to what Mr. Regitano means, examine Exh. 4, p. 26, titled Family Centered Services of Alaska Capital Funding Request to Construct Six Therapeutic

---

[4] Interestingly, while Defendant's vehemently argue that they do not treat the severely mentally ill, to counsel's observation, they have not once said that they do not care for the mentally ill, nor have they apparently said they do not care for the sick or mentally defective.

[5] Please note that Attachment A of the Grant Agreement at Exh. 2, p. 4, is part and parcel of the designated legislative grant. It is executed by Executive Director John Regitano on August 16, 2006 at Exh. 2, p. 3. AS 37.05.316 requires that a grant agreement must be executed within sixty (60) days after the effective date of an appropriation.

Family Homes, where FCSA and Mr. Regitano requests the "Million Dollar Grant" ($960,000), They describe a Therapeutic Family Home:

> **What is a Therapeutic Family Home?** A Therapeutic Family Home (TFH) provides residential care to children ages 6-18 (male & female) that are experiencing some form of mental health illness often combined with substance abuse, and are at risk of psychiatric placement outside of their community. A TFH is designed to be reflective of a family experience rather than an institutional setting_ Homes are located in residential neighborhoods with larger building lots no less [than] one (I) acre in size and look internally and externally like any other private family residence. The TFH is operated by live-in therapeutic parents who are responsible for the overall care and supervision of up to five children who are supported as needed by other clinical and counseling staff that work with the children and provide support and relief for the therapeutic parents. The primary goal of the TFH is to provide an alternative for children that are currently being placed in higher level, more restrictive, and more costly residential psychiatric treatment facilities in and outside of Alaska. The cost of providing mental health treatment in a TFH is approximately $180 per day this compares to a cost of approximately $280 to up to $350 per day for the same children when placed in higher level~4 & 5 institutional mental health treatment facilities. (Emphasis added).

29 U.S.C. §203(r)(2)(A), (C) says , "…an institution primarily engaged in the care of the sick, the aged, he mentally ill or defective who reside on the premises of such institution,… shall be deemed to be activities performed for a business purpose."

FCSA's and John Regitano's description above of a Therapeutic Family Home (TFH) fit the statute to a "T", and unequivocally proves that FCSA and its Therapeutic Family Homes are covered by the FLSA.

### QUARTER-MILLION DOLLAR GRANT

Apparently, the "Million Dollar Grant" could not be used to pay for land, but only for building construction, Exh. 2, p. 121. An additional "Quarter-Million Dollar Grant" was then requested for land acquisition, in the spring of 2008.

Johnny Powell, an FCSA Houseparent but not a plaintiff in this case, filed a wage and hour overtime action against FCSA in October 2006. Doc. 35, p. 6, fn. 7. The complaint in the originating case, *Probert v. FCSA*, 4:07-cv-00030 RRB, was filed October 12, 2007.

Remarkably, the "Quarter-Million Dollar Grant," (from 2008 after the filing of the overtime lawsuits) Exh. 3, omits any mention of mental health treatment. In paragraph 1 of Executive Director John Regitano's letter to the Grant Administrator concerning the homes, FCSA omits the mention of the use of the homes for mental health treatment, versus FCSA's statement in the July 21 letter. Compare Exh. 3, p. 40 to Exh. 2 at 115, 117. Also, Att. A, Scope of Work at Exh. 3, p. 4, omits such language compared to Att. A, Scope of Work at Exh. 2, p. 4. It appears that the entirety of the "Quarter-Million Dollar Grant" purposefully omits FCSA's previous acknowledgement that it is an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution. This appears to be evidence a "guilty mind".

## EXHIBIT 11

Defendant's attempt to claim that the TFHs are only family homes, similar to orphanages or residences for the destitute because they lack a safe and stable home environment. Doc. 18-6, para. 2.

FCSA is wrong. See, Exh. 11, pg. 33 – 42, the checklists for Runaway, Emergency and Boarding Facilities. These are all marked "not applicable".

Defendant FCSA does operate foster homes; however, the TFHs are not foster homes, as is evidenced by prior discussions and by these licensing checklists. If FCSA has foundlings, they can be placed in FCSA's Level I foster homes. See, also Declaration of Carla R. Smith, para. 19,

Exh. 12.

## HIGHLY REGULATED INDUSTRY

Residential Child Care Facilities are highly regulated by the State of Alaska.6[6]

## STATE LICENSING AND REGULATION OF THERAPEUTIC FAMILY HOMES

All Residential Child Care Facilities must be licensed by the state. AS 47.32.010(3), (13).[7] These licenses indicate that they are subject to all rules, administrative code, regulations and the Office of Children's Services Behavioral Rehabilitation Services (BRS) Handbook. BRS

---

[6] Defendant's claim that they are not an institution. The Court found that under the various definitions, indeed they were. Besides the finding of the Court that the TFHs are institutions under 42 CFR §435.1010, Doc. 63 at 11, additional definitions indicate that a child care facility is an institution.

> 45 CFR §1355, The Administration on Children, Youth and Families, Foster Care Maintenance Payments, Adoption Assistance, and Child and Family Services.
>
> Child care institution means a private child care institution, or a public child care institution which accommodates no more than twenty-five children, and is licensed by the State in which it is situated … responsible for licensing or approval of institutions of this type as meeting the standards established for such licensing.

As previously discussed, these are licensed facilities and the State maintains the standard; therefore, under this definition, the TFHs are institutions.

The term child care institution is also used in 42 U.S.C. §671(10), AS 47.07.020(b)(3), 7 AAC 100.002(c)(5)(A), 45 CFR §1356.71(g)(1)(i) and (ii), 45 CFR §1356.60(b)(1)(ii), 45 CFR §1356.30(f), 45 CFR §1356.21(m)(2), 45 CFR §1355.

Additionally, a Certificate of Need is required prior to the licensing of any residential facility. AS 47.80.140.

[7] This statute distinguishes child care facilities at (3), from Residential Child Care Facilities at (13).The TFHs are Residential Child Care Facilities. *See,* Regitano Affidavit at Doc. 53-3, para. 2. *See*, also Doc. 53-4, p. 2 and a copy of one of FCSA's Licenses for the TFH, attached as Exh. 13.

Handbook, Exh. 6. *See*, also TFH License, Exh. 13.

The BRS Handbook assigns a level to child care facilities. *See*, Exh. 6, p. 7. Level I facilities are essentially foster care facilities. Level III facilities are, at least in this instance are TFHs, TFHs are called Residential Child Care Facilities. Level IV facilities are Residential Psychiatric Treatment Centers. AS 18.07.111.

In order to be admitted into a Level III facility, a child has to meet certain criteria. The children must be Severely Emotionally Disturbed (SED). *See*, Policies and Procedures Manual, filed at Doc. 53-6, p. 2, and the BRS Handbook, Exh. 6, p. 6.

Severely emotional disturbed criteria are set out in 7 AAC 43.471 (appended hereto). The recipient has to have maladaptive behavior, serious functional impairment in one or more areas of social functioning, including family, school or community as indicated by an Axis V Global Assessment of Functioning (GAF) Rating at admission, of 50 or less. *See*, DSM GAF Scale, attached as Exh. 14. In order to receive mental health rehabilitation services under 7 AAC 43.486, the medical necessity for mental health rehabilitation services must be met, including a GAF score under 50. 7 AAC 43.486. This is a diagnosis. A GAF of 50 says:

Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

The GAF scale runs from 1 to 100. Most of us would like to think that we fall somewhere in the 80's or 90's. On a good day, we may think that we are a 100 or Superman. In reading the categories, none of us would like to think that we would fall in the 50 or less categories. (The Court ought to pause at this point and ask, "Is a child with a Global Assessment of Functioning

of 50 or less sick, infirm, mentally ill or the like?")

Residential Child Care Facilities are required to meet a plethora of state requirements under the Administrative Code. These requirements are reflected in Defendant's Policy and Procedures Manual and other documents attached to Plaintiffs' Motion at Doc. 53.

### **BEHAVIORAL REHABILITATION SERVICES (BRS) PROVIDER**

"FCSA receives payments from Medicaid through the State of Alaska…" Opposition to First Motion for Partial Summary Judgment, Doc. 18 at p. 12.

> [A] provider of behavioral rehabilitation services for severely emotionally disturbed children is eligible to enroll with the department and bill directly for services rendered.
>
> 7 AAC 43.035.
>
> 7 AAC 43.470. Children's mental health services, subsection (a) states:
>
> (a) The division will reimburse an enrolled provider for an intake assessment, a psychiatric assessment, or psychological testing and evaluation provided to a recipient under 21 years of age if a mental health professional reasonably believes the recipient is an emotionally disturbed child, or a severely emotionally disturbed child….
>
> (c) Subject to the limits set out in 7 AAC 43.727, the division will reimburse a provider for mental health services provided to a recipient under 21 years of age if the
>
> (1) recipient is determined…to be…emotionally disturbed….
>
> (e) …the division will reimburse a community mental health clinic for…a recipient who is…severely emotionally disturbed…at risk of placement in a mental health inpatient or residential facility, group home, foster home, or similar out-of-home placement:…
>
> (f) The severely emotionally disturbed [recipient] who receives mental health rehabilitative services listed in (e) of this section must be

(1) provided with an intake assessment and a functional assessment;

(2) provided with an EPSDT[8] screening in accordance with 7 AAC 43.452; and

(3) assigned an interdisciplinary team.

(g) The division will reimburse a provider for the services identified in (e) of this section if those services are recommended by the recipient's interdisciplinary team, are included in the recipient's individualized treatment plan and clinical record, as developed under 7 AAC 43.728, and are provided as active treatment….

(h) …a recipient's interdisciplinary team shall meet at least quarterly while the recipient remains in treatment, and conduct a treatment plan review, as developed under 7 AAC 43.728(f), to review the recipient's individualized treatment plan and the effectiveness of the services being provided under that plan. The interdisciplinary team shall record the results of the review and any changes in the individualized treatment plan in the recipient's clinical record….

(k) An interdisciplinary team must include, at a minimum,

(1) the recipient;

(2) the recipient's family members, including parents, guardians, siblings, or others similarly involved in providing general oversight of the recipient;

(3) a psychiatrist, psychologist, or mental health professional clinician;…


7 AAC 43.481 states:


(a) In order to enroll and to provide behavioral rehabilitation services, a provider must be a grantee of the department under 7 AAC 53.901.

(b) <u>Behavioral rehabilitation services</u>

(1) <u>must be approved by the department</u>;

---

[8] Early Periodic Screening Diagnosis and Treatment

  (2) <u>may only be provided</u>

  (A) <u>to a severely emotionally disturbed child</u> under 7 AAC 43.471;

  (B) if recommended by or under the direction of a licensed physician or licensed mental health professional clinician; and

  (C) if they are designed to remediate problems associated with a mental health diagnosis that is documented in a clinical assessment, and if they are specifically identified in an individualized treatment plan developed, reviewed, and updated in accordance with 7 AAC 43.728;

  (3) that consist of supportive counseling must be consistent with the severely emotionally disturbed child's individualized treatment plan developed, reviewed, and updated in accordance with 7 AAC 43.728; counseling must be documented and made available to a licensed physician or licensed mental health professional clinician for review; and

  (4) <u>may be provided in a residential care, therapeutic foster care, or therapeutic group home setting</u>. (*Emphasis added*).

The Department of Health and Social Services' Behavioral Rehabilitation Services (BRS) Handbook, Exh. 6, describes treatment for children who have emotional and mental health problems. The Residential Child Care Facilities are Level III facilities.

Plaintiff here comments, these children are in this program because they are severely emotionally disturbed. They may have come from residential psychiatric treatment centers. They are sick, infirm, or mentally ill, but most likely, all three.

The BRS Provider must accept children/youth referred by the department for placement when the child/youth referred meets the criteria listed under "Target Population" on page 6, and on the pages describing the various levels of care. BRS Handbook, Exh. 6.

"Target Populations" appear to be severely emotionally disturbed children. *See*, last paragraph on Exh. 6, p. 6. They appear to include Bring the Kids Home Initiative children. The

TFHs were built to accommodate Bring the Kids Home Initiative children. *See*, Description of Bring the Kids Home Initiative in the "Million Dollar Grant," Exh. 2, p. 46-55.

## LEGAL DISCUSSION OF ABOVE FACTS

Plaintiffs initially filed their First Motion for Summary Judgment on liability asserting that the children were mentally ill at Doc. 9. The Court denied this motion at Doc. 50, and found that there was a triable issue of fact thereon.

Plaintiffs' subsequently filed a Second Motion for Summary Judgment at Doc. 53, alleging that even if the children were not mentally ill, they were sick or defective. The Court ruled on this motion at Doc. 63. Plaintiffs had asked the court to rule on the basis of a theory under 29 U.S.C. §203 (r) and (s) of the children being sick, mentally ill or the like. The court *sua sponte* reversed its ruling on the First Motion for Summary Judgment and granted summary judgment and liability under 29 U.S.C. §203 (r) and (s) based upon a re-review of the First Motion and its exhibits; thereby, effectively granting the First and the Second Motions for Summary Judgment. *See*, Doc. 63, Conclusion at p. 15.

> One of the principle purposes of 56(f), the summary judgment rule, is to isolate and dispose of factually unsupported claims or defenses.
>
> *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324 (1986).

The basis for the Court's ruling is only strengthened by the certified copies of the grant files submitted herewith as Exh. 2, 3, and 4, as well as Exhibit 11, licensing checklists.

Discovery in this matter was stayed in an attempt to sort out only the FLSA applicability. *See*, Affidavit of Foster Wallace at Doc. 126-4, para. 4. There is a plethora of state

documentation obtained and being obtained. If FCSA persists with its increasingly weak defense, Plaintiffs' will need to confirm, through discovery, its prior admissions about mental health treatment. Plaintiffs' case can only get better.

## CONCLUSION

The District Court's initial conclusion on the applicability to the FLSA is well-reasoned and sound. The additional materials submitted herewith consist of state records, or are explanatory of them. Exhibits 2, 3, 4, and 11 should have been supplied to Plaintiff during the course of the case, prior to the interlocutory appeal.

The Court clearly would have relied upon them and should so indicate to the Appellate Court.

RESPECTFULLY SUBMITTED this 4th day of December, 2009 at Fairbanks, Alaska.

LAW OFFICE OF KENNETH L. COVELL
Attorney for the Plaintiffs
s/ Kenneth L. Covell
712 Eighth Avenue
Fairbanks, Alaska 99701
Phone: (907) 452-4377
Fax: (907) 451-7802
Email: kcovell@gci.net
ABA No. 8611103

**CERTIFICATE OF SERVICE**
This is to certify that a copy of the foregoing has been served electronically by ECF to the following attorney(s) and/or parties of the record:

**Colin C. Hampton**

**Richard D. Monkman**

Dated: December 4, 2009

By: s/   Yauna Taylor
         Law Office of Kenneth L. Covell