# DEPARTMENT OF HEALTH AND SOCIAL SERVICES



## *OFFICE OF CHILDREN'S SERVICES*

## *BEHAVIORAL REHABILITATION SERVICES*

## *HANDBOOK*

## *Effective Date:  July 1, 2009*

*For more information contact*

Deborah Craig, Residential Care Program Manager
Office of Children's Services
PO Box 110630
Juneau, Alaska 99811
907-465-5006
FAX 907-465-3656

Or visit the OCS RCC Website at:
http://www.hss.state.ak.us/ocs/ResidentialCare/

BRS HANDBOOK

## TABLE OF CONTENTS

RESIDENTIAL CARE SYSTEM HISTORY ................................................................ 4
BEHAVIORIAL REHABILITATION SERVICES ...................................................... 5
    Service Components Provided in Residential Care ............................................. 5
    Milieu Therapy ..................................................................................................... 5
    Crisis Intervention and Crisis Counseling .......................................................... 5
    Counseling ............................................................................................................ 6
    Skills Training ...................................................................................................... 6
    Target Population .................................................................................................. 6
RESIDENTIAL LEVEL OF CARE I-V OVERVIEW .............................................. 7
RESIDENTIAL LEVEL I-V DETAILED DESCRIPTIONS ................................... 8
    Level I Day Treatment Programs ......................................................................... 8
    Level II Emergency Stabilization and Assessment Centers (ESAC) ................. 8
    Level III Residential Treatment ......................................................................... 11
    Level IV Residential Diagnostic Treatment Centers ........................................ 14
    Level V Residential Psychiatric Treatment Centers ......................................... 18
GENERAL PROGRAM REQUIREMENTS ........................................................... 19
    Acceptance of Referrals ..................................................................................... 19
    Admission Requirements .................................................................................... 20
    Required Approval for Admitting a Child/Youth to Residential Child Care ..... 20
    Approval Matrix for Additional Staff, Held Beds & Non-Custody Child/Youth ........ 21
    Basic Care Requirements .................................................................................... 22
    Required Staff to Child/Youth Ratios ................................................................ 23
    Incident Reports .................................................................................................. 23
    Suicide Prevention .............................................................................................. 24
    Discharge Planning ............................................................................................. 24
    Discharge ............................................................................................................ 25
ADMINISTRATION & PERSONNEL ................................................................... 26
    Governance .......................................................................................................... 26
    Responsibilities of a Governing Body of Residential Child Care Facilities ........ 26
    All Staff Qualifications ....................................................................................... 26
    Mental Health Professional Definition .............................................................. 26
    CPR Requirements .............................................................................................. 27
    Staff Orientation Requirements ......................................................................... 27
    Staff Training Requirements ............................................................................... 27
OVERSIGHT, FINANCIAL REIMBURSEMENT & MEDICAID PAYMENTS ......... 29
    Medicaid Enrollment for Residential Care BRS Providers .............................. 29
    Approved Medicaid Services for BRS Grantees ............................................... 29
    Other Medicaid Services Billable under this Residential Care System ............ 30
    Individual Service Agreement (ISA) ................................................................. 30
    Payment Documentation Requirements .............................................................. 30
PROGRAM CORE AND BRS FUNDING ............................................................. 32
    Geographic Differential Rate ............................................................................. 32
    Examples of RCC Funding Calculations ........................................................... 32
PROGRAM REPORTING REQUIREMENTS ........................................................ 34
    Daily Utilization Report ..................................................................................... 34
    Monthly Reports ................................................................................................. 34

BRS HANDBOOK

Monthly Attendance Reports .......................................................................... 34
Attendance Codes for Payment ..................................................................... 34
Quarterly Reports .......................................................................................... 35
Other Reports ................................................................................................ 36
Guidelines for Supplemental Requests ......................................................... 36
ON-SITE PROGRAM REVIEW & MEDICAID AUDIT .............................................. 37
Appendix I Relevant Statute and Regulation for BRS Providers ..................................... 39

The BRS Handbook is intended to provide guidance beyond the statues and regulations that govern Residential Child Care (RCC) facilities. This guide references forms and procedures developed by the Department of Health and Social Services (the Department) that may change over the course of time.  RCC providers will generally be given an opportunity to consult and comment on proposed changes. When changes occur, RCC providers will be informed directly and changes will be noted and dated in the on-line BRS Handbook found on the Department's RCC website.

Facilities will be provided sixty (60) days from the date of notification of the change to the online BRS Handbook to implement the use of new forms or procedures.

Please check the RCC Website for updates to the BRS Handbook, forms, Provider Meeting schedules and provider information.

http://www.hss.state.ak.us/ocs/ResidentialCare/

BRS HANDBOOK

# RESIDENTIAL CARE SYSTEM HISTORY

Since 1984, the Office of Children's Services (OCS) has purchased residential childcare services through grants governed by AS 47.40.011 – 091 and 7 AAC 50.900 – 999. Under the grant agreements, the division purchased a fixed number of residential childcare beds from qualified non-profit agencies across the state.  The amount of each grant was related to the number of funded beds and per day payment rate.  This daily rate was based on the category of care provided and any applicable and approved geographic differential.

Residential child care is defined as a place that provides 24 hour basic care and treatment of one or more child/youth who are not related by blood, marriage or legal adoption to the owner or operator and includes facilities called group homes, institutions and maternity homes.  Employees staff these facilities.  The facilities operating under this grant are required to be in compliance with state licensing requirements under AS 47.35 and 7 AAC 50.005 – 990.  Child/youth placed in residential facilities can either be in the legal custody of the Department of Health and Social Services or in the custody of a parent or other legal guardian.  Both populations must have a demonstrated need for treatment received in a highly structured and supervised placement.

During FY 2001, the payment structure for OCS funded residential child care was changed to incorporate a Medicaid funded service called Behavior Rehabilitation Services (BRS) into the daily rate paid to residential care providers.  Residential Care had historically been financed with state general funds and reimbursement through the federal Title IV-E program.  Title IV-E still plays a small role in funding care while state general funds continue to provide substantial funding. The Medicaid funding for residential care now involves using Behavioral Rehabilitation Services, not Mental Health Rehabilitation Services.  This change created more leverage for federal funds and allows a more simplified process for billing Medicaid.  Essentially, BRS bundled all services provided in residential child/youth care under 7 AAC 50.200 – 790 including those services provided which, in the past, were paid under augmented foster care rates.

In FY 2006 Behavioral Rehabilitation Services were defined in regulation and extended to child/youth Medicaid recipients who are not in the custody of the Department.  Through the *Bring The Kids Home Initiative,* children or youth not in the Department's custody and/or not Alaska Medicaid recipients may also qualify for BRS services.  Facilities serving these children/youth will receive BRS funding as long as no other form of payment is available such as third party insurance or paid community beds purchased by another BRS Provider. <u>Residential Child Care statutes and regulations apply to all providers of residential child care.  BRS Handbook requirements apply to children/youth utilizing a BRS funded bed.</u>

*Note: Core funding (general funds) will be approved for non-custody youth as long as funding remains available.  If OCS's general fund budget is no longer able to sustain core payments for non-custody youth, core payments will be discontinued until appropriate funding has been identified or reallocated to OCS by the Legislature.*

BRS HANDBOOK

# BEHAVIORIAL REHABILITATION SERVICES

The purpose of residential care services is to: "remediate specific dysfunctions which have been explicitly identified in an individualized written treatment plan that is regularly reviewed and updated."  These services are provided to child/youth in residential settings to treat debilitating psychosocial, emotional and behavioral disorders.  BRS services provide early intervention, stabilization and development of appropriate coping skills upon the recommendation of mental health professional within the scope of their practice within the law. These services are "client-centered" and can be provided within the residential care system either individually or in groups.

When possible and appropriate, services should include the child/youth's biological, adoptive or foster family.  Treatment is focused upon the needs of the individual child or youth, not the family unit but the family should be involved during the treatment process if family reunification is the desired result.  These services may be in conjunction with or in support of any other professional treatment services the child/youth may be receiving as required by the diagnosed condition.

**Service Components Provided in Residential Care**
These services may be provided in a variety of settings and consist of interventions to help children/youth acquire essential skills. Service components include:

> **Milieu Therapy**
> Milieu therapy are those daily activities performed with children/youth to normalize their psychosocial development, promote the safety of the child/youth and stabilize their environment.  The child/youth is monitored in structured activities that may be developmental, recreational, academic, rehabilitative, or a variety of productive work activities.  As the child/youth is monitored, planned interventions are provided to remediate behaviors identified in each child/youth's plan of care and promote pro-social behavior.

> **Crisis Intervention and Crisis Counseling**
> Crisis intervention and crisis counseling must be provided on a 24-hour basis to stabilize the child/youth's behavior until resolution of the problem is reached, or until the child/youth can be assessed and treated by a qualified mental health professional or licensed medical practitioner.  BRS non-clinical crisis intervention is not the same as "crisis intervention" described under Medicaid clinical services which must be provided by a qualified Mental Health Professional (see page 26 for definition) who assesses a recipient's danger to self or others during an acute episode of a mental, emotional or behavioral disorder and provides short-term mental health services to reduce symptoms and prevent harm.  If a child/youth needs clinical crisis intervention, BRS Providers are required to provide or arrange for it.  BRS Providers also enrolled in the Medicaid program as a community mental health clinic may bill Medicaid for clinical crisis intervention as provided under Medicaid program requirements.

BRS HANDBOOK

**Counseling**
Counseling must be provided individually and/or in-groups to remediate the specific behavioral dysfunctions which have been explicitly identified in the child/youth's individual treatment plan of care.

<u>Counseling provided under BRS is not the same as "psychotherapy" which is a clinical service under Medicaid.</u>  A person may provide counseling with less than a Master's degree.  These services will be coordinated with psychotherapeutic services provided by a professional mental health clinician.

**Skills Training**
Skills Training is intended to assist the child/youth in the development of appropriate responses to social and emotional behaviors, peer and family relationships, self-care and conflict resolution.

**Target Population**
The target population includes:
- Children/youth between the ages of 0-18
- Children/youth in DHSS custody and Alaska Medicaid Eligible
- Children/youth not in DHSS custody and Alaska Medicaid Eligible*
- Children/youth not in DHSS custody and not eligible for Alaska Medicaid*

*Through the Bring The Kids Home Initiative, children or youth who are not Alaska Medicaid recipients and/or not in DHSS custody must have written approval by the OCS <u>Residential</u> Care Program Manager to receive BRS Services.*

These children/youth may have primary mental, emotional and behavioral disorders and/or developmental disabilities that prevent them from functioning at developmentally appropriate levels in their home, school, or community.  They may exhibit symptoms such as anti-social behaviors that require close supervision and intervention and structure, mental disorders with persistent non-psychotic or psychotic symptoms, drug and alcohol abuse, or sexual behavior problems that severely or chronically impair their ability to function in typical family, work, school, or other community roles.  Children/youth may be victims of severe family conflict, behavioral disturbances often resulting from substance abuse and/or mental illness of the parents.  These children/youth may have physical and mental birth defects from prenatal maternal alcohol use or alcohol related neurological defects. These children/youth may be medically compromised or developmentally disabled children/youth not otherwise served by the Division of Behavioral Health.

BRS HANDBOOK

# RESIDENTIAL LEVEL OF CARE I-V OVERVIEW

| Level and Description | Staff Levels | Defining Characteristics | Length of Stay |
|---|---|---|---|
| **Level I**<br><br>**Day Treatment** | 1:6 | An intensive daytime program of structured, supervised, rehabilitative activities for adolescents with behavioral and emotional problems.<br><br>This category also includes payment for Therapeutic Foster Care | Daily as needed |
| **Level II**<br><br>**Emergency Stabilization & Assess-ment Center** | 1:5<br>If under 30 Mo<br>1:3<br><br>Awake Night<br>1:12 | Provides behavioral rehabilitation services (BRS) and temporary residential care for youth who are in immediate danger or need stabilization and assessment of needs services. Services include crisis stabilization, diagnosis, family mediation, individual and group counseling.<br><br>The emphasis in this setting is on diagnostics and future placement based on therapeutic needs of the child. | Not intended for longer than 30 days |
| **Level III**<br><br>**Residential Treatment** | 1:5<br><br>Awake Night<br>1:12 | Provides 24-hour BRS and treatment for children/youth with emotional and behavioral disorders. This level is for youth in need of and able to respond to therapeutic intervention, who cannot be treated in a less restrictive environment. | Up to 18 month / 24 months for SO program |
| **Level IV**<br><br>**Residential Diagnostic Treatment** | 1:3<br><br>Awake Night<br>1:12 | Small therapeutic facilities providing structured supervision 24 hours per day in a more restrictive environment. Intensive treatment services include crisis intervention, accurate diagnosis (behavioral, health, mental health, substance abuse, other), behavioral stabilization and management. | Up to 18 month / 24 months for SO program |
| **Level V**<br><br>**Residential Psychiatric Treatment Center** | 1:3 | RPTC programs provide 24-hour interdisciplinary, psychotherapeutic treatment in a "secure" or "semi-secure" facility for children/youth with severe emotional or behavioral disorders and complex, multi faceted diagnoses who have a high risk of harm to self or others. | As determined by medical necessity |

**\*\*The appropriateness of placement in a Level II, III, IV or V facilities is determined by the structure, staffing patterns and security to maintain the safety of the child. The degree of intensity of the behaviors exhibited and the need for restriction of activities are the critical factors in determining appropriateness of placement.**

**Consequently, prospective clients may not be excluded solely on behavioral issues but <u>must be clinically evaluated</u> for the degree of structure, staffing and security necessary to provide safety, while maintaining the child in the least restrictive, most normative environment possible.**

**Placement length of stay parameters noted above are outer limit time frames but the individual needs of the child/youth are the primary concern with regard to length of stay in treatment. The length of stay may vary according to the child/youth's needs.**

BRS HANDBOOK

# RESIDENTIAL LEVEL I-V DETAILED DESCRIPTIONS

### Level I Day Treatment Programs
*(Note: No Level 1 programs currently funded in FY2009-10)*

Day treatment is an intensive daytime program of structured, supervised, rehabilitative activities for adolescents with behavioral and emotional problems. Coordinated services shall be provided to the child/youth and the family in order for the child/youth to be maintained in their own home or in foster care, either as an alternative to residential/institutional placement, or as part of a continued plan.

**Level I Goals**

The goals of a day treatment program must include but are not limited to:
1. Maintain placement at home or in foster care;
2. Encourage education and improve academic performance;
3. Improve interpersonal relationships; decrease behavioral and emotional problems;
4. Counseling for the adolescent and the adolescent's family or foster parents that is directed at alleviating behavioral or emotional problems and improving family relationships.

**Level I Services**

Services must be available on a routine, continuous basis for not less than 8 hours per day, for not less than 255 days per year. Treatment components must include:
1. Individual and group counseling for the child/youth, family members, and foster parents conducted by a qualified counselor;
2. Support staff and programming for an enhanced educational program;
3. Training and counseling in basic living skills, interpersonal skills, problem solving skills, anger management;
4. Physical and academic education;
5. Recreation;
6. Structured summer activity program.

_____

### Level II Emergency Stabilization and Assessment Centers (ESAC)

Emergency Stabilization and Assessment Centers provide behavioral rehabilitation services and temporary residential care for children/youth that are in immediate danger in their present environment, who need short term, temporary placement, or may need stabilization and assessment of their needs.

These children/youth may be in crisis due to recent disclosure of abuse, neglect, or commission of a delinquent act and may have recently been removed from their family home, foster home or other placement. The ESAC program is responsible for assisting and resolving the crisis, stabilizing the child/youth and assisting in the planning for the child/ youth's return home or placement in alternative care.

BRS HANDBOOK

**Level II Goals**
The goals of emergency stabilization and assessment centers must include but are not limited to:
1. Stabilize the child/youth's behavior and assess for treatment needs;
2. Assist the child/youth in dealing with the crisis of emergency placement;
3. Assure the child/youth is available for scheduled court appearances (if applicable);
4. Provide a comprehensive assessment of the child/youth's care and treatment needs if in care for five days or more;
5. Provide coordination of medical treatment and supervision of medication delivery
6. Maintain the child/youth's education;
7. Participate in the post ESAC placement planning.

**Level II Services**
The ESAC facility must have a planned program of group living, community experience and educational opportunities. ESAC must provide awake night staff. The following in-house services must be provided, as identified in the individual treatment plan;
1. Stabilization and assessment;
2. Crisis intervention;
3. Family mediation;
4. Individual and group counseling.

**Level II Admissions**
The BRS Provider will accept or reject a completed referral within five (5) business days of its receipt and will provide written statements to the referral agent outlining the specific reasons for rejection. A BRS Provider may only refuse a placement if the program cannot appropriately serve the child/youth with reasonable accommodations due to the child/youth's special needs or lack of capacity.

During the admission process, the admitting ESAC staff member shall determine whether the child/youth is in need of immediate medical attention for recent use of medication. If the admitting ESAC staff member finds the child/youth to be incapacitated by drugs and/or alcohol or in immediate need of medical or psychiatric attention, the staff member shall advise the referring party to arrange for emergency medical assessment and care. The admission process may be deferred until the referring party produces a physician's statement certifying that the child/youth has received medical or psychiatric attention and that the child/youth's medical or psychiatric condition does not preclude placement in an ESAC. Children/youth who appear to be ill or injured or under the influence of alcohol, narcotics, or similar agents, but not in need of immediate medical attention must be given medical attention as soon as practical after admission. A written record must be kept of the admission interview, health assessment, and physician statement if applicable.

**Level II Risk Screen**
A Risk Screen should be administered *at intake* to determine the child/youth's level of risk; a clinical staff member should review this screen as soon as possible or at the time of assessment. If no immediate needs are identified through the Risk Screen, a child/youth in placement for less than five (5) calendar days who receives this screen does not need further assessment.

BRS HANDBOOK

### Level II Brief Plan of Care

Facility staff must develop a Brief Plan of Care (BPOC) within five (5) calendar days of admission of a child or youth.  The BPOC is an assessment of the child's immediate and specific needs and must be conducted by qualified staff supervised by a Mental Health Professional or by contracted providers such as the local community behavioral health centers.  The BPOC must be signed by the Mental Health Professional when conducted by staff.

The BPOC must include:
1. Short-range goals and tentative long-range goals for the child and the child's family;
2. Plans for family involvement, as appropriate;
3. The specific services to be provided by the facility and other resources to meet the child's needs; and
4. The anticipated discharge date.

If a Level II facility is unable to conduct a brief plan of care by the fifth (5th) day, they must notify the Residential Care Program Manager and explain why the BPOC could not be completed in the five-day time frame and the date when the BPOC will be completed. The Residential Care Program Manager will send an email granting an extension and confirming the date by which an assessment will be completed.  It is not expected that extensions will be standard operating practice.

### Level II Assessment and Treatment Planning

Within fifteen (15) days of the admission of a custody or non custody child, a Mental Health Professional shall conduct an assessment of the child/youth's specific behavioral rehabilitation needs measuring the following areas:
- Behavioral/functional
- Educational
- Medical
- Social/emotional issues

BRS Providers may use assessments completed within six (6) months prior to admission to satisfy this requirement provided the program Mental Health Professional reviews and provides an update to the previous assessment within the required timeframes.

Upon completion of the assessment, a treatment plan based on the assessment and developed in collaboration with the treatment team shall be developed by thirty (30) days after admission. The treatment plan may be created by qualified facility staff, but must be reviewed and approved by a Mental Health Professional.

Facility staff must review and renew the treatment plan every fifteen (15) days thereafter that adequately explains:
1. The reason for continued care;
2. Plans for other placement; and
3. Barriers to other placement and plans to eliminate the barriers.

BRS HANDBOOK

**Level II Length of Stay**

To the extent it provides emergency shelter care, a Residential Care facility may not maintain a child/youth in care for longer than thirty (30) days unless there is documentation that continued care is necessary (7 AAC 50.610 (k)).

Children/youth may not be maintained in care beyond sixty (60) days unless approved by the Residential Care Program Manager prior to exceeding sixty (60) days. It is the goal of the Department not to allow youth to remain in the facility more than ninety (90) days, with sixty (60) days as the preferred outer limit.

If the provider anticipates the child will remain at the facility past sixty (60) days, an extension must be requested of the Residential Care Program Manager. Before approval of an extension, facility staff will call the treatment team together before the forty-fifth (45th) day of treatment to inform the team that the allowable length of stay (sixty (60) days) is coming to an end and to help facilitate timely discharge. The facility will provide the Residential Care Program Manager with the discharge plan resulting from this meeting with the extension request, if needed.

For children/youth who are not in custody and occupying a BRS funded bed, the Residential Care Program Manager will review and approve or deny extension requests for approval beyond sixty (60) days.

If a determination is made that the child/youth is difficult to place and may need long term residential treatment, a referral must be made to the Regional Placement Committee.

**Distinguishing Between Level II and Level III**

Level II RCC's are short term, emergency stabilization and assessment units that provide an interim placement for children or youth. By definition, treatment is short term in that a placement is intended for up to thirty (30) days and rarely appropriate for a longer period unless arrangements are being made for an alternative placement that is taking more time.

Level III RCC's are longer term placements intended to provide a therapeutic environment in which specific behaviors or issues are addressed in the context of a treatment plan.

_____

**Level III Residential Treatment**

*Note: Levels of care for youth in Level III, IV and V facilities are determined by structure, staffing patterns, security to maintain the safety of the child and level of services provided. Higher levels of care result in a higher level of structure and restrictiveness.*

Residential treatment programs provide 24-hour behavioral rehabilitation services (BRS) and treatment for children/youth with emotional and behavioral disorders. This level of service is provided for children/youth who are in need of and are able to respond to

BRS HANDBOOK

therapeutic intervention and <u>who cannot be treated effectively in their own family,</u> a foster home, or in a less restrictive and structured setting.

### Level III Goals
1. Prepare the child/youth and family for the child/youth to return home, to a relative placement, to foster care, or to live independently;
2. Improve behaviors that are related to the client's skill deficits identified by their DSM IV diagnosis and reinforce positive behaviors;
3. Maintain and improve the child/youth's educational progress;
4. Develop independent living skills;
5. Participate in developing a discharge plan for subsequent placement.

### Level III Services
These programs provide medium to long-term (up to 18 months, 24 months for Sex Offender program) residential care and treatment for <u>children/youth who have emotional and mental health problems</u> and display inadequate coping skills. A high percentage of these children/youth will have a history of being physically and sexually abused. They may have a history of delinquency and have limited impulse control.

Program components must include:
1. Planned group living/milieu therapy;
2. Community experiences;
3. Ongoing individual, group and family therapy and/or counseling if identified in treatment plan;
4. An individualized educational program for each resident;
5. Individualized, strength based treatment plan, including crisis prevention.

Many of the children/youth placed in these programs have had multiple placements in less structured facilities. They may have a history of inability to adjust and progress in a public school and may require a self-contained classroom environment to help them develop the educational, social, behavioral and coping skills necessary to return to a less structured placement. These children/youth may attend school in a community based educational system; however, they may require additional tutoring and a behavior modification program in order to resolve social or behavioral problems prior to going home or emancipation.

### Level III Behavioral Characteristics
Behaviors of children/youth appropriately referred to a Level III facility include:

- Thought, emotional or behavioral disorders;
- Depression;
- Withdrawal;
- Stealing;
- Mild mental retardation (suitability depending on behaviors),
- Borderline range cognitive function;
- FASD (suitability depending on behaviors).

- Running;
- Inappropriate sexual acting out;
- Moderate self abuse;
- Mild aggression;

BRS HANDBOOK

### Level III Admissions

The Regional Placement Committee must refer children/youth that are in DHSS custody to a Level III facility.

The BRS Provider will accept or reject a completed referral within five (5) business days of its receipt and will provide written statements to the referral agent and the Residential Care Program Manager detailing the child/youth's specific behaviors and problems that are not able to be addressed in their program and any other reasons for rejection. A BRS Provider may only refuse a placement if the program cannot appropriately serve the child/youth with reasonable accommodations due to the child/youth's special needs or lack of capacity.

### Level III Brief Plan of Care

A Brief Plan of Care (BPOC) must be developed within fifteen (15) calendar days of admission of a child/youth. The BPOC:

- Is an assessment of the child's immediate and specific needs,
- Is a description of the services that will be provided,
- Must be conducted by qualified staff supervised by a Mental Health Professional (i.e. BPOC signed by the Mental Health Professional).

### Level III Assessment and Treatment Planning

Within thirty (30) days of the admission of a custody or non custody child/youth, a Mental Health Professional must conduct a comprehensive assessment of the child/youth's immediate, specific behavioral rehabilitation needs measuring the following areas:

- Behavioral/functional
- Educational
- Medical
- Social/emotional issues

BRS Providers may use assessments completed within six months prior to admission to satisfy this requirement provided the program Mental Health Professional reviews and provides an update to the previous assessment within the required timeframes.

Upon completion of the assessment, a treatment plan based on the assessment shall be developed within thirty (30) days of admission that meets the requirements of 7 AAC 50.330. It is the responsibility of the BRS Provider to schedule a meeting with the child/youth's treatment team in order to develop a treatment plan. The treatment plan may be created by qualified staff, but must be reviewed and approved by a Mental Health Professional (see definition under Staff Qualifications page 26). Facility staff must review and renew the treatment plan every three (3) months thereafter and meet the review requirements of 7 AAC 330.

### Level III Treatment Planning

In order to prepare the child/youth for returning home or a continuing relationship with his or her family, the program will integrate and facilitate service for individual child/youth, group, and family counseling and/or therapy when identified as a need in the treatment plan.

BRS HANDBOOK

It is the responsibility of the facility to notify the appropriate participants and facilitate the client's treatment team meetings (to include at a minimum social worker, JPO, parent (if appropriate), legal guardian, child/youth therapist) to develop an individual treatment plan for the child/youth.  The facilities are required to conduct regularly scheduled quarterly individual plan reviews.  Daily progress notes must be kept for each child/youth that describes the child/youth's behavior and response to the intervention in the treatment plan.

### Level III Transitional and Continued Care Components

The treatment program must include a transitional and continued care component. Transitional services include preparing the child/youth for transition from a residential setting to the next placement or release. <u>Continued care includes development and delivery of individualized continued care and post discharge plans designed to meet each resident's medical, psychological, social, behavioral, educational and developmental needs during the ninety (90) days following discharge.</u>

Continued care plans must include all of the following:
1. Supervision of medication by a licensed professional;
2. Referral to appropriate therapeutic services;
3. Placement in an age appropriate living situation;
4. Liaison with the child/youth 's school to continue the appropriate educational program;
5. Coordination with the child/youth's social worker or juvenile probation officer to assure appropriate placement supervision and other community services.

The BRS Provider is encouraged to use the services of the OCS Independent Living Specialist and the Family Preservation grantee if those services exist in the BRS Provider community.

### Distinguishing Between Level III and Level IV

Level III RCC's are long term placements intended to provide a therapeutic environment in which specific behaviors or issues are addressed within a treatment plan.

Level IV RCC's may be short or long term but are intended to serve youth who: exhibit more serious and destructive behaviors, have been identified as having more intensive needs, need a more structured setting with psychiatric services available and/or a more accurate diagnosis.

_____

### Level IV Residential Diagnostic Treatment Centers

Note: Levels of care for youth in Level III, IV and V facilities are determined by structure, staffing patterns, security to maintain the safety of the child and level of services provided. Higher levels of care result in a higher level of structure and restrictiveness.

BRS HANDBOOK

Residential Diagnostic Treatment (RDT) programs provide long-term (up to 18 months, 24 for Sex Offender treatment) Residential Care and treatment for children/youth who have emotional and mental health problems and display inadequate coping skills.  These are therapeutic facilities that serve youth who have been identified as having more intensive needs prior to placement and may be short term if appropriate. In this more structured setting, <u>staff are able to develop a diagnostic picture of a youth who may have multiple diagnoses</u> due to placement in several facilities, or who may have been in such crisis prior to placement that a true diagnostic picture was difficult to ascertain.

RDT's provide a structured, supervised program 24-hours per day, seven (7) days a week by professional staff. Most youth will continue treatment within the program once a clear diagnostic picture is obtained, however some youth may move to a different level of care once the assessment process is completed to ensure they are treated in the most appropriate setting for their needs.

### Level IV Goals
1. To meet the multiple needs of children/youth, provide a safe, nurturing environment that facilitates successful transition to their own home, a stable foster home or a less restrictive residential facility;
2. Decrease the number and length of psychiatric hospitalizations;
3. Complete a detailed diagnosis for those residents who previously have not had a thorough social history, educational assessment, medical, substance abuse, and mental health evaluation;
4. Stabilize the behavior so that an individual treatment plan can be developed which addresses the child/youth's needs and follow-up on this plan once the child/youth leaves the facility;
5. Remove, modify or reduce symptoms of emotional or behavior disturbances;
6. Promote positive personal growth and development, integrating strengths into the transition plan;
7. Address the educational needs of each child/youth.

### Level IV Services
1. Behavioral stabilization and management, accurate diagnosis (i.e. chronic, episodic or manageable);
2. Comprehensive individual treatment planning focused on continued care and the child/youth's long-term needs;
3. Crisis intervention;
4. Maintain and improve the child/youth's educational progress;
5. Develop independent living skills;
6. Participate in developing a plan for subsequent placement.

### Level IV Admissions
The Regional Placement Committee must refer children/youth who are in the custody of DHSS to a Level IV facility and admission must be approved by the appropriate division: OCS and/or DJJ. For other than crisis services, the referring party will be required to submit written information containing: family history, social history, academic history, any previous psychological testing and other pertinent information that is available.

BRS HANDBOOK

The BRS Provider will accept or reject a completed referral within five (5) business days of its receipt and will provide written statements to the referral agent and the Residential Care Program Manager detailing the child/youth's specific behaviors and problems that are not able to be addressed in their program and any other reasons for rejection. A BRS Provider may only refuse a placement if the program cannot appropriately serve the child/youth with reasonable accommodations due to the child/youth's special needs or lack of capacity.

### Level IV Brief Plan of Care

A Brief Plan of Care (BPOC) must be developed within fifteen (15) calendar days of admission of a child/youth. The BPOC:

- Is an assessment of the child's immediate and specific needs,
- Is a description of the services that will be provided,
- Must be conducted by qualified staff supervised by a Mental Health Professional (i.e. BPOC signed by the Mental Health Professional).

### Level IV Assessment and Treatment Planning

Within thirty (30) days of the admission of a custody or non custody child/youth, a Mental Health Professional must conduct a comprehensive assessment of the child/youth's immediate, specific behavioral rehabilitation needs measuring the following areas:

- Behavioral/functional
- Educational
- Medical
- Social/emotional issues

Upon completion of the assessment, a treatment plan based on the assessment shall be developed within thirty (30) days of admission that meets the requirements of 7 AAC 50.330. It is the responsibility of the BRS Provider to schedule a meeting with the child/youth's treatment team in order to develop a treatment plan. The treatment plan may be created by qualified staff, but must be reviewed and approved by a Mental Health Professional (see definition under Staff Qualifications page 26). Facility staff must review and renew the treatment plan every three (3) months thereafter and meet the review requirements of 7 AAC 330.

### Level IV Behavioral Characteristics

Children and youth referred to a Level IV facility will exhibit thought disorders, emotional disorders or behavioral disorders that include oppositional and conduct disorders. A high percentage of these children/youth will have a history of being physically and sexually abused. They may have a history of delinquency and have limited impulse control.

In addition to behaviors listed for Level III facilities on pages 12, examples of the behavior problems include:

- Patterns of excessive aggressive/assaultive behavior towards peers and or adults
- Destruction of property
- Self-abusive behavior
- Cruelty to animals
- Fire setting history

Updated 1/12/09Craig       **EXHIBIT 6, PAGE 16**

- Severe withdrawal and/or depression
- Developmental issues / FASD
- Inappropriate sexual activity

- Other behaviors not capable of being maintained in a lower level treatment setting

### Level IV Treatment Planning

It is the responsibility of the facility to schedule a meeting with the child/youth's treatment team in order to develop a plan of care. Some programs may require a longer placement due to treatment needs of children/youth.

The program should staff at least one full-time Mental Health Professional Clinician (Masters Level MSW, MS, etc.). The program will have available psychiatric services for emergency care, evaluation, medication prescription and monitoring. The program shall provide home-based services when appropriate to each resident's identified family, providing training, support, and resources to enable the family to assume care of the child/youth after discharge. The Department encourages and supports organizations providing home-based services for follow-up outpatient care as a best practice.

### Level IV Transitional and Continued Care Components

The treatment program must include a transitional and continued care component. Transitional services include preparing the child/youth for transition from a residential setting to the next placement or release. Continued care includes development and delivery of individualized continued care and post discharge plans designed to meet each resident's medical, psychological, social, behavioral, educational and developmental needs during the first ninety (90) days following discharge.

Continued care plans must include all of the following:
1. Supervision of medication by a licensed professional;
2. Referral to appropriate therapeutic services;
3. Placement in an age appropriate living situation;
4. Liaison with the child/youth 's school to continue the appropriate educational program;
5. Coordination with the child/youth's social worker or juvenile probation officer to assure appropriate placement supervision and other community services.

The BRS Provider is encouraged to use the services of the OCS Independent Living Specialist and the Family Preservation grantee if those services exist in the BRS Provider community.

### Distinguishing Between Level IV and Level V

Level IV RDT's may be short or long term but are intended to serve youth who: exhibit more serious and destructive behaviors, have been identified as having more intensive needs, need a more structured setting and/or a more accurate diagnosis.

Level V programs provide long term, intensive services to children or youth at the highest level of need in a residential care context. Level V Residential Psychiatric Treatment Center's are for children/youth that exhibit extreme functional impairment and are experiencing a serious emotional disturbance that requires a 24-hour interdisciplinary, psychotherapeutic treatment in a "secure" or "semi-secure" facility. Behaviors include:

BRS HANDBOOK

thought disorders, emotional disorders or behavioral disorders that include patterns of excessive aggressive, destructive or assaultive behavior, as well as excessive withdrawal or depression.

_____

**Level V Residential Psychiatric Treatment Centers**
Level V Residential Psychiatric Treatment Centers are not funded by the RCC grant program.   Please see the Department of Health and Social Services website for more Level V Residential Psychiatric Treatment Center information:

http://www.hss.state.ak.us/

BRS HANDBOOK

# GENERAL PROGRAM REQUIREMENTS

**Acceptance of Referrals**

A residential child care facility must comply with all statutes and regulations that apply to the operation of a residential child care facility.

The BRS Provider must accept children/youth referred by the department for placement when the child/youth referred meets the criteria listed under "Target Population" on Page 6 and on the pages describing the various levels of care. The BRS Provider may also accept non-custody youth upon approval by the OCS Residential Care Program Manager.

Placement of OCS and DJJ custody youth will be highest priority. At no time will a non-custody youth be placed in a BRS bed when custody youth remain on the program's wait list without written permission from the OCS Residential Care Program Manager.

Referrals of non-custody youth can come from biological parents, police department, BRS Provider community, Division of Behavioral Health, out-of-state facilities, etc. The BRS Provider must submit and receive approval from the OCS Residential Care Program Manager using the Authorization for Non-Custody Placement form (see Forms section on the RCC website) before the non-custody youth can be placed in a facility.

Non-custody youth will not be removed prematurely from a BRS Provider in order to make room for a custody youth. Once a custody or non-custody youth enters a BRS Provider, they will be given every opportunity to succeed and finish their treatment plan.

Within five (5) business days of receiving a referral for placement, the BRS Provider will determine whether or not a referral packet is complete and if not, notify the referral agent of the specific omissions. The BRS Provider will accept or reject a completed referral within five (5) business days of its receipt and will provide written statements to the referral agent and the Residential Care Program Manager outlining the specific denial criteria for refusing the referral.

A BRS Provider may only refuse a placement if the program cannot appropriately serve the child/youth with reasonable accommodations due to the child/youth's special needs or lack of capacity.

Residential care is operated on an unconditional care model, and BRS Providers are not to discharge clients or refuse their placement unless the child/youth presents an "imminent risk of harm to themselves or others" for which the BRS Provider is not qualified to respond under the level of care for which the program has entered into an agreement.

A BRS Provider shall limit emergency discharges to situations where the health or safety of a child/youth, other residents or staff would be endangered by continued placement in the facility. Disruptive or runaway behavior does not constitute grounds for rejection or discharge of a child/youth who is otherwise appropriate for the program. Acceptance or

BRS HANDBOOK

rejection of a placement shall not be contingent upon the child/youth's legal status or the child/youth's stated willingness to agree to placement and/or participate in a designated treatment plan.

**Admission Requirements**

All BRS Providers must publish clear admission and exclusion criteria for their programs.  If placement of a child/youth who is referred by the Department is rejected, the administrator of the facility must submit a denial letter to the referral agent and the OCS Residential Care Program Manager detailing the child/youth's specific behaviors and problems that are not able to be addressed in their program and any other reasons for rejection.

BRS Providers with utilization rates of custody and non-custody clients below 80% must submit a report for that month to the Residential Child Care Program Manager *detailing the reasons for low utilization*.  If a BRS Provider refuses to accept referred children/youth that meet the BRS criteria, or repeatedly delay acceptance for unnecessary and unreasonable periods of time, the Department may also perform an on-site review of the agency's program, including policies and practices. This may include developing a plan of correction, mandate additional requirements, followed by reducing or terminating funding to enforce the BRS Provider agreement or taking other actions to ensure proper utilization of BRS beds.

**Required Approval for Admitting a Child/Youth to Residential Child Care**
- Approval to place a custody child/youth in residential child/youth care is required by the DHSS staff responsible for the child/youth in custody (OCS or DJJ).
- For those referrals received on behalf of children/youth not in states' custody, the referring guardian, parent, community facility, out-of-state treatment facility or State agency must submit an authorization for Non-Custody Placement to the OCS Residential Care Program Manager using an approved form provided by the Division before a child/youth can be placed at the facility.
- Written documentation of the approval for a child/youth to be placed in residential child care must be kept in each child/youth's file.

**Admissions Approval for Level II**
- For Level II Emergency Assessment and Stabilization Centers, a child/youth may enter placement on his/her own or may be brought by police, a parent, community BRS Provider or OCS/DJJ worker.
- When a child/youth is self-referred for emergency placement in a Level II facility, the BRS Provider will notify OCS, DJJ or the caregiver as appropriate of the placement.
- For children/youth in the custody of DHSS, placement in a Level II facility must be approved by the child/youth's OCS or DJJ worker within five (5) days of placement.
- For those children/youth who are not in State's custody, the BRS Provider must submit an Authorization for Non-Custody Placement to the Residential Care Program Manager within 24-hours of the child/youth being placed at the facility.

BRS HANDBOOK

**Admissions Approval for Levels III and IV**
- All children/youth in the custody of the Department of Health and Social Services placed in Levels III and IV Residential Care <u>must be referred by the OCS Regional Placement Committee (RPC).</u>
- Before a child/youth in custody may be placed in residential child care, the Regional Placement Committee, <u>chaired by the OCS psychiatric nurse</u>, must review the need for the child/youth's placement and give written approval for Residential Care.
- Approval for non-custody placement in residential child care must have pre-approval from the <u>Residential Care Program Manager for Levels</u> II, III and IV.

**Approval Matrix for Additional Staff, Held Beds & Non-Custody Child/Youth**

| Request | Additional staff or funding for additional staff needed to maintain youth in care | Held Bed Prior to Placement<br>Note: Facility must be at 80% capacity or higher to qualify for held bed days. | Placement of Non-Custody Children in Level II, III or IV |
|---|---|---|---|
| Approval | 0-7 days - SW IV or JPO III<br><br>Over 7 days - RCC Program Manager | 0-3 days: SW IV or JPO III in Level II<br><br>0-7 days: CSM or JPO IV in Level II, III or IV<br><br>0-7 or over 7 days RCC Program Manager | SW, PO, BRS Provider, parent or legal guardian may make request<br><br>0-7 days: CSM or JPO IV in Level II<br><br>Approval by RCC Program Manager |
| Services | A supplemental rate to be paid in addition to daily rate to meet staffing rations, special needs or ensure safety | Ability to "hold" a bed while arranging for the child/youth's placement and payment eligibility | Placement of a non state's custody child/youth and approval for payment |
| Timeframe | Only once per placement for no more than 7 days<br><br>RCC Program Manager must approve excess of 7 days | Fifteen (15) days total during the placement in the facility. Under unique and unusual circumstances, additional funding beyond 15 days may be requested of the RCC Program Manager. | Level II: prior to placement or if after hours or weekend accept youth and submit authorization form within 48 hours to RCC Program Manager<br><br>Level III and IV: prior to placement |
| Documentation | Submit treatment plan approved by supervising SW or JPO with justification must accompany attendance sheet for period in question | Submit treatment plan approved by supervising SW or JPO with justification must accompany attendance sheet for period in question | Non Custody Placement form must be signed by parent or legal guardian<br><br>Must apply for Medicaid immediately upon placement |

BRS HANDBOOK

| | | | |
|---|---|---|---|
| **Forms** | **Additional Staff Request Form** must accompany attendance sheet for period in question | **Hold Bed Request Form** must accompany attendance sheet for period in question. **Note: Facility must be at 80% capacity or higher to qualify for held bed days.** | **Authorization for Non Custody Placement Form** must accompany attendance sheet for period in question |

**Basic Care Requirements**

All levels of residential child care programs must employ or otherwise provide for the services of a Mental Health Professional, social worker or psychologist for the purpose of providing consultation to staff, training, client assessment and individual treatment planning. All other staff must meet the requirements as outlined in Staff Qualifications starting on page 26.

Service activities and supervision for each child/youth are based on an assessment and individual treatment plan of care that is monitored for beneficial behavioral changes in the child/youth's life and effectiveness in reducing the need for supervision, rehabilitation services, and residential care.

All BRS providers of 24-hour residential child/youth care and behavioral rehabilitation services must deliver services at the basic care level. Basic care for children or youth is planned, structured supervision by professionally trained staff for 24-hour services. Behavioral modification approaches such as token economy systems, positive peer culture or family reengineering are provided by professional staff able to include working with either the biological, foster or adoptive family to aid in the transfer of the child/youth to their home or an alternate permanent plan.

Basic services for children/youth in residential child care treatment contain elements common to all levels of residential care regardless of size, location, program category, or treatment modality. These elements include:

1. Provide medical, psychiatric, dental and psychological evaluation and therapy as needed;
2. Assess each child/youth placed in care and ensure a health examination has been performed within a year before placement or arrange for completion of a health exam within 30 days of placement;
3. Provide continuing medical and dental services according to the EPSDT schedule set forth in 7 AAC 43.452 after 30 days in placement;
4. Obtain evidence of immunization records no later than 30 days after a child/youth is placed in care;
5. Assist in preservation of biological or foster families who are caring for children/youth with severe emotional or behavioral problems and promote timely reunification when appropriate and when children/youth are removed from the home or other types of placement;
6. Maintain children/youth as close to their family, community and region as possible when planning subsequent care;
7. Provide healthy food, including healthy meal preparation and nutritional oversight;
8. Provide clothing as needed during the term of stay in care;

BRS HANDBOOK

9.  Provide personal incidentals including resident allowances and school supplies;
10. Provide daily supervision at a minimum as prescribed in 7 AAC 50.410;
11. Provide vocational, educational, and employment services either in the community or by service agreements – providers are strongly encouraged to work with their local community behavioral health centers to obtain assessments and continued care services;
12. Provide liability insurance with respect to the child/youth;
13. Provide administrative oversight of the program of care and services for residents, as well as for management;
14. Provide appropriate personnel, fiscal, and staff supervision;
15. Provide intake, individual treatment planning, case review, resident supervision, counseling, and discharge planning;
16. Develop and maintain linkages with providers of ancillary services such as medical care, education, and community mental health services;
17. Ensure compliance with individual treatment plan reporting and monitoring requirements;
18. Provide group recreation and informal educational activities and the equipment and personnel to conduct such activities;
19. Provide tutoring and/or supervised study and learning for school age residents;
20. Provide youth ages 14 and older and who are in their care for longer than 3 months in completion of the Ansell Casey Skills Assessment.  Assessment results should be used in case planning to identify services to improve life skills.

**Required Staff to Child/Youth Ratios**

| Level | Level of Care | Staff: Child/youth Ratio |
|---|---|---|
| I | Day Treatment | 1:6 |
| II | Emergency Stabilization and Assessment Shelter | 1:5 |
| | Facility with youth under 30 months (Non-BRS) | 1:3 |
| III | Residential Child/youth  Care Treatment | 1:5 |
| IV | Residential Diagnostic Treatment | 1:3 |
| V | Residential Psychiatric Treatment Centers | 1:3 |
| | Awake Night Staff | 1:12 |

**Incident Reports**

All BRS Providers at all levels must document behavioral incidents of child/youth residents. The child/youth's file must contain incident reports that impact any level of treatment (i.e. a child/youth's level of freedom, change in treatment plan, etc.)

*Death or a suicide attempt of a child/youth while in care must be reported immediately (within a minimum of 24 hours) to the Residential Care Program Manager and appropriate members of the child/youth's treatment team which include the parent, the OCS Social Worker/DJJ Probation Officer (or both if appropriate), Licensing and Behavioral Health.  Other members of the child/youth's treatment team may be included as appropriate.*

BRS HANDBOOK

The following incidents must be reported before and within 72 hours of the incident to the Residential Care Program Manager and appropriate members of the child/youth's treatment team that include the parent, the OCS Social Worker/DJJ Probation Officer (or both if appropriate), Licensing and Behavioral Health:

1. Police involvement/detention at a juvenile justice or adult facility
2. Serious injury requiring medical attention for child/youth while in care
3. Allegations/incident of physical or sexual abuse that may/may not require medical attention

Providers may use the Behavioral Health Incident Report (*this form will meet requirements of both OCS and BH*), the Public Health Licensing Section Incident Report or a form approved by the Division to report information.

Other incidents that must be submitted quarterly with the quarterly report are those in which a child/youth's safety is at risk. Following is a listing of issues that would result in an Incident Report:

1. Injury to staff
2. Contagious Disease
3. Medication Problem
4. Ingestion of drug or harmful substance
5. Theft
6. Excessive Absenteeism
7. Alleged or suspected violation of youth's rights

**Suicide Prevention**
Children/youth in need may sometimes pose a heightened risk of self-harm. The BRS Provider must maintain a suicide prevention program that provides for the identification and response to individuals at risk of self-harm and suicide.  The program must include: staff training, identification/referral, assessment, communication, facility safety check, levels of observation, intervention, reporting and follow-up mortality review.

The Department provides training and guidance regarding Suicide Prevention through the Department's RCC Training Grant.  BRS Providers may use the Gateway Model or another equivalent model that must be approved by the OCS Residential Care Program Manager.

**Discharge Planning**
Discharge planning for a child/youth in care starts **at the time of placement** and should focus on a community-based discharge aimed at family reunification or alternative long-term placement.

Resources may be available in a community that will assist with family reunification, transitioning youth to another facility or to independent living. BRS Providers are strongly urged to be aware of the resources available in their community and to utilize those services that are available for transitioning activities.

BRS HANDBOOK

**Discharge**

BRS Providers may not discharge children/youth from their program without "successfully completing treatment" as agreed upon by the Social Worker or the Department will be considered noncompliant with the grant agreement and BRS Provider agreement.  Under 7AAC78.090 and 78.100, this is a mandatory consideration and may jeopardize future funding.

When a child/youth presents an "imminent risk of harm to themselves or others" for which the BRS Provider is unqualified to respond under the level of care for which the program has entered into an agreement, the BRS Providers must contact the OCS Residential Child Care Program Manager within 24 hours upon discharge of the child/youth.

A BRS Provider shall limit emergency discharges to situations where the health or safety of a child/youth, other residents or staff would be endangered by continued placement in the facility.  Disruptive or runaway behavior does not constitute grounds for rejection or discharge of a child/youth that is otherwise appropriate for the program.  Acceptance or rejection of a placement shall not be contingent upon the child/youth's legal status or the child/youth's stated willingness to agree to placement and/or participate in a designated plan of care.

BRS HANDBOOK

# ADMINISTRATION & PERSONNEL

**Governance**
If a facility is not governed by a board or other body, policy for the operation and management of the facility shall be determined by the operator of the facility or by the administrator if the authority to determine policy is delegated to the administrator by the operator.

**Responsibilities of a Governing Body of Residential Child Care Facilities**
Governing entities of a Residential Child Care Facility must comply with 7 AAC 50.100. If a residential child care facility is governed by a board or other body, the board or other body shall comply with 7AAC 50.100. (Note Deletions) Implementation of the policies of the facility is the responsibility of the administrator.

**All Staff Qualifications**
All staff having contact with children or youth in residential care must meet all statutory, regulatory and licensing requirements for staff.  The general staff qualifications for residential child/youth care BRS Providers are described in:
- 7 AAC 50.210, Qualifications and Responsibilities of Persons Having Regular Contact with Children in a Facility, and
- 7 AAC 50.220-250, Caregiver Age Requirements and Additional Staff Qualifications in Residential Child care Facilities and Additional Qualifications For Adolescent Caregivers
- AS 47.05.300 – 47.05/390 and 7 AAC 10.900 – 7 AAC 10.990 (Barrier Crimes, Criminal History, Checks, and Centralized Registry)

Note: Child care providers (staff) who do not meet the minimum childcare qualification may be hired with the requirement that these staff will, within six (6) months of hire receive OCS approved core training or certification in residential childcare. OCS will contract to provide core training and/or certification in residential childcare training to residential childcare staff at no cost to the employee.

**Mental Health Professional Definition**
The term Mental Health Professional utilized in this document is intended to comply with the definition under AS 47.30.915 (11) but exceptions may be approved on a case-by-case basis in circumstances in which unique or temporary conditions may apply. Exceptions may be requested to the Residential Care Program Manager and must be approved within 15 days of the occurrence of unique or temporary conditions.

Under AS 47.30.915 (11), a "mental health professional" means a psychiatrist or physician who is licensed by the State Medical Board to practice in this state or is employed by the federal government; a clinical psychologist licensed by the state Board of Psychologist and Psychological Associate Examiners; a psychological associate trained in clinical psychology and licensed by the Board of Psychologist and Psychological Associate Examiners; a registered nurse with a master's degree in psychiatric nursing, licensed by the State Board of Nursing; a marital and family therapist licensed by the Board of Marital and Family Therapy; a professional counselor licensed

BRS HANDBOOK

by the Board of Professional Counselors; a clinical social worker licensed by the Board
of Social Work Examiners; and a person who
1. has a master's degree in the field of mental health;
2. has at least 12 months of post-masters working experience in the field of mental
illness; and
3. is working under the supervision of a type of licensee listed in this paragraph;

7 AAC 50.990 (34) "mental health professional" has the meaning given in AS 47.30.915.

**CPR Requirements**
A residential child care facility shall have on duty at all times **at least one caregiver with
a valid first aid and cardiopulmonary resuscitation (CPR) certification**, unless the
courses for these certifications are not regularly available in the community in which the
facility is located.  If certification courses are not regularly available, the facility shall
enroll one or more employees in the first available first aid and CPR certification course
offered in the community.  A certified emergency medical or trauma technician or duty
satisfies the requirements of this subsection.  Caregivers of young child/youth shall enroll
in infant and pediatric first aid and CPR in communities where infant and child first aid
and CPR are regularly available.

**Staff Orientation Requirements**
A facility with one or more employees or contractors shall provide a minimum eight-hour
orientation that must begin at the time of employment and be completed within eight
weeks and include:
1. The facility's policies and procedures, including responsibilities of the caregiver;
2. Satisfying special needs of specific children/youth, where appropriate;
3. Emergency procedures and health and safety measures

**Staff Training Requirements**
A residential child care facility shall ensure that all employees receive a minimum of
fifteen (15) hours of training a year.  A caregiver may count orientation and pre-service
training hours required that exceed six hours toward the fifteen (15) hour requirement.
Training hours required in this section are clock hours and may include any training that
is relevant to the caregiver's primary job responsibilities.  A facility may count informal
training that increases caregiver skills.  Documentation must include the date, subject,
method of training, and the name of the person who conducted the training.

Facilities are encouraged to include Core Training Components in meeting the fifteen
(15) hours training requirement.  Core Training Components are as follows:
- Professional role of child care workers
- Child development
- Relationship building
- Communication Skills
- Teaching Discipline
- Clinical Diagnoses
- De-escalation and crisis intervention including approved passive restraint techniques
- Clinical Issues such as FASC, trauma, substance abuse, etc

BRS HANDBOOK

A residential child/youth care facility where passive physical restraint might be used shall ensure that a caregiver is trained in passive restraining techniques before being allowed to passively restrain any child/youth in care.

***The Office of Children's Services (OCS) recognizes that programs have unique needs and challenges that preclude one-size fits all approach to care training. Programs may request approval to use alternative methods for achieving care training for entry-level child/youth care workers. OCS will contract to provide core training to BRS Providers at no cost to the employee.***

BRS HANDBOOK

# OVERSIGHT, FINANCIAL REIMBURSEMENT & MEDICAID PAYMENTS

There are multiple entities involved with management and oversight of residential care. Following is an outline of the responsible parties regarding various issues related to the program oversight of residential care facilities:

| Division | Issues of Concern | Contact | Authority |
|---|---|---|---|
| DHSS, Division of Public Health | Licensing of Facility | Licensing Unit | Authorize facility licensure to operate |
| DHSS, Office of Children's Services | Program Oversight, budget management, | RCC Program Manager | Authorize grant and grant budget to grantee<br>Authorize Core Grant and BRS payment to grantee<br>Authorize child placement<br>Authorize ISA payment<br>Overall program management |
| DHSS, Office of Children's Services | BRS Payment processing | RCC Accounting Technician | Receives and processes monthly BRS payment |
| DOA, Grants and Contracts | Processes grant documents and core payment | RCC Grant's Administrator | Receives and processes grant documents and quarterly core payment |

**Medicaid Enrollment for Residential Care BRS Providers**
All OCS grantees that provide residential child care and behavioral rehabilitation services are enrolled as a Medicaid BRS Provider under the Behavioral Rehabilitation Services category. The Medicaid Enrollment Form is completed and signed by an authorized grantee representative and returned to the OCS Medicaid Administrative Assistant MMA along with the signed Grant Award.

OCS bills Medicaid on behalf of grantees and all grant payments will come from OCS. The Department is researching and considering the possibility of BRS providers being required to bill Medicaid directly at a later date but this plan will be implemented after consultation, training and collaboration with BRS providers.

**Approved Medicaid Services for BRS Grantees**
If your agency has a grant from the Division of Behavioral Health, the agency may bill for clinical mental health services provided while participating in the BRS system. The Clinical services under Medicaid can be billed along with BRS (see next page).

BRS HANDBOOK

| BRS Providers NON Billable Activities | BRS Providers Medicaid Billable Activities |
|---|---|
| Medication Administration | Crisis Intervention |
| Functional Assessment | Family Psychotherapy |
| Case Management | Group Psychotherapy |
| Family Skill Development | Individual Psychotherapy |
| Individual Skill Development | Pharmacologic Management |
| Group Skill Development | |
| Day Treatment | |
| Recipient Support | |

**Other Medicaid Services Billable under this Residential Care System**
The only Medicaid services that may be billed concurrently with BRS are Clinical
Services as noted above.  Mental health rehabilitation services (e.g., case management,
family/individual/group skills development, day treatment or recipient support services)
are included under the service components for Behavioral Rehabilitation Services and
may not be billed at the same time as BRS.

A BRS Provider may bill Medicaid for clinical services on the same day as BRS when
these services are documented in the child/youth's individual treatment plan of care as
regarded as necessary and the BRS Provider follows all Medicaid requirements including
eligibility and limits for service.  Those BRS Providers that will directly provide
Medicaid clinical services to children/youth must also have a Medicaid BRS Provider
number, or apply to obtain one, and seek Medicaid reimbursement for clinical services.
OCS will not bill Medicaid on behalf of BRS Providers for clinical services that are
provided.  The Medicaid reimbursements for clinical Services a BRS Provider receives in
addition to BRS grant funds must be treated as **grant income**, and be used to enhance
services, according to the provisions of 7 AAC 78.210.

**Individual Service Agreement (ISA)**
ISA's are a funding mechanism used to support youth in in-state RCC facilities.  ISA
funds are negotiated annually and considered funds of last resort to be used when other
funding sources are not available or allowable.  BRS Providers may solicit additional ISA
funds for youth who require enhanced services in order to maintain placement in an in-
state BRS Provider facility. An ISA Request for Funding may be found on the OCS RCC
website:
                    http://www.hss.state.ak.us/ocs/ResidentialCare/

**Payment Documentation Requirements**
BRS Providers who receive payment from OCS for providing these services must
document that they were provided each day to each child/youth.  Documentation is
required to be available upon request as follows:

**1. Risk Screen**
**Completion Time Frame: Immediate at Intake**
A risk screen should be used at the time of intake to determine the child/youth's level of
risk and should be reviewed by a Mental Health Professional.  If there are no immediate

BRS HANDBOOK

needs identified from the Risk Screen, a child/youth in placement in a Level II facility for less than 5 (five) days who receives this screen, does not need further assessment, a brief plan of care must be developed within 5 (five) calendar days of admission.

**2. Brief Plan of Care/Initial Assessment**
**Completion Timeframe: Level II: 5 days, Level III & IV: 15 days**
As specified in 7 AAC 50.330 and 7 AAC 50.610, residential child/youth care facilities must observe and assess each child/youth who is admitted for care and develop an initial Brief Plan of Care signed by a Mental Health Professional within 5 (five) days for Level II Emergency Stabilization and Assessment shelters and within 15 (fifteen) days after a child/youth's admission in Level III and IV facilities.  BRS Providers may use assessments completed within six months prior to admission to satisfy this requirement provided the program Mental Health Professional reviews and provides an update to the previous assessment within the required timeframes.

**3. Child/Youth Individualized Assessment and Treatment Plan**
**Completion Time frame: All Levels: Within 30 days**
The formal assessment must be conducted by a Mental Health Professional and the individual treatment plan must include: identification of child/youth's immediate and specific needs beyond fundamental care assessment of child/youth and family's strengths and weaknesses, and clearly stated goals, specific treatment objectives with services and timeframes to meet these goals. The treatment plan will include continued care planning and discharge planning for family reunification or long-term placement. The Treatment Plan may be developed by qualified staff but must be approved by a Mental Health Professional.

**4. Child/Youth - Daily Progress Notes**
**Completion Time frame: Daily**
That confirms the child/youth was present and participated in the day's Residential care service activities.  Progress notes must document the services the child/youth received in addition to participation in the milieu (e.g.: individual, group or family counseling, clinical services, discharge planning, etc.).  Notes must reflect each child/youth's progress toward specific behavioral goals.

BRS HANDBOOK

# PROGRAM CORE AND BRS FUNDING

To ensure ongoing capacity in a facility, BRS Providers are eligible for Core Capacity funding without regard to occupancy in a bed. Core funds use state general funds allocated on an annual basis through the legislative process, not Medicaid funds.

Core Capacity is funded through a grant award (7 AAC 789). This grant ensures the BRS Provider will be reimbursed for the amount expended in a fiscal year. No funding will be reimbursed over and above the total dollar amount identified on the agency's Cumulative Fiscal Report or above their approved grant award.

Core funding is $40 per bed (x 365 days for a full year grant award) and is paid regardless of whether beds are utilized. Examples of payment structures are as follows:

| Condition | Payment |
|---|---|
| Bed is not utilized by child/youth /youth | Core $40 per day |
| Bed is utilized by child/youth /youth | Core $40 per day + BRS Rate |
| Bed has an approved "hold" for allowable absence | Core $40 per day + BRS Rate |
| Bed has an approved "hold" in anticipation of placement of child/youth /youth | Core $40 per day + 50% of BRS Rate if at 80% utilization |

Funds awarded are based upon the level of BRS provided. The base rates are:

| Level of Care | Core Capacity | BRS Rate | Combined Core and BRS for Custody or Non Custody Child/youth |
|---|---|---|---|
| Level II Emergency Stabilization & Assessment | $40 | $155 | $195 |
| Level III Residential Treatment | $40 | $202 | $242 |
| Level IV | $40 | $275 | $315 |

**Geographic Differential Rate**
Geographic Differential Rates attempt to compensate rural BRS Providers for the difference in the cost of living in rural Alaska. Geographical differential rates are published with the Request for Proposals on an annual basis.

**Examples of RCC Funding Calculations**
Each BRS Provider has an approved number of beds agreed upon in the grant agreement.

Core Funding: Each BRS Provider with a Residential Child Care Grant receives 95% of their Core Capacity funding at the beginning of the grant fiscal year in the amount of $40 per bed per day for 365 days in a year. The BRS Provider must submit quarterly reports of expenditures to date to provide documentation of expenditures. The remaining 5% Core funding is awarded after reviewing and approving the year-end reports that indicate that 100% funding is appropriate based on expenditures.

BRS HANDBOOK

Quarterly Reports of Core grant funding expenditures must be submitted to the Grant Administrator via Egrants.

Note: The Department will only pay actual expenditures; funds unexpended in any given fiscal year will be returned to the Department.

The BRS Provider will receive monthly payment based upon their utilization in the previous month. BRS Monthly Reports must be submitted to the Residential Care Program Manager and the BRS Accounting Technician via email. Reports include BTKH, 5 and Under, and community bed reporting mechanisms.

Any additional services provided to a client during the month must be pre-approved and the agency is responsible for submitting the executed approval form with their attendance sheet to the Department for payment.

***See Program Reporting (next page) for more information related to submission of financial information for reimbursement.***

BRS HANDBOOK

# PROGRAM REPORTING REQUIREMENTS

BRS Providers must submit monthly and quarterly reports that provide information about services rendered and request for payment. These reports must be submitted on forms provided by the Department.

**Daily Utilization Report (Submit On-Line)**
All facilities are required to report changes to their facility population to the RCC website via the Internet in response to the RCC email send daily to facility staff. Information is to be input on the RCC Website at:

http://www.hss.state.ak.us/ocs/ResidentialCare/

**Monthly Reports (Submit: RC Program Manager and BRS Accounting Technician)**
**Monthly Attendance Reports**
Programs are required to turn in Attendance Reports within five (5) days of the close of the previous month, indicating the child/youth was present and receiving Residential Care services and must be submitted to OCS. The attendance sheets must clearly indicate the total number of children/youth in attendance each day and the child/youth's status using OCS attendance codes.

**Attendance Codes for Payment**

| Code | Situation | Conditions |
|------|-----------|------------|
| [P] | **Present** | at facility and receiving BRS |
| [R] | **Runaway** | Payable up to 5 days per incident |
| [V] | **Home Visit** | Payable up to 15 days per placement – additional days require RCC Program Manager approval **before** additional home visit days will be paid |
| [F] | **Youth Facility** | Payable up to 15 days per placement – additional days require RCC Program Manager approval **before** additional youth facility placement days will be paid |
| [O] | **Other** | Payable up to 15 days per episode of "temporary placement out of RCC for alternative treatment" - in order to be reimbursed for these days, documentation of this event and the effect on the child/youth's course of treatment is required and must be approved by the RCC Program Manager |
| [D] | **Discharged** | No payment for this day |
| [M] | **Medical Hospitalization** | Payable up to 15 days per placement for acute psychiatric or other hospital care – additional days require RCC Program Manager approval **before** additional days will be paid |
| [H] | **Hold** | Payable up to 7 days when a child/youth has been accepted for placement in the program and has an anticipated placement date – payment at 50% of standard BRS Rate |

In order for a BRS Provider to receive payment for the full daily BRS rate, the child/youth must be in one of the preceding "attendance categories" with the exception of "Hold days" [H], which will be paid at 50% of the BRS rate and "Discharge days" [D]

BRS HANDBOOK

which are not reimbursable. All approved authorizations must be submitted with attendance reports to ensure timely payment.

Extensions may be approved by the Residential Care Program Manager on a case-by-case basis and needs to be submitted in writing (e-mail and/or fax) explaining the need for the extension request and how it relates to the individual's treatment plan and the discharge plan. Extensions must be approved **<u>before</u>** additional payment will be paid.

If multiple attendance categories "run together" on an attendance report and exceed 15 days, written approval must be obtained from the Residential Care Program Manager before the absence occurs or immediately upon discovery. When there is a need to evaluate a specific child/youth's combination of attendance and absences due to repeated patterns, the BRS Provider should record the attendance and absences on the attendance sheet and provide the child/youth's treatment plan. The Residential Care Program Manager will review and make final approval of the number of days that will be paid.

## Quarterly Reports
BRS Providers are required to turn in the following reports quarterly on forms provided by the department for submission of this information:
1. Program Narrative reporting program general status
2. Fiscal Report reporting use of Core Funds
3. Data Reports
   a. Total number of children/youth referred, accepted and denied admission for quarter
   b. If referral refused, DSM IV, GAF, IQ clinical rational for denial)
   c. Total discharged after completing treatment
   d. Total discharged without completing treatment
   e. Number of ISA requests, ISA requests approved and denied and number of youth maintaining placement due to ISA support
4. Individual Child/Youth Reports for any Child/Youth in Care During the Quarter
   a. Length of stay in treatment
   b. Level II – Number of FASD Clients
   c. Level III-IV
   d. Diagnosis at client discharge
   e. Increase in GAF Scores
   f. Significant progress toward individual treatment goals
   g. Average length of time from referral to admission into program
5. Staff Reporting Criteria
   a. Staff training provided since last report
   b. Report of any non compliance with staff training requirements
6. Program Evaluation Results
The Department encourages and intends to require in the future that BRS Providers assess their services for effectiveness, efficiency and customer satisfaction, and must have a plan for utilizing that information to improve their service outcomes as documented in the agency's policy and procedures. Outcome assessment before, during treatment, at discharge and at regularly scheduled points following discharge to

BRS HANDBOOK

determine the efficacy of the treatment model used by the program is strongly encouraged.

The BRS Provider must report on forms provided by the Department:
    a.  Student Satisfaction
    b.  Child/youth and parent report satisfaction
- With access to treatment planning and assistance
- With communication with treatment and case management staff
- With behavioral rehabilitation services

    c.  OCS/DJJ worker report
- Referral and application process helpful
- Access to treatment planning and assistance
- Satisfactory communication with treatment and case management staff
- Satisfaction with behavioral rehabilitation services

    d.  Facility accepts children/youth as described in agency proposal

**Other Reports**

Residential child care providers are also required to provide cost reports and random moment studies based on utilization of Title IV-E funding. The Title IV-E program reimburses the State of Alaska for expenditures associated with client specific maintenance (room/board/supervision) and related administrative expenditures of OCS clients in residential care.  These expenditures are calculated from the facilities attendance records, the client's Title IV-E eligibility status, and facility ratios resulting from the annual random moment time study.  Clients served by the DJJ and non-custody clients are not eligible for the Title IV-E program.  Clients served by both DJJ and OCS, may qualify for Title IV-E if OCS has placement authority.

Federal Title IV-E and cost allocation rules require the RCC facility to provide annual operating expenditures and the results of an annual random moment time study (RMTS) on record.  This information provides the basis or facility ratios for the quarterly Title IV-E claim.

**Guidelines for Supplemental Requests**

In some cases, children/youth placed in residential child care facilities require additional supervision or beds held for them for additional days to complete a medical or detention placement.  All expenditures are based on documented needs of the child/youth and authorization must be requested prior to placement.

See the Approval for Additional Staff, Held Beds & Non-Custody Children on page 19 to ensure appropriate approvals are in place with regard to billing for services.

**EXHIBIT 6, PAGE 36**

BRS HANDBOOK

# ON-SITE PROGRAM REVIEW & MEDICAID AUDIT

The OCS will conduct on-site reviews of BRS programs to ensure the statewide RCC system of care is meeting federal funding requirements. Statewide or regional staff from OCS, DJJ, Public Health, Behavioral Health and an internal auditor may assist the OCS Residential Care Program Manager in conducting these reviews. Results obtained from these reviews will be used to support and provide technical assistance to BRS Providers, help BRS Providers with program development as performance indicators for future funding.

On-site reviews will occur at any time a report of concern is received regarding the BRS Provider, at any time the Residential Care Program Manager deems appropriate or every other fiscal year.

BRS Providers may also be selected by DHSS to participate in random Medicaid Audits. The following grid outlines the items that will be reviewed and used as standards for audits and site reviews.

| | Standard |
|---|---|
| 1 | Formal authorization for child/youth's placement in a residential care facility is documented by either:<br>Level II: signed approval by child/youth's SW or JPO on admitting documents.<br>Level III & IV: signed approval from RPC or RCC Program Coordinator for non custody placement |
| 2. | An initial assessment (Brief Plan of Care or BPOC) has been completed that contains the following:<br>Findings of evaluation of the child/youth<br>Identification of the child/youth's immediate and specific needs<br>Demonstration that the child/youth's needs meet the Medical Necessity Criteria<br>Signed by a Mental Health Professional<br>Level II: Assessment can be completed up to 6 months prior to intake but must be completed within five (5) days of admission and signed by a Mental Health Professional<br>Level III & IV: Assessment can be completed up to six (6) months prior to intake but must be completed within fifteen (15) days of admission and signed by a Mental Health Professional |
| 3 | A treatment plan reflecting the findings of the initial assessment conducted by a Mental Health Professional that complies with the following:<br>Level II: the assessment must be completed within 15 days of admission, a treatment plan developed with a treatment team within 30 days of admission and reviewed every fifteen (15) days thereafter<br>Level III & IV: the assessment and treatment plan must be completed within thirty (30) days of admission and reviewed every three (3) months thereafter<br>Treatment plans must be signed by a Mental Health Professional<br>Plans need to describe the interventions that will help the client to obtain their goals, not simply a list of services that will be provided to that client |

Case 4:07-cv-00030-RRB    Document 140-7    Filed 12/04/2009    Page 38 of 39

Case: 09-80074    07/02/2009    Page: 38 of 39    DktEntry: 6980115

BRS HANDBOOK

|   | |
|---|---|
|   | Plans need to specifically address the child/youth's discharge plan such as moving to a less restrictive setting or back to a home setting. Also, anticipated discharge updates in the 3 month Treatment Plan Updates should give an accurate update as to how child and family (if involved) is progressing toward discharge.<br>The plan's goals need to relate closely to diagnosis.<br>The goals, objectives and interventions should vary across differing diagnosis and clearly stated individual goals, specific treatment objectives, approaches or activities planned, time frames to meet goals/objectives, task assignments to meet the needs of child/youth and child/youth's family. |
| 4 | The facility keeps a Daily Attendance Record which documents one of the following:<br>Child/youth was present and participating in RCC services OR<br>Child/youth was in another status (bed being held, run, home visit, etc) |
| 5 | Daily individual progress notes which must:<br>Be completed timely<br>Be completed for every shift on each day the service is provided<br>Be signed by the individual provider who worked with the child/youth<br>Describe the service provided by the date the service occurred, the duration of the intervention<br>Describe the recipients progress toward identified treatment goals. |
| 6 | Treatment Progress is documented in a Quarterly Progress Review as evidenced by:<br>Evaluation of progress toward meeting identified specific needs and goals<br>Identification of any new needs or goals including strategies to meet goals<br>Update of child/youth 's estimated length of stay<br>Update on discharge planning and needed resources<br>Reasons for retaining in program if child/youth is showing limited progress toward meeting goals and objectives<br>Signed by treatment team members including the child/youth and parent/guardian (or proof it was sent) |
| 7 | File document Discharge Plan with measurable outcomes<br>Plan developed/outlined at intake<br>Planning incorporates change/progress in child/youth 's treatment<br>Planning includes family<br>Planning includes treatment team meetings with child/youth 's workers<br>Plan includes detailed, specific follow up plan, in conjunction with community agencies when child/youth is discharged from the facility |

—

BRS HANDBOOK

# Appendix I Relevant Statute and Regulation for BRS Providers

Reinstate all links
Relevant Regulations for BRS Providers
7 AAC 43.470. Children's mental health services
7 AAC 43.471. Severely emotionally disturbed children
7 AAC 43.728. Clinical records, treatment plans, and assessments

Chapter 50 Community Care Licensing
Article 1 Licensing Process
Article 2 Administration
Article 3 Personnel
Article 4 Admission and Discharge
Article 5 Care and Services
Article 6 Environment
Article 7 Specializations
Article 8 Maternity Homes

Chapter 53 Social Services
Article 1 Child Foster Care Payments
Article 2 Subsidized Adoption and Subsidized Guardianship Payments
Article 3 Children in Custody or Under Supervision; Needs and Income
Article 5 Residential Child Care Facility Grants

Relevant Statutes for BRS Providers
Chapter 47.32. CENTRALIZED LICENSING AND RELATED ADMINISTRATIVE PROCEDURES

Chapter 47.40. PURCHASE OF SERVICES
See AS 47.40.011-091

Sec. 47.05.010. Duties of department.  (DHSS)
Sec. 47.05.020. Regulations concerning records; disclosure of information.
Sec. 47.05.030. Misuse of public assistance lists and records
Sec. 47.05.040. Consent to conditions of federal programs.
Sec. 47.10.011. Children in need of aid.
Sec. 47.30.915. Definitions.