Kenneth Covell
LAW OFFICE OF KENNETH COVELL
712 Eighth Avenue
Fairbanks, AK  99701
Phone: (907) 452-4377
Fax:     (907) 451-7802
E-mail:  kcovell@gci.net

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT FAIRBANKS

| | |
|---|---|
| ROBERT PROBERT; LORETTA E. PROBERT; GENE GRISSOM; SANDRA GRISSOM; JOHN GRIMES; DONNA GRIMES; KENNETH MCDANIELS; LEONA MCDANIELS; ERIC CLONINGER; DEBRA CLONINGER; and LORETTA REES, <br><br>Plaintiffs, <br><br>vs. <br><br>FAMILY CENTERED SERVICES of ALASKA, INC.; JOHN W. REGITANO; KATHY CANNONE; SUSZAN DALE; LONNIE HOVDE; DEBORAH L. COXON, and ADDITIONAL DOES I to X, Managerial Employers, Jointly Liable, <br><br>Defendants. | Case No. 4:07-CV-000030 RRB |

**REPLY TO OPPOSITION TO
"62.1" MOTION FOR INDICATIVE RULING**

FCSA opposes Proberts' Motion for Indicative Ruling at Doc. 140, variously

stating that the District Court has no jurisdiction, the District Court usurps the

Merit Panel's authority, hearing the motion would promote form shopping, granting the motion would be unfair, and it may mess-up scheduling.

## JURISDICTION

This Court has jurisdiction and has never lost jurisdiction. This Court had the opportunity to have the parties continue to litigate this case pending appeal, or stay it pending appeal. This Court has authority to lift the stay. Only if there is a final judgment on the merits and the appeal underway, would this Court then not have jurisdiction. Even if that were the case, then this Court, pursuant to the new Rule 62.1, could make decisions pursuant to the rule, as discussed in Plaintiff Proberts' initial motion.

FCSA says that FRCP 62.1 only applies to Rule 60(b) motions to vacate a judgment. The Notes of Advisory Committee on Rules say:

> This new rule adopts for <u>any motion</u> that the district court cannot grant because of a pending appeal the practice that most courts follow when a party makes a Rule 60(b) motion to vacate a judgment… (Emphasis added).

Clearly, the rule contemplates "any motion" can be filed under Rule 62.1, not just 60(b) motions.

The first sentence of the advisory committee notes of Appellate Rule 12.1

also uses the "any motion" language as well.

Furthermore, the Court is not constrained by Rule 62.1; but rather may use it as a guideline.

Again, this is an interlocutory appeal. The Court is free to lift its stay at any time at its own volition.

## NOTRE DAME ARTICLE

Defendant's citation to the Notre Dame article is misleading. The key phrase in that paragraph, at p. 614, states, "-that combining an appeal from the denial of an indicative ruling motion with the appeal of the original judgment…might suggest to some the possibility of misuse."

At this point, we do not know what the Court's ruling on this motion might be; and we do not know if either party might attempt to appeal it. Since the condition predicate, an appeal of a denial of an indicative ruling, has not occurred, discussion of such situation is meaningless.

Further, the commentator indicates that any such misuse would be discovered in the process, as would any other misuse of the rules.

## WHY THE MATERIALS WERE NOT DISCOVERED

FCSA requested a stay of discovery pending resolution of the "mentally ill" issue. After the Court granted that motion, Plaintiff wished to get discovery going.

However, Defendants were filing motions to reconsider and motions to stay. Defendant claims it made these documents available on June 5, 2009. Doc. 147, p. 10. However, the Court granted the stay motion on June 15, 2009 at Doc. 129. FCSA offered to make these documents available, "as they are kept in the usual course of business." Doc. 147, p. 10.

June 5 was a Friday, and June 15 was the second following Monday. Even under normal circumstances, that would have left effectively only five business days to review the responses, and arrange for and attempt to go through an office of full of records. It is unlikely that an arrangement could even have been made, let alone carried out in the five business day's interim.[1,2]

However, by claiming the Plaintiff had a dilatory defense, FCSA admits that such documentation was in their possession.

---

[1] Plaintiffs' counsel had additional reasons that were known to the defendants, for being unable accomplish all of this in a week. On May 21, counsel filed a motion to continue his opposition to Defendant's Petition for Permission to Appeal in the Ninth Circuit at DktEntry 6929733. Counsel stated his reasons for requesting a continuance which included, among other things, his being in Anchorage for appellate oral argument, and a two-week visit from out-of-state guests. Counsel did not even have an opportunity to view Defendant's responses until after the Court had filed its order granting the stay of the District Court case.

[2] Additionally, counsel was contacted by Defendant's counsel a month prior to receiving Defendant's answers, on May 12, 2009. *See* Ex. A, Letter of Wallace confirming conversation. During that conversation, Defendant's counsel stated that Defendant's would be requesting the Court stay discovery until a decision had been made in the Ninth Circuit.

## **GRANT DOCUMENTS**

…A grant agreement must be executed within 60 days after the effective date of the appropriation or allocation unless the department determines that an award of the grant would not be in the public interest.

AS 37.05.316(a). *See,* succinct description of Therapeutic Family Homes at Doc. 140, Exh. 4, p. 26; (an indisputable admission and answer that the FLSA applies to FCSA, was solemnized pursuant to AS 37.05.316 at Doc. 140, Exh. 2, p. 4).[3]

Also note that the records initially are from the Office of the Governor, Office of Management and Budget; and were first received in whole by Plaintiffs on July 8, 2009. Getting these materials in short order such as this, even when discovery is closed, can hardly be called dilatory.

Plaintiffs' first filed nearly all[4] of these materials with Plaintiffs' opposition to certification for interlocutory appeal, Case No. 08-80074, DktEntry 6980115 on

---

[3] Exhibits 2, 3 and 4 of Doc. 140 were too large to file online so were instead filed on disc with the Court and a copy sent to Defendants. Because there is not an electronically accessible format of these exhibits online, and for the Court's convenience, the referred to pages have been appended to the end of this filing.

[4] As Plaintiff previously stated in Doc. 140 at fn. 1, Exhibit 4 consists of materials pertaining to the FCSA grants that were provided to the plaintiffs by the State of Alaska, Office of the Governor, Office of Management and Budget. The documents that were filed with Plaintiff's Opposition to Petition for Permission to Appeal had consisted of only a faxed copy of the FY09 materials. At the time of that filing, Plaintiffs' counsel was still awaiting the certified copies of the OMB documents that have been filed herewith as. *See* DktEntry 6980115, p. 2, fn. 1.

July 2, 2009.

Subsequent to the grant of appeal, on September 25, 2009, Plaintiff filed a motion (with all of the materials) to supplement the record in the Ninth Circuit. Case No. 09-35703, DktEntry 7074315.

In fact, FCSA objected to motion to supplement the record by stating, "the documents were never presented to or considered by the district court." Case No. 09-35703, DktEntry 70859242, p. 2; also at Doc. 147-3, p. 2. Further, they objected to judicial notice. *Id*. at 3. (Plaintiffs' would differ with Defendant's position. The documents could easily be judicially noticed. The fact that these are records of the State of Alaska is not subject to reasonable dispute; and it is capable of accurate and ready determinate to sources whose accuracy cannot reasonably be questioned).

It appears yet and still that FCSA speaks from both sides of its mouth. First it complains to the Appellate Court that the District Court has not seen the papers. Then, when they are filed with the District Court, they complaint that the Appellate Court has the papers and the District Court need not consider them.

As to the affidavit of Carla Smith, Carla Smith did not join the litigation until July 3, 2009 (*see* Doc. 131), which was six months after the ruling on the second motion for summary judgment, and almost two months after the stay of

discovery.[5]

FCSA admits that it had these documents in its record by being accusatory. It says that the records were available in its accounting department and would be available for review on reasonable notice.

FCSA cannot deny the existence and truthfulness of these documents. AS 37.05.316 requires that a grant agreement must be executed within 60 days after the effective date of an appropriation. Doc. 140, Exhibit 2, p. 77 contains the same description of a Therapeutic Family Home as Doc. 140, Exh. 4, p. 26. The grant pertaining to Doc. 140, Exh. 2, p. 4 is solemnized by John Regitano, Executive Director of FCSA, and Jill Davis for Jo. E. Grove, Grants Program Manager of Department of State of Alaska, Commerce, Community and Economic Development, pursuant to AS 37.05.316 at Doc. 140, Exh. 2, p. 3.

It seems that if FCSA claims that it does not care for the mentally ill, it is either being deceptive to the Court, or its being deceptive to the State. Perhaps, FCSA would like to explain this to the Court at oral argument.

FCSA says that the "62.1" additional grant materials are cumulative[6] to

---

[5] FCSA says that the Carla Smith affidavit was signed on April 2, 2009. Doc. 147, p. 12. This is incorrect. The handwritten date says 7/2. Some might mistake the 7 for a 4. However, the typewritten date to the left indicates July 2.

evidence previously considered by the Court, (2005 Annual Report, Doc. 36-10 and Doc. 36-11, and a two-page portion of the "Quarter-Million Dollar Grant," Doc. 36-6). The "62.1" motion materials and the previous considered materials all say that FCSA cares for children who are experiencing some form of mental illness.

> FCSA's Therapeutic Family Homes provide quality residential care to…youth…that are experiencing mental health and behavioral issues and are at imminent risk of psychiatric placement outside of their community.
>
> Doc. 53-8, p. 9, para. 6

While this compares to, "the homes will be used [for]…mental health treatment in a residential setting" (Doc. 140, Exh. 2, p. 4) and, "a therapeutic family home (TFH) provides residential care to children…that are experiencing some form of mental health illness…and are at the risk of psychiatric placement," are similar; they are not the same. Additionally, Doc. 140, Exh. 2, p. 77 sets out, "the primary goal of the TFH is to provide an alternative for children that are currently being placed in a higher level, more restrictive and more costly residential treatment facilities in and outside of Alaska." This fully demonstrates that FCSA is "primarily engaged" in the care of the mentally ill.

---

[6] Doc. 147, p. 9, 11, 12.

By stating these materials are cumulative and not needed, FCSA admits it cares for the mentally ill.

But, on December 16, 2009, in its opening brief on interlocutory appeal, FCSA says, "Appellant consistently maintained the children are not "mentally ill," and provided detailed, sworn testimony supporting that position." Case no. 09-35703, DktEntry 71666505, p. 44.

FCSA still wishes to speak from both sides of its mouth. In the ensuing paragraph, FCSA goes on to say,

> …lists inaccuracies and lack of foundation for Appellees' exhibits and affidavit testimony…statements on website were "made on behalf of Family Centered Services as a whole, and do not apply to the Therapeutic Family Homes in particular. In fact, the [statements were] drafted years before Family Centered Services opened its first Therapeutic Family Home in 2004.

*Id*. at 44-45.

FCSA then goes on to insist that:

> The FCS family homes provide food, shelter, clothing and other necessities, basic social services and human kindness to children who do not need to be institutionalized, but have nowhere else to go.

*Id*. at 45.

Given this lack of candor, it is imperative that the Appellate Court be made aware of these authenticated official state records, required to be kept by state law, that unequivocally show that FCSA, through its Therapeutic Family Homes, cares for the mentally ill; and that primary goal of the Therapeutic Family homes is to bring children home from higher level residential psychiatric treatment facilities and/or keep in state, those who are at risk of going to out-of-state residential psychiatric treatment facilities.

They admit it on one hand in front of this Court; saying that the materials are only cumulative; and they deny it in front of the ninth Circuit and cast aspersion upon the prior evidence considered.

## **BIO-ETHICAL REFORM**

FCSA cites to *Center for Bio-Ethical Reform v. City and County of Honolulu,* 455 F.3d 910 (9th Cir. 2006), suggesting that the Court should not consider the BRS Handbook because the particular edition submitted to the Court became effective July 1, 2009.

> The Center requests that we take judicial notice of changes made to the FAA Handbook on December 17, 2004, and a revised Certificate issued to the Center on February 22, 2005, both of which went into effect after the district court's decision in November 2004. We deny the Center's request for judicial notice pursuant Federal Rule of Evidence 201 because these documents were not before the district court and their significance, if any, is not factored into the record on

>appeal. Consideration of these documents and after-enacted changes is best left to the district court, not to the court of appeals for initial analysis. There is good reason why we generally do not consider issues for the first time on appeal-the record has not been developed, the district court has not had an opportunity to consider the issue, and the parties' arguments are not developed against the district court decision.
>
>*Bio-Ethical Reform* at 918, fn. 3.

It seems that this is very good authority for the Court to consider this pending motion. The Court notes that the Center requests judicial notice of an FAA Handbook that has been changed apparently after the appeal began. If the Ninth Circuit Court will not take judicial notice of these materials, then the very appropriate way for it to happen is through this "62.1" motion.

## **SURPRISE**

FCSA can claim no surprise in Plaintiffs' possession and use of its grant application and agreement and related documents. As noted above, these papers were filed with the Ninth Circuit Court, and served upon the defendant as early as July 2, 2009; and then repeatedly filed and referred to throughout the motion practice, and the motion to reconsider in the Ninth Circuit, and now the "62.1" motion.

## DENIALS

FCSA claims it is not subject to the BRS Handbook. However, AS 47.32.030(E) indicates that the Department may, "establish requirements for the operation of entities licensed under this chapter…"

The BRS Handbook itself states, "Residential Childcare statutes and regulations apply to all providers of residential childcare. The BRS Handbook requirements apply to children/youth utilizing a BRS funded bed."

FCSA "work[s] in conjunction with the staff of the Division of Behavioral Health, Office of Children's Services, and the Mental Health Trust Authority to assist other organizations to and communities to bring homes into service." Doc. 140, Exh. 2, p. 77. Even if FCSA were not subject to the BRS Handbook, any BRS funded clients would be subject; and in order to maintain those clients, FCSA would need to comply with the requirements of the Handbook. Even if FCSA had nothing to do with the BRS Handbook, the handbook is still very informative because it gives a good general background of the "continuum of care" for the mentally ill, and describes the children, types of problems, and level of treatment for children in residential care. *See generally*, Doc. 140-7 and *esp*. p. 4, 5, 6, 11, 12, 13, 14, and 15.

For example, whatever the contractual relationship between FCSA and the

various state agencies, the target population for the "Bring The Kids home" initiative is:

> These children/youth may have primary mental, emotional and behavioral disorders and/or developmental disabilities that prevent them from functioning at developmentally appropriate levels in their home, school, or community. They may exhibit symptoms such as anti-social behaviors that require close supervision and intervention and structure, mental disorders with persistent non-psychotic or psychotic symptoms, drug and alcohol abuse, or sexual behavior problems that severely or chronically impair their ability to function in typical family, work, school, or other community roles. Children/youth may be victims of severe family conflict, behavioral disturbances often resulting from substance abuse and/or mental illness of the parents. These children/youth may have physical and mental birth defects from prenatal maternal alcohol use or alcohol related neurological defects. These children/youth may be medically compromised or developmentally disabled children/youth not otherwise served by the Division of Behavioral Health.
>
> BRS Handbook, Doc. 140-7, p. 6. *See also*, "62.1" Motion, Doc. 140, p. 9-14.

The creation of FCSA Therapeutic Family Homes is to "Bring The Kids Home."

### THE AD

The December 20, 2009 Fairbanks Daily News-Miner Ad at Doc. 146-2, advertises for people with "two years of experience working with children who experience a <u>mental health disability</u>…" What better proof that the residents of the

Therapeutic Family Homes are mentally ill or defective, then wanting to have experienced houseparents and youth counselors? This is one more admission of FCSA that they care for the mentally ill and/or the like through their Therapeutic Family Homes. It is not only proof, but also ongoing proof; and it debunks FCSA's statements that the exhibits attached to Doc. 53 were "outdated."

## CONCLUSION

This is an interlocutory appeal. The exhibits are highly relevant. Had they been available at motion time, they would have been submitted.

Defendants, (with the limited exception of claiming that the BRS Handbook does not apply to them, and that they do not need a Certificate of Need), does not dispute the authenticity or any of the factual assertions made in the documents.

These documents thoroughly demonstrate that Defendant is an institution that provides care for the sick, or the mentally ill or defective. They are largely records of the State of Alaska and executed contracts between the State of Alaska and FCSA. They are highly relevant and probative of Plaintiffs' case.

Even if Plaintiffs' were to lose the appeal, we would just be back in front of the District Court with these exhibits after the appeal, and with a renewed motion for summary judgment on the applicability of the FLSA. There is no need for us to

do this twice or thrice. The Court should grant the motion.

RESPECTFULLY SUBMITTED this 19th day of January 2010, at Fairbanks, Alaska.

> LAW OFFICE OF KENNETH L. COVELL
> Attorney for the Plaintiffs
> s/ Kenneth L. Covell
> 712 Eighth Avenue
> Fairbanks, Alaska 99701
> Phone: (907) 452-4377
> Fax: (907) 451-7802
> Email: kcovell@gci.net
> ABA No. 8611103

CERTIFICATE OF SERVICE
This is to certify that a copy of the foregoing
has been served electronically by ECF to the
following attorney(s) and/or parties of the record:

John Foster Wallace, Colin C. Hampton,
Richard D. Monkman

Dated: January 19, 2010

By: s/ Kenneth L. Covell
Law Office of Kenneth L. Covell



# Designated Legislative Grant Program
## Grant Agreement

| Grant Agreement Number | | Amount of State Funds |
|---|---|---|
| 07-DC-090 | | $960,000.00 |
| Collocation Code(s) | Encumbrance Number/AR/Lapse Date | Project Title |
| 8179860 | 870576 / 10790 / 6/30/2011 | Construction of Six New Therapeutic Youth Homes |

| Grantee | Department Contact Person |
|---|---|
| Name<br>　　Family Centered Services of Alaska, Inc. | Name<br>　　DeAnna Orris |
| Street/PO Box<br>　　620 Fifth Avenue | Title<br>　　Project Assistant |
| City/State/Zip<br>　　Fairbanks, AK 99701 | Street/PO Box<br>　　211 Cushman Street |
| Contact Person<br>　　Kathy Cannone, Finance Officer | City/State/Zip<br>　　Fairbanks, AK 99701-4639 |

| Phone | Fax | Phone | Fax |
|---|---|---|---|
| (907) 474-0890 | (907) 474-3621 | (907) 451-2718 | (907) 451-2742 |

### AGREEMENT

The Alaska Department of Commerce, Community and Economic Development, Division of Community Advocacy (hereinafter 'Department') and **Family Centered Services of Alaska, Inc.,** (hereinafter 'Grantee') agree as set forth herein.

**Section I.** The Department shall pay the Grantee for the performance of the project work under the terms outlined in this agreement. The amount of the payment is based upon project expenses incurred, which are authorized under this Agreement. In no event shall the payment exceed **$960,000.00.**

**Section II.** The Grantee shall perform all of the work required by this Agreement.

**Section III.** The work to be performed under this agreement begins **July 1, 2006** and shall be completed no later than **June 30, 2011**.

**Section IV.** The agreement consists of this page and the following:

| ATTACHMENTS | APPENDICES |
|---|---|
| Attachment A: Scope of Work | Appendix A: Audit Regulations |
|   1. Project Description | Appendix B: Audit Compliance Supplement |
|   2. Project Budget | Appendix B2: Indemnity and Insurance |
|   3. Project Narrative | Appendix C: State Laws and Regulations |
|   4. Project Management/Reporting | Appendix D: Special Requirements and Assurances for Federally Funded Projects (if applicable) |
|   5. Forms Packet | |
| Attachment B: Payment Method | Appendix E: Site Control |
| Attachment C: Standard Provisions | Appendix F: State Fire Marshal Review |

AMENDMENTS: Any fully executed amendments to this Agreement

| Grantee | Department |
|---|---|
| Signature *[signed]* | Signature *[signed]* |
| Printed Name and Title<br>　　John W. Regitano, Executive Director | Printed Name and Title<br>　　Jo E. Grove, Grants Program Manager |
| Date 8/16/06 | Date 8/22/06 |

Reviewed by: _____

**EXHIBIT 2, PAGE 3**

Attachment A
Scope of Work

1. Project Description

The purpose of this FY 2007 Designated Legislative Grant in the amount of **$960,000.00** [*pursuant to the provisions of AS 37.05.316, SLA 2006, Chapter 82, Section 1, Page 14, and Line 13*] is to provide funding to **Family Centered Services of Alaska, Inc.**, for use towards the *Construction of Six New Therapeutic Youth Homes* project. The project includes the construction of six therapeutic family homes, each approximately 3,100 square feet in size. Each home will include five bedrooms for emotionally disturbed children/residents in need of behavioral health services, and will also include a private bedroom/suite for fulltime, live-in parents. This project may include, but is not limited to, the purchase of construction materials and equipment for the homes, including freight and/or shipping costs. Labor costs may also be included. The purpose of the homes is to allow children to receive services in a family-like setting while being transitioned back to their own home or community from higher level treatment facilities outside their community. The homes will also be used to reduce the number of children who may otherwise leave their community because of the unavailability of appropriate mental health treatment in a residential setting.

No more than five percent (5%) of the total grant award may be reimbursed for Administrative expenses for projects involving equipment purchase or repairs and no more than ten percent (10%) of the total grant award may be reimbursed for Administrative expenses for all other projects. To be reimbursed for eligible administrative costs, expenses must be reported on the Designated Legislative Grant Financial/Progress Report form.

2. Project Budget

| Cost Category | Grant Funds | Total Project Cost |
|---|---|---|
| Program Funds | $960,000.00 | $960,000.00 |

3. Budget Narrative

The Grant Funds identified above will be used to complete the project described in the above Project Description.

Family Centered Services of Alaska
Capital Funding Request
to
Construct Six Therapeutic Family Homes

Family Centered Services of Alaska (FCSA) is requesting $960,000 of capital funding to construct 6 Therapeutic Family Homes. The total cost for the project is $2,141,400 the balance of the funding will be provided by FCSA through commercial bank loan and cash contribution. Each home will be licensed by the State of Alaska and have the capacity to provide residential service to 5 children. FCSA is proposing to construct 4 of the homes in the Wasilla area and 2 in Fairbanks. Presently FCSA operates 5 homes in the Fairbanks/North Pole area. FCSA has targeted Wasilla to construct four homes because the valley currently has an acute need and the highest numbers of children needing such services. The need in Fairbanks is significant but presently not as extreme as Wasilla because FCSA in the last two years has placed 5 homes in service in Fairbanks.

**What is a Therapeutic Family Home?** A Therapeutic Family Home (TFH) provides residential care to children ages 6-18 (male & female) that are experiencing some form of mental health illness often combined with substance abuse, and are at risk of psychiatric placement outside of their community. A TFH is designed to be reflective of a family experience rather than an institutional setting. Homes are located in residential neighborhoods with larger building lots no less then one (1) acre in size and look internally and externally like any other private family residence. The TFH is operated by live-in therapeutic parents who are responsible for the overall care and supervision of up to five children who are supported as needed by other clinical and counseling staff that work with the children and provide support and relief for the therapeutic parents. The primary goal of the TFH is to provide an alternative for children that are currently being placed in higher level, more restrictive, and more costly residential psychiatric treatment facilities in and outside of Alaska. The cost of providing mental health treatment in a TFH is approximately $180 per day this compares to a cost of approximately $280 to up to $350 per day for the same children when placed in higher level-4 & 5 institutional mental health treatment facilities.

**Background:** In the fall of 2003 FCSA developed the concept of the Therapeutic Family Home because of the lack of residential beds in Alaska and the need for lower level community based mental health treatment in Alaska. The design was based on the experience of FCSA staff and research into similar models in other states. The design also gave equal weight to a program that was less costly to operate as it did to quality treatment and community based services. This was done to assure that the homes could operate at a cost that would reduce state ongoing operating cost by redirecting children from more costly mental heath treatment facilities. The success of the program was also built on the concept of using smaller amounts of public funding to leverage conventional bank financing to construct the homes. This approach was intended to make more state capital funding available and more rapidly increase the number of residential homes presently needed in Alaska. Based on the success of the FCSA's current homes the TFH model has become a cornerstone of the "Bring The Kids Home" (BTKH) project and is identified throughout the project concept papers and planning timelines. Presently FCSA is the only operator of TFHs in Alaska and is working in conjunction with the staff of the Division of Behavioral Health, Office of Children's Services, and the Mental Health Trust Authority to assist other organizations and communities to bring homes into service.

FCSA 03-06-2006                **EXHIBIT 2, PAGE 77**

Family Centered Services of Alaska
Capital Funding Request
to
Construct Six Therapeutic Family Homes

Family Centered Services of Alaska (FCSA) is requesting $960,000 of capital funding to construct 6 Therapeutic Family Homes. The total cost for the project is $2,141,400 the balance of the funding will be provided by FCSA through commercial bank loan and cash contribution. Each home will be licensed by the State of Alaska and have the capacity to provide residential service to 5 children. FCSA is proposing to construct 4 of the homes in the Wasilla area and 2 in Fairbanks. Presently FCSA operates 5 homes in the Fairbanks/North Pole area. FCSA has targeted Wasilla to construct four homes because the valley currently has an acute need and the highest numbers of children needing such services. The need in Fairbanks is significant but presently not as extreme as Wasilla because FCSA in the last two years has placed 5 homes in service in Fairbanks.

**What is a Therapeutic Family Home?** A Therapeutic Family Home (TFH) provides residential care to children ages 6-18 (male & female) that are experiencing some form of mental health illness often combined with substance abuse, and are at risk of psychiatric placement outside of their community. A TFH is designed to be reflective of a family experience rather than an institutional setting. Homes are located in residential neighborhoods with larger building lots no less then one (1) acre in size and look internally and externally like any other private family residence. The TFH is operated by live-in therapeutic parents who are responsible for the overall care and supervision of up to five children who are supported as needed by other clinical and counseling staff that work with the children and provide support and relief for the therapeutic parents. The primary goal of the TFH is to provide an alternative for children that are currently being placed in higher level, more restrictive, and more costly residential psychiatric treatment facilities in and outside of Alaska. The cost of providing mental health treatment in a TFH is approximately $180 per day this compares to a cost of approximately $280 to up to $350 per day for the same children when placed in higher level-4 & 5 institutional mental health treatment facilities.

**Background:** In the fall of 2003 FCSA developed the concept of the Therapeutic Family Home because of the lack of residential beds in Alaska and the need for lower level community based mental health treatment in Alaska. The design was based on the experience of FCSA staff and research into similar models in other states. The design also gave equal weight to a program that was less costly to operate as it did to quality treatment and community based services. This was done to assure that the homes could operate at a cost that would reduce state ongoing operating cost by redirecting children from more costly mental heath treatment facilities. The success of the program was also built on the concept of using smaller amounts of public funding to leverage conventional bank financing to construct the homes. This approach was intended to make more state capital funding available and more rapidly increase the number of residential homes presently needed in Alaska. Based on the success of the FCSA's current homes the TFH model has become a cornerstone of the "Bring The Kids Home" (BTKH) project and is identified throughout the project concept papers and planning timelines. Presently FCSA is the only operator of TFHs in Alaska and is working in conjunction with the staff of the Division of Behavioral Health, Office of Children's Services, and the Mental Health Trust Authority to assist other organizations and communities to bring homes into service.

FCSA 03-06-2006

▷

West's Alaska Statutes Annotated Currentness
  Title 37. Public Finance
    Chapter 05. Fiscal Procedures Act
      Article 5. Administration of Grants
        → **§ 37.05.316. Grants to named recipients**

(a) When an amount is appropriated or allocated to a department as a grant under this section for a named recipient that is not a municipality, the department to which the appropriation or allocation is made shall promptly notify the named recipient of the availability of the grant and request the named recipient to submit a proposal to provide the goods or services specified in the appropriation act for which the appropriation or allocation is made. A grant agreement must be executed within 60 days after the effective date of the appropriation or allocation unless the department determines that an award of the grant would not be in the public interest.

(b) The Department of Labor and Workforce Development shall require a recipient awarded a grant for a public works project under (a) of this section to comply with the hiring preferences under AS 36.10.150-36.10.175 for employment generated by the grant.

CREDIT(S)

SLA 1982, ch. 4, § 2; SLA 1986, ch. 33, § 8; SLA 1986, ch. 106, § 39; SLA 1997, ch. 59, § 5.

LIBRARY REFERENCES

    States 123.
    Westlaw Key Number Search: 360k123.
    C.J.S. States §§ 377 to 380.

AS § 37.05.316, AK ST § 37.05.316

Current through the 2009 First Regular Session and First Special Session of the 26th Legislature

(c) 2010 Thomson Reuters

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.