**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ROBERT PROBERT; LORETTA
PROBERT,
        *Plaintiffs-Appellees,*

GENE GRISSOM; SANDRA GRISSOM;
DONNA GRIMES; KENNETH
MCDANIELS; JOHN GRIMES; LEONA
MCDANIELS; ERIC CLONINGER;
DEBRA CLONINGER,
        *Plaintiff-Intervenors- Appellees,*

        v.

FAMILY CENTERED SERVICES OF
ALASKA, INC.; JOHN W. REGITANO;
KATHY CANNOE; SUSAN DALE;
LONNIE HOVDE; DEBORAH L.
COXON,
        *Defendants-Appellants.*

No. 09-35703

D.C. No.
4:07-cv-00030-RRB

OPINION

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, Chief District Judge, Presiding

Argued and Submitted
July 26, 2010—Anchorage, Alaska

Filed June 23, 2011

Before: Mary M. Schroeder, Diarmuid F. O'Scannlain and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

8605

## COUNSEL

Kenneth L. Covell (argued), Law Offices of Kenneth L. Covell, Fairbanks, Alaska, for plaintiffs-appellees Loretta and Robert Probert and plaintiffs-intervenors Debra and Eric Cloninger, Donna and John Grimes, Gene and Sandra Grissom, and Kenneth and Leona McDaniels

Richard D. Monkman (argued), Sonosky, Chambers, Sachse, Miller & Munson, LLP, Juneau, Alaska, for defendants-appellants Family Centered Services of Alaska, John W. Regitano, Kathy Cannoe, Susan Dale, Lonnie Hovde, and Deborah L. Coxon.

## OPINION

CLIFTON, Circuit Judge:

Defendants Family Centered Services of Alaska ("FCSA") and its officers filed this interlocutory appeal challenging the district court's conclusion that FCSA's Therapeutic Family Homes ("Homes") are covered by the Fair Labor Standards Act ("FLSA") and are subject to its overtime provisions. We conclude that the Homes are not covered by that statute because they are not an "institution primarily engaged in the care of the sick, the aged, mentally ill or defective who reside on the premises of such institution." 29 U.S.C. § 203(r)(2)(A). As a result, we reverse and remand for further proceedings.

### I. Background

Plaintiffs Loretta and Robert Probert and Plaintiffs-Intervenors Debra and Eric Cloninger, Donna and John Grimes, Gene and Sandra Grissom, and Kenneth and Leona McDaniels are married couples who worked as "house parents" in FCSA's Homes. Each Home housed up to five chil-

dren. All the children were "severely emotionally disturbed" as defined by the Alaska law that qualifies the Homes for Medicaid funding, 7 Alaska Admin. Code § 43.471, and each of the children had at least one diagnosed mental disorder under Axis-I of the current Diagnostic and Statistical Manual of Mental Disorders. The children attended local public schools and participated in other activities away from the Homes. The children participated in group therapy conducted by clinicians in the Homes, but received most of their medical and psychological treatment outside the Homes. Plaintiffs were not licensed medical or social service professionals.

Plaintiffs sued FCSA for overtime pay under the FLSA.[1] After denying Plaintiffs' first motion for partial summary judgment, the district court granted a similar motion for partial summary judgment in their favor, concluding that FCSA through its Homes, was operating "an institution primarily engaged in the care of the . . . mentally ill or defective who reside on the premises of such institution,' " 29 U.S.C. § 203(r)(2)(A), and was therefore an enterprise subject to the FLSA's overtime provisions, id. § 207(a)(1). The district court observed that the FLSA does not define "institution." As an analogy, the district court looked to a federal Medicaid regulation, not directly applicable to this situation, that defined "institution" as "an establishment that furnishes (in single or multiple facilities) food, shelter, and some treatment

---

[1] FCSA's contracts with the house parents stated the annual compensation and said that the house parents were exempt from overtime compensation. Probert's contract required him to work 40 hours per week, and Loretta Probert's required her to work at least 10 hours per week. But Plaintiffs claim that full-time and part-time house parents alike frequently worked as many as 98 hours per week. FCSA disputes the number of hours each Plaintiff worked, but that dispute is not before us on this interlocutory appeal. The parties also debate whether the house parents were salaried employees, but that question is not before us on appeal, either. We determine only whether the district court correctly determined that FCSA's homes qualified as an "enterprise" subject to the FLSA's overtime provision.

or services to four or more persons unrelated to the proprietor," 42 C.F.R. § 435.1010, and concluded that the "Homes (either individually or as a group) could be considered an 'institution.'" The court also relied on FCSA's own website, which described the Homes as "provid[ing] quality residential care to male and female youth ages 6-18 that are experiencing mental health and behavioral issues and are at imminent risk of psychiatric placement outside of their community."

After denying FCSA's motion for reconsideration, the district court certified both orders for an immediate appeal under 28 U.S.C. § 1292(b). We granted FCSA permission to appeal.

## II. Discussion

[1] The FLSA sets a national minimum wage, 29 U.S.C. § 206(a)(1), and requires overtime pay of one and a half times an employee's hourly wage for every hour worked over 40 hours in a week. *Id.* § 207(a)(1). With certain exceptions not relevant to this case, *see id.* § 213, these requirements apply both on an individual basis to any employee "who in any workweek is engaged in commerce or in the production of goods for commerce," and on an enterprise-wide basis to all employees "employed in an enterprise engaged in commerce or in the production of goods for commerce." *Id.* §§ 206(a)(1), 207(a)(1). Because of the use of the terms "commerce" and "enterprise," it was originally understood that these statutes did not cover employees of most non-profit organizations.

[2] In 1966, however, Congress amended the FLSA to bring certain kinds of non-profit institutions within the scope of "enterprise" coverage. Under the relevant amendment, "'[e]nterprise' means . . . activities performed . . . by any person or persons for a common business purpose." *Id.* § 203(r)(1). Activities are deemed to have a business purpose when they are performed

in connection with the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, a preschool, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is operated for profit or not for profit).

*Id.* § 203(r)(2)(A). The amendment further provides that such an institution qualifies as an "[e]nterprise engaged in commerce or in the production of goods for commerce." *Id.* § 203(s)(1)(B). Institutions covered by these provisions are therefore subject to FLSA's minimum wage and overtime requirements even if they are operated not for profit.

Plaintiffs argue that each of the FCSA Homes in which they worked is covered by the statute as "an institution primarily engaged in the care of . . . the mentally ill . . . who reside on the premises of such institution."[2] The FLSA is a remedial statute that is "to be liberally construed to apply to the furthest reaches consistent with Congressional direction." *Dent v. Cox Communications Las Vegas, Inc.*, 502 F.3d 1141, 1146 (9th Cir. 2007) (internal quotation marks omitted); *see also* 29 C.F.R. § 779.101 ("An employer who claims an exemption under the Act has the burden of showing that it applies."). Nonetheless, we conclude that the language of the statute does not cover the FCSA Homes, for two primary reasons.

**[3]** The first reason is that the Homes were not "primarily engaged" in providing "care," as that term is used in the statute. The statute refers to "care" in relation to groups with special needs, namely "the sick, the aged, the mentally ill or

---

[2] We assume for the purposes of this appeal that residents of the Homes qualify as "mentally ill."

defective." 29 U.S.C. § 203(r)(2)(A). As such, we understand "care" in this context to include something more like treatment. What the Homes primarily provided, as their name suggests, was a home or a residence. As noted above, the children attended school, engaged in activities, and received most of their medical and psychological treatment from medical and mental health professionals outside the Homes. Obviously, for children a home should be more than simply a place to live, and the children presumably benefitted from Plaintiffs' "care" as house parents. But Plaintiffs were not medical or social service professionals and were not primarily focused on providing the type of "care" that those professionals provide.

[4] The language of the statute clearly suggests a covered institution must provide more than the general care of a residence. In addition to requiring that the institution's patrons "reside on the premises of [the] institution," the institution must provide "care" of the type that is provided to "the sick, the aged, the mentally ill or defective." If residing on the premises were enough by itself to define the given premises as covered by the statute, then the requirement that the institution be "primarily engaged" in the "care" of the individuals residing there would be superfluous. We are to avoid interpreting a statute in that manner. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal quotation marks omitted)).

[5] Second, the Homes do not appear to us to be "institutions" as that term is used in this statute. Around the time the 1966 amendment was drafted, the Oxford English Dictionary offered the following definition of "institution":

> An establishment, organization, or association, instituted for the promotion of some object, esp. one of public or general utility, religious, charitable, educa-

> tional, etc., e.g. a church, school, college, hospital, asylum, reformatory, mission, or the like; as a literary and philosophical institution, a deaf and dumb institution, the Royal National Life-boat Institution, the Royal Masonic Benevolent Institution . . . , the Railway Benevolent Institution, etc.

5 Oxford English Dictionary 354 (1933, reprinted 1961). The FCSA Homes do not fit well within that definition.

Nor do the Homes fit well with the neighboring parts of the relevant statute. They are not very much like

> a hospital, . . . , a school for mentally or physically handicapped or gifted children, a preschool, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is operated for profit or not for profit).

29 U.S.C. § 203(r)(2)(A).

[6] In ascertaining the meaning of an ambiguous term, "we may use canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent." *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1133 (9th Cir. 2009) (internal quotation marks omitted). One of those canons of statutory construction is *noscitur a sociis*, which counsels that an ambiguous term "is given more precise content by the neighboring words with which it is associated." *United States v. Williams*, 553 U.S. 285, 294 (2008). Thus, our interpretation of "institution" should be informed by the other establishments listed in that statute, namely hospitals and schools. Those facilities are staffed by professionals and provide more comprehensive medical, psychological, or educational programs, usually for a much larger population. The FCSA Homes, run by two house parents and housing no more than five children each, seem by comparison out of place. We con-

clude, therefore, that they are not meant to be included within that list of establishments.

The legislative history of the 1966 amendment to the FLSA does not point to a different conclusion. The Senate report, for example, frequently refers to "hospitals and related institutions" as shorthand for the "enterprises," other than schools, covered by § 203(r)(2)(A). *See* S. Rep. No. 89-1487, at 5, 8, 13, 25, 26, 28 (1966). The report never mentions foster homes or group homes or any other facility similar to the FCSA Homes.

Plaintiffs argue that we should interpret § 203(r)(2)(A) to include FCSA's Homes because guidance from the Department of Labor indicates that a reference to "nursing homes" in that provision should be interpreted broadly. *See* Dep't of Labor, Wage and Hour Division, Field Operations Handbook (FOH), ch. 12, § 12g02 ("[Institutions primarily engaged in the care of the aged] are not limited to nursing homes, . . . but include those institutions generally known as nursing homes, rest homes, convalescent homes, homes for the elderly and infirm, and the like."). Plaintiffs argue that by the same reasoning, "institution primarily engaged in the care of the . . . mentally ill" should be interpreted broadly to include FCSA's Homes. We disagree.

The FCSA Homes are very different from nursing homes and the related facilities listed in the handbook. The children who live at the FCSA Homes spend much of their time, perhaps a majority of their waking hours, elsewhere. They leave the Homes to attend school, participate in activities, and receive medical and psychological treatment. Residents of nursing homes are not necessarily confined completely to those facilities, but the expectation is that the vast majority of their time is spent there. Those facilities are also staffed with professionals, not simply house parents, and residents may be expected to receive substantially greater "care" in those facilities.

PROBERT v. FAMILY CENTERED SERVICES OF ALASKA    8615

Furthermore, it does not appear to us that the FOH is a proper source of interpretive guidance. *See Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000). The handbook itself says that it "is not used as a device for establishing interpretative policy." FOH, Foreword at 1, *available at* http://www.dol.gov/whd/FOH/index.htm (last checked June 15, 2011).

### III. Conclusion

**[7]** We conclude, therefore, that the Homes operated by FCSA are not covered by the overtime provisions of the FLSA. We reverse the district court's interlocutory order granting partial summary judgment and remand for further proceedings consistent with this opinion.

**REVERSED** and **REMANDED.**