John Foster Wallace
ZIMMERMAN & WALLACE
711 Gaffney Road, Suite 202
Fairbanks, AK 99701
(907) 452-2211
(907) 456-1137 facsimile
foster@mzwlaw.com

Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT FAIRBANKS

| | |
|---|---|
| ROBERT PROBERT; LORETTA E. PROBERT, GENE GRISSOM; SANDRA GRISSOM; JOHN GRIMES; DONNA GRIMES; KENNETH MCDANIELS; LEONA MCDANIELS; ERIC CLONINGER; and DEBRA CLONINGER,<br><br>Plaintiffs,<br><br>vs.<br><br>FAMILY CENTERED SERVICES OF ALASKA, INC.; JOHN W. REGITANO; KATHY CANNONE; SUSZAN DALE; LONNIE HOVDE; DEBORAH L. COXON, and additional DOES I TO X, Managerial Employers, Jointly Liable,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No.: 4:07-CV-00030 RRB |

## MOTION TO DISMISS

Family Centered Services of Alaska, Inc. ("FCSA") moves to dismiss all claims of plaintiffs, Robert and Loretta Probert, Gene and Sandra Grissom, John and Donna Grimes, Kenneth and Leona (Allridge) McDaniels, Eric and Debra Cloninger, Carla Smith and Timothy Decker, and others similarly situated.

1.  **FLSA Claims.**

On June 23, 2011, the Ninth Circuit Court of Appeals issued its opinion holding that FCSA's Therapeutic Family Homes are not an "institution primarily engaged in the care of the sick, the aged, mentally ill or defective", do not qualify as an "enterprise" and "are not covered by the overtime provisions of the FLSA." *See* Ninth Circuit Opinion, at Docket 192, pp. 2, 3, fn. 1, and 9. The Ninth Circuit recognized: "Because of the use of the terms 'commerce' and 'enterprise', it was originally understood that these statutes did not cover employees of most non-profit organizations", but "[i]n 1966, … Congress amended the FLSA to bring certain kinds of non-profit institutions within the scope of 'enterprise' coverage" under 29 U.S.C. § 203(r). Id., p. 4. Because FCSA is a non-profit organization[1], not engaged in "commerce", and not an "enterprise" under 29 U.S.C. § 203(r), it is not within the scope of enterprise coverage under the FLSA as a matter of law.

All plaintiffs' allegations under the FLSA were based on enterprise coverage.[2] *See* Plaintiffs' Corrected Amended Complaint, paragraphs 148-153, 184, 187, and 189, at Docket 100. Plaintiffs alleged no basis for individual coverage under the FLSA. Indeed, plaintiffs admit that they were all Alaska residents and FCSA was an Alaskan non-profit corporation doing business in Alaska, and did not allege they were individually engaged in interstate commerce. *See* Corrected Amended Complaints, paragraphs 1-10, Docket 100. As the FLSA does not apply to FCSA's Therapeutic Family Homes under enterprise coverage, and plaintiffs have not alleged

---

[1] Plaintiffs admitted FCSA "is an Alaskan non-profit corporation...." *See* Corrected Amended Complaint, paragraph 10, at Docket 100.
[2] Plaintiffs alleged that FCSA violated the FLSA by failing to keep accurate employment records under 29 U.S.C. § 211(c), failing to pay for all hours worked under 29 U.S.C. § 206, and failing to pay overtime wages under 29 U.S.C. § 207(a)(1). *See* Plaintiffs' Corrected Amended Complaint, paragraphs 148-153, 184, 187, and 189, at Docket 100.

individual coverage under the FLSA, all claims based on FLSA violations must be dismissed as a matter of law.

### 2. Alaska Wage and Hour Act Claims.

Plaintiffs alleged that FCSA violated AS 23.05.080 by failing to keep accurate employment records and "the Alaska Wage and Hour Act, AS 23.05.010 et. seq., and specifically ... AS 23.05.140" by failing to pay plaintiffs for all hours worked, regardless of their entitlement to overtime, or within three days of termination. *See* Plaintiffs' Corrected Amended Complaint, Counts I, III, and V, Docket 100.

The Alaska Wage and Hour Act ("AWHA") is codified at AS 23.10.050 – 23.10.150.[3] The AWHA (AS 23.10.050 - 23.10.150) does not apply to:

> (12) employment by a nonprofit educational or child care facility to serve as a parent of children while the children are in residence at the facility if the employment requires residence at the facility and is compensated on a cash basis exclusive of room and board at an annual rate of not less than (A) $10,000 for an unmarried person; or
> (B) $15,000 for a married couple;

AS 23.10.055(a)(12).

Plaintiffs admit they were employed by FCSA, a nonprofit organization, in its Therapeutic Family Homes as House Parents residing on the premises. *See* Corrected Amended Complaint, paragraphs 10, 18, 34, 48, 50, 62, 84, 98, 112, 129, 152, Docket 100. The Ninth Circuit found: "Plaintiffs ... are married couples who worked as 'house parents' in FCSA's Homes. Each Home housed up to five children"; "What the Homes primarily provided ... was a home or a residence." *See* Docket 192, pp. 2-3, 6. The job descriptions for full and part-time Therapeutic Family Parents required that they "reside in and manage the daily operation of FCSA's Therapeutic Family Home and ... provide for the overall care and supervision of up to five

---

[3] "AS 23.10.050 – 23.10.150 may be cited as the Alaska Wage and Hour Act." AS 23.10.150.

children while they are placed in the home", and each home was licensed with a "Community Care License" to operate a "Residential Child Care Facility." *See* Dockets 18-7, 18-8, 18-9. According to plaintiffs' own allegations, all House Parents, including part-time House Parents, were each paid more than $10,000 annually.[4] *See* Corrected Amended Complaint, paragraphs 23-25, 28; 35, 39; 48-49; 63, 66, 68; 84; 98, 108; 112-113, 129-131, 133, Docket 100. Plaintiffs were thus employed by a nonprofit child care facility to serve as a parent of children residing at the facility, required to reside at the facility, and compensated on a cash basis that far exceeded $10,000 for an unmarried person and $15,000 for a married couple. AS 23.10.055(a)(12). As a matter of law, the AWHA does not apply to their claims. *See* Alaska Superior Court's findings that AS 23.10.155(a)(12) exempts FCSA House Parents employed in Therapeutic Family Homes from the AWHA, Docket 55-1, pp. 8-9.

### 3. Contractual Claims.

Plaintiffs have not alleged that FCSA failed to pay any wages that were due under the terms of their employment contracts. They admit that FCSA informed them they were exempt from wage and hour laws and would not be paid for any time exceeding 40 hours per week (full-time) or 18 hours per week (part-time). *See* Corrected Amended Complaint, paragraphs 19, 21; 35-37; 49, 51; 64, 68; 85, 94; 99, 108; 115, 125; 130, 133, 134, 144, 173, Docket 100. Nevertheless, plaintiffs seek compensation for hours worked in excess of their contracted amount. Plaintiffs' expert auditor calculated wages allegedly due to Loretta Probert (a part-time

---

[4] Plaintiffs allege that the part-time House Parents were paid at least $21.60 per hour for at least 18 hours per week, providing an annual income of at least $20,217 ($21.60 x 18 x 52). *See* Amended Complaint, paragraphs 35, 39; 48-49; 98, 108; 129-131, 133. The House Parents' employment contracts provided for annual salaries of $45,000 per year for full-time House Parents and $20,255.04 per year for part-time House Parents, for a combined yearly salary of $65,255.04 per married couple, exclusive of room and board and other benefits. *See* Dockets 18-10, 18-11, and Exhibits "A"-"G", "I"-"L"

House Parent) based on hours she allegedly worked in excess of 18 hours per week or 36 hours per two-week pay period. *See* Docket 105-2.

Plaintiffs were employed as married couples, with one spouse employed as the full-time House Parent and the other spouse as a part-time House Parent. Their employment contracts, signed by the plaintiffs, expressly stated their annual salaries as: "Your pay will be $45,000 per year" for the full-time House Parents and "Your pay will be $20,255.04 per year" for the part-time House Parents.[5] *See* Dockets 18-10, 18-11, and signed employment contracts attached as Exhibits A"-"G", "I"-"L". The contracts identified their positions as "Exempt" and advised that "you will not be paid for any hours worked over 8 hours on a day or over 40 hours in a workweek." Id. The contracts stated no hourly wage. Id. The contracts of the part-time House Parents stated the part-time nature of their positions. Exhibits "B", "D", "F", "H", "J", "L". The employee's signatures on the contracts "indicate[d] [their] acceptance of the position, compensation, and terms and conditions of this agreement." Exhibits "A"-"L". The Ninth Circuit found: "FCSA's contracts with the house parents stated the annual compensation and said that the house parents were exempt from overtime compensation." *See* Docket 192, p. 3, fn. 1.

Plaintiffs do not allege that FCSA expressly or impliedly agreed to pay them more than their contracted salaries: $45,000 per year for the full-time House Parent and $20,255.04 per year for the part-time House Parent, for a combined yearly salary of $65,255.04 per married couple, exclusive of room and board and other benefits. Rather, plaintiffs admit that FCSA told them

---

[5] The only exception was Leona Aldridge McDaniels' part-time contract, which failed to state an annual salary, inadvertently identified her as "Nonexempt" and stated an hourly wage of $21.64, even though it also stated "you will not be paid for any hours worked over 8 hours on a day or over 40 hours in a workweek." Exhibit "H". However, Leona McDaniels admitted that her exempt status was corrected within about a year of being hired (by about October 2006) and she was not paid for more than the 18-20 hours per week "that she was told were required throughout her employment", as was the other "similarly situated" plaintiffs. *See* Corrected Amended Complaint, paragraphs 134 and 144, Docket 100.

they would be paid for only 40 hours per week for the full-time parent and 18 hours per week for the part-time parent, and not for any excess hours:

> 19. When hired, Robert was told he was to be paid for 40 hours per week.
>
> 35. When hired, Loretta was told she was to be paid for 20 hours per week, which was apparently changed to 18 hours per week.
>
> 42. Loretta worked more than the 18 hours per week she was told was required throughout her employment.
>
> 49. When hired, Gene was told he was to be paid for 18 hours per week and four hours a day....
>
> 57. Gene worked more than the 18 hours per week that he was told were required throughout his "part-time" employment.
>
> 58. Gene worked more than the 40 hours per week that he was told were required throughout his "full-time" employment.
>
> 68. Although she worked in excess of eight hours a day on a regular basis, Sandra was told, by FCSA, not to record more than eight hours of work time a day as she was classified as "exempt" and eight hours was all she would be paid for.
>
> 69. When Sandra asked about compensation for all the extra hours she was working she was told that "some kind of compensation" such as flex-time would be worked out; but this almost never occurred. She continued to work from about 5 AM each morning until as late as 12 midnight each evening from October of 2005 through January of 2007. When she asked about the long hours and time off which was promised but not provided by her employer, she was often told by supervisors ... "You are 'exempt'". At other times, Sandra would be told that flex-time would be arranged to compensate her for the extra hours worked.
>
> 80   Sandra worked far more than the 40 hours per week she was told were required....
>
> 94   John worked more than the 40 hours per week that he was told were required throughout his employment.
>
> 108   Donna ... was paid for no more than the 18 hours per week that she was told were required throughout her employment.
>
> 125. Kenneth worked more than the 40 hours per week that he was told were required throughout his employment.

> 130   Leona was told that she would work no more than 20 hours a week.
>
> 133.   At some point in early 2008, Leona was informed that her hours were being reduced to 18 per week. She had always recorded her "actual" hours worked, even though they far exceeded her "paid" hours of 20 a week. After FCSA reduced her hours, she was told that she was recording too many hours on her timesheet.
>
> 144.   Leona worked more than the 18 hours per week that she was told were required throughout her employment.

*See* Amended Correct Complaint, Docket 100.

The Proberts signed their contracts on July 24, 2006 and worked under its terms until they were terminated on August 29, 2007.[6] *See* Exhibits "A"-"B"; and Docket 100, paragraphs 26, 40. The Grissoms signed their contracts on October 31, 2005 and worked under its terms until they resigned on January 15, 2008. *See* Exhibits "C"-"D"; and Docket 100, paragraphs 56, 79. The Grimes signed their contracts on October 7, 2005 and worked under its terms until they resigned on July 15, 2006. *See* Exhibits "E"-"F"; and Docket 100, paragraphs 93, 107. The McDaniels signed their contracts on August 19, 2005 and October 20, 2005, and worked under its terms until they resigned on January 15, 2008. *See* Exhibits "G"-"H"; and Docket 100, paragraphs 124, 143. The Cloningers signed their contracts on September 29, 2007, and worked under its terms until March 20, 2009. *See* Exhibits "I"-"J". Carla Smith and Timothy Decker signed their contracts on November 30, 2006 and worked under its terms until June 28, 2009. *See* Exhibits "K"-"L".

Where there is no violation of the FLSA, or any state wage and hour act, contract law applies to claims for additional compensation. Braddock v. Madison County, 34 F.Supp.2d 1098, 1100 (S.D. Ind. 1998). Claims under contract law are a radically different legal regime

---

[6] Robert's allegations that he was hired on September 19, 2005 at a regular rate of $13.79, which was raised to $14.06 on December 19, 2005, refer to his employment as a Youth Counselor, which was a non-exempt position and for which he was paid overtime compensation. *See* Docket 18-6, 3.

than claims under the FTCA.[7]  Id.  "...[T]he essence of contract law is the enforcement of promises where the parties have manifested their assent to a mutual exchange of consideration." [Citing Restatement (Second) of Contracts, §§ 17, 3 (1981)].  Id., p. 1104.  See Morrissette v. A&W Alaska, 367 F.Supp.2d 1259, 1263 (D.AK 2005), also citing Restatement (Second) of Contracts § 17.  "[B]asic contractual requirements", include the "essential requirement" that the parties "mutual[ly] assent to the agreement's terms."  Colton v. Colton, 244 P.3d 1121, 1127 (Alaska 2010).  "The mutual assent requirement 'cannot be defeated by the unexpressed subjective intent of one of the parties; rather, it must rest on an objective manifestation of mutual intent regarding the essential terms of the contract.'  In other words, a party's 'mental reservation[s]' and 'unexpressed intentions' will not supercede the party's outward expressions of assent."  Id., pp. 1127-1128.  In determining the intent of the contracting parties, the court considers the contract's language as well as the parties' subsequent conduct.  Sowinski v. Walker, 198 P.3d 1134, 1143-1145 (Alaska 2008).

Under these essential contractual requirements, where the employer manifested no agreement to pay its employees for hours worked in excess of the contracted amount, and the employees continued to work for years under that regime without any indication that their employer intended to pay them for excess hours, the employer did not breach their contract by not paying for any excess hours and the employees had no claim for additional compensation. Braddock, supra, p. 1100.  "To put it simply, contract law should not enforce a promise against a party who has not made the promise, whether explicitly or implicitly."  Id.  "The principal issue here is whether [employer] contracted to pay plaintiffs additional compensation for hours in excess of [the contracted amount].  The evidence plainly shows that the [employer] never

---

[7] The FLSA "was carefully designed to trump contracts and to give employees rights that they could not waive or contract away."  Id.  FLSA claims "stand on a foundation entirely different from a contract, one that has little to do with the enforcement of a mutually agreed exchange of promises and performance."  Id., p. 1106.

contracted to pay such additional compensation." Id., p. 1105. "First, there was never any explicit promise on the part of the [employer] to pay additional compensation." Id., p. 1105. "Second, there was never any implicit promise by the [employer] to pay additional compensation, nor did plaintiffs ever act as if such a promise had been made. The clearest evidence of the critical terms of the employment contracts is the parties' actual conduct over many years." [Citing Monahan v. County of Chesterfield, 95 F.3d 1263, 1275 (4th Cir. 1996), where "course of conduct" was relied on "to determine that … employer had not agreed to pay plaintiffs additional compensation for hours in excess of weekly minimum requirements"; and Zoltek v. Safelite Glass, 884 F.Supp.283, 285 (N.D.Ill 1995), "where employee was aware of employer's practice of paying fixed salary and continued employment for several years, employee manifested acceptance of that practice as term of employment contract"]. Id., p. 1105. The employer "never acted as if it meant to pay for additional hours. The plaintiffs all continued to work for years according to those terms and without receiving any substantial assurance that the [employer] intended to pay for additional hours. That adds up to powerful evidence that the mutually agreed terms of the plaintiff's employment contracts did not include additional pay for hours in excess of" the contracted amount. Id., p. 1105.

In Zoltek v. Safelite Glass, supra, the court found that the employee's salary was intended to compensate him for all hours worked, where:

> …[F]or almost two and one-half years the parties conducted themselves as if Zoltek were properly classified as an exempt employee. He worked more than forty hours in many weeks and was never compensated for overtime. He never protested the lack of compensation. His hours per week varied considerably and his paycheck was always the same. Therefore, he impliedly consented to payment at a fixed sum per week regardless of the hours worked. That the parties never expressly agreed to this arrangement is irrelevant; their agreement is implied from their conduct. Id., p. 286.

"The facts show that the parties' implied-in-fact agreement was that Zoltek was to receive the salary amount and no more, regardless of how many hours he worked." Id., p. 287. In the absence of any violation of minimum wage or overtime laws, "a pay plan 'does not become illegal merely because it takes the form of additional hours worked without compensation, rather than of an express reduction of the hourly rate.'" [Citing U.S. v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 494 (2nd Cir. 1960)]. Wolman v. Catholic Health System, 2010 WL 5491182 (E.D.N.Y. 2010).

In this case, FCSA never agreed, promised or indicated that plaintiffs would be paid for any hours worked in excess of the contracted amount (40 hours per week for full-time and 18 hours per week for part-time); but, rather, expressly told plaintiffs they would not be compensated for any excess hours, and plaintiffs continued working for months, or even years, under this contractual arrangement. Plaintiffs were compensated in a fixed amount that was well in excess of the minimum wage[8], for the contracted number of hours (40 hours for full-time and 18 hours for part-time) and any other hours they might work. The nature of plaintiffs' employment as House Parents made any other method of compensation difficult to administer and monitor. The House Parents resided at the homes, but were not "working" during all hours of their residency, such as when they were sleeping, eating, socializing, watching television, or attending to personal matters. Even under the FLSA, it is recognized that:

> An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these

---

[8] Nevertheless, the House Parents were not subject to the minimum wage requirements of either the FLSA or the AWHA.

circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted.... 29 CFR 785.23.

The employment contracts provided plaintiffs with a fixed amount of compensation for all hours they worked, and expressly informed them they would not be paid for any excess hours. Exhibits "A"-"G", "I"-"J". FCSA never agreed or indicated that plaintiffs would be paid for any excess hours, and plaintiffs knew they would not be paid for excess hours and agreed to this arrangement by signing their employment contract and working under its terms. As a matter of law, plaintiffs have no claim for additional compensation.

4.  **Record Keeping Claims.**

The AWHA requires employers to keep employment records. AS 23.10.100. However, the AWHA, including AS 23.10.100, does not apply to House Parents who are exempt under AS 23.10.055(a)(12). AS 23.05.080 also requires employers to keep records. To the extent that AS 23.05.080 may provide an employee with a claim against the employer, it should be treated in the same manner as record keeping violations under AS 23.10.100. "The fact that the employer did not keep records means only that the burden shifting standard ... applies."[9] Barios v. Brooks Range Supply, 26 P.3d 1082, 1087 (Alaska 2001). However, before any burden shifting may occur, the employee must have sufficient evidence to "draw a 'just and reasonable inference'" that he has an underlying claim for wages. Id., 1086. An employee with no underlying wage claim has no claim for failing to keep records under AS 23.05.080. "Because she was not able to establish that she was entitled to overtime, each of the claims premised on that entitlement would have necessarily failed." Id., p. 1087.

---

[9] When there is a record keeping violation and the employee has sufficient evidence to "draw a 'just and reasonable inference'" that he has a claim for wages, then "the burden shifts to the employer to 'come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence.'" Id., 1086.

FCSA kept employment records for its House Parents. *See* Dockets 102-4, 126, 126-5, 126-6, 126-7. However, because its House Parents were exempt, salaried employees, and entitled to no compensation beyond that stated in their contracts, FCSA allowed its House Parents to record the times they allegedly worked with little or no interference. *See* Dockets 126, 126-5, 126-6, 126-7. FCSA admits that its House Parents often recorded inaccurate and untrue time entries, including times when they and the children were asleep, the children were at school or otherwise occupied, and they had relief from other employees. Id. However, the House Parents' inaccurate and untrue time entries entitle them to no wages that were not otherwise owed under the FLSA, AWHA, or their employment contracts. In the absence of any underlying liability for wages, plaintiffs have no claim for failing to keep records under AS 23.05.080.

5.   **Untimely Payment After Termination.**

AS 23.05.140(B) and (D) requires payment of "wages, salaries, or other compensation for labor or services" within three working days after termination of employment, and allows a penalty if payment is not timely. The plaintiffs have not alleged that FCSA made any particular payment that was untimely. Rather, plaintiffs claimed they are still owed unpaid wages that are untimely under AS 23.05.140. *See* Corrected Amended Complaint, paragraphs 188, 191, Docket 100. As a matter of law, FCSA has no liability for additional compensation under the FLSA, AWHA, or their employment contracts. In the absence of any underlying liability for wages, plaintiffs have no claim under AS 23.05.140.

## CONCLUSION

As a matter of law, plaintiffs have no claim for compensation under the FLSA, AWHA, or the provisions of their employment contracts. FCSA is entitled to dismissal of this lawsuit and entry of judgment in its favor.

DATED at Fairbanks, Alaska, this 26th day of August, 2011.

        ZIMMERMAN & WALLACE
        Attorneys for Defendants

By: /s/John Foster Wallace
     John Foster Wallace, ABA #9211115

CERTIFICATE OF SERVICE

This certifies that a copy of the foregoing will be electronically served simultaneous with filing to the following attorneys and/or parties of record:

    Kenneth L. Covell
    Law Offices of Kenneth L. Covell
    kcovell@gci.net

    Richard D. Monkman
    dick@sonoskyjuneau.com

/s/Lorraine M. Peterson       8/26/11
Lorraine M. Peterson for Zimmerman & Wallace