No. _____

## In The
# Supreme Court of the United States

————————◆————————

ROBERT PROBERT; LORETTA PROBERT;
GENE GRISSOM; SANDRA GRISSOM;
DONNA GRIMES; KENNETH MCDANIELS;
JOHN GRIMES; LEONA MCDANIELS; ERIC
CLONINGER; DEBRA CLONINGER,

*Petitioners,*

v.

FAMILY CENTERED SERVICES OF ALASKA, INC.;
JOHN W. REGITANO; KATHY CANNONE; SUSAN
DALE; LONNIE HOVDE; DEBORAH L. COXON,

*Respondents.*

————————◆————————

**On Petition For Writ Of Certiorari
To The United States Court Of Appeals
For The Ninth Circuit**

————————◆————————

**PETITION FOR WRIT OF CERTIORARI**

————————◆————————

KENNETH L. COVELL
LAW OFFICES OF
  KENNETH L. COVELL
712 8th Avenue
Fairbanks, AK 99701
(907) 452-4377

ERWIN CHEMERINSKY
(*Counsel of Record*)
UNIVERSITY OF CALIFORNIA,
  IRVINE
SCHOOL OF LAW
401 E. Peltason
Irvine, CA 92697
(949) 824-7722
EChemerinsky@law.uci.edu

*Attorneys for Petitioners Robert Probert, et al.*

COCKLE LAW BRIEF PRINTING CO. (800) 225-6964
OR CALL COLLECT (402) 342-2831

i

## QUESTIONS PRESENTED

The Federal Fair Labor Standards Act requires that employers pay employees a minimum wage and overtime pay. 29 U.S.C. §§206(a)(1), 207(a)(1). The statute provides that this applies to "an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution." §203(r)(2)(A).

Plaintiffs are individuals who provide home care for "severely emotionally disturbed" children. The plaintiffs do this for Family Centered Services of Alaska and sued it to have it comply with the minimum wage and overtime provisions of the Fair Labor Standards Act. The District Court granted summary judgment for the plaintiffs, but the Ninth Circuit reversed and concluded that plaintiffs were not providing "care" and were not "institutions" as required by the Act. Thus the questions presented are:

Whether the Fair Labor Standards Act applies to plaintiffs' homes which provide care for severely emotionally disturbed children, including a) whether institutions must provide "treatment" in order for it to be "care" within the meaning of the Act, and b) whether homes that provide care to severely emotionally disturbed children are "institutions" as required by the Act.

TABLE OF CONTENTS

Page

QUESTIONS PRESENTED ...............................  i

TABLE OF CONTENTS ......................................  ii

TABLE OF AUTHORITIES................................  iv

OPINIONS BELOW.............................................  1

JURISDICTION..................................................  1

STATUTORY PROVISIONS INVOLVED ...........  1

STATEMENT OF THE CASE ............................  2

REASONS FOR GRANTING THE WRIT OF
    CERTIORARI ...................................................  5

    I.  THIS COURT SHOULD GRANT CER-
        TIORARI TO RESOLVE A CONFLICT
        BETWEEN THE NINTH CIRCUIT'S
        DECISIONS AND THE PRIOR RUL-
        INGS OF THIS COURT CONCERNING
        HOW THE FAIR LABOR STANDARDS
        ACT SHOULD BE INTERPRETED..........  5

   II.  THIS COURT SHOULD GRANT CER-
        TIORARI TO RESOLVE AN ISSUE OF
        NATIONAL   IMPORTANCE   AND   A
        SPLIT AMONG THE CIRCUITS AS TO
        THE MEANING OF THE FAIR LABOR
        STANDARDS ACT.....................................  12

CONCLUSION.....................................................  15

iii

TABLE OF CONTENTS – Continued

Page

APPENDIX

June 23, 2011 Opinion of the United States
  Court of Appeals for the Ninth Circuit ...........App. 1

February 26, 2009 Order RE Motion for Recon-
  sideration at Docket 68 and Motion to Strike
  at Docket 72 of the United States District
  Court for the District of Alaska .....................App. 12

January 22, 2009 Order RE Second Motion for
  Partial Summary Judgment at Docket 53 of
  the United States District Court for the Dis-
  trict of Alaska .................................................App. 20

August 18, 2011 Order of the United States
  Court of Appeals for the Ninth Circuit .........App. 35

Department of Labor Field Operations Hand-
  book, §12g00 ...................................................App. 37

Department of Labor Field Operations Hand-
  book, §12g02 ...................................................App. 38

Department of Labor Field Operations Hand-
  book, §12g12 ...................................................App. 38

Department of Labor Field Operations Hand-
  book, §12g14 ...................................................App. 39

Department of Labor Field Operations Hand-
  book, §12g15 ...................................................App. 40

iv

## TABLE OF AUTHORITIES

Page

CASES

*Bailey v. Youth Villages*, 2009 WL 104564 (W.D. Tenn. 2009)................................................14

*Bowrin v. Catholic Guardian Society*, 417 F. Supp. 2d 449 (S.D.N.Y. 2006) ............14

*Briggs v. Sagers*, 424 F.2d 130 (10th Cir. 1970) ........13

*Burke v. Oxford House of Oregon, Chapter V*, 103 P.3d 1184 (Oregon 2004) ..................................13

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ............11

*Confederated Bands of Ute Indians v. United States* 330 U.S. 169 (1947)........................................6

*Connecticut Dept. of Income Maintenance v. Heckler*, 471 U.S. 524 (1985) ..................................11

*Dole v. Odd Fellows Home Endowment Bd.*, 912 F.2d 689 (4th Cir. 1990) ............................12, 13

*Jacobs v. New York Foundling Hospital*, 577 F.3d 93 (2d Cir. 2009)..............................................14

*Kitchings v. Fla. United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282 (M.D. Fla. 2005)....................................................................14

*Lott v. Rigby*, 746 F. Supp. 1084 (N.D. Ga. 1990)....................................................................13

*Marshall v. Sunshine & Leisure, Inc.*, 496 F. Supp. 354 (M.D. Fla. 1980)................................14

*Mitchell v. Lublin, McGaughy & Associates*, 358 U.S. 207 (1959)............................................5, 10

v

TABLE OF AUTHORITIES – Continued

Page

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)............7

*Sunrise Group Homes v. Ferguson*, 777 P.2d 553 (Wash. App. 1989) .............................14

*Thomas v. Cohen*, 453 F.3d 657 (6th Cir. 2006).........13

*Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290 (1985) .........................10

*Welding v. Bios Corp.*, 353 F.3d 1214 (10th Cir. 2004).......................................................13


STATUTES

28 U.S.C. §1254(1)....................................1

28 U.S.C. §1331 .......................................1

29 U.S.C. §203(r) .....................................6

29 U.S.C. §203(r)(2)(A) ......................1, 4, 14

29 U.S.C. §203(s) .....................................6

29 U.S.C. §206(a)(1)..................................1

29 U.S.C. §207(a)(1)................................1, 4

42 U.S.C. §671(a)(10)................................9

AS 47.07.020(b)(3)....................................9

AS 47.80.140 ...........................................9


REGULATIONS

7 AAC 100.002(c)(5)(A) .............................9

7 Alaska Admin. Code §43.471.....................2

TABLE OF AUTHORITIES – Continued

Page

29 CFR 779.8 ....................................................................7

42 CFR §435.1009 E ......................................................11

42 CFR §435.1010....................................................4, 9

45 CFR §1356.21(m)(2)................................................9

45 CFR §1356.30(f) .......................................................9

45 CFR §1356.60(c)(2)(vii).........................................9

45 CFR §1356.71(g) ......................................................9

OTHER AUTHORITIES

Department of Labor Field Operations Hand-
   book, §12g02...............................................................7

Department of Labor Field Operations Hand-
   book §12g12.................................................................8

Department of Labor Field Operation Hand-
   book §12g15(b)............................................................6

Department of Labor Field Operations Hand-
   book §25i.......................................................................8

Department of Labor website, www.dol.gov/whd/
   FOH/ ............................................................................. 9

FCSA website http://www.familycenteredservices.
   com/Programs.htm#TFH ........................................6

H.R. 2531, 104th Cong., 2d Sess. (1995)....................10

H.R. 4778, 105th Cong., 2d Sess. (1998)....................10

http://mw4.mw.com/dictionary/grouphome................10

Oxford English Dictionary .....................................4, 10

vii

TABLE OF AUTHORITIES – Continued

Page

Pub. L. No. 89-601, 80 Stat. 830 (1966)....................10

S. 1554, 104th Cong., 2d Sess. (1996)......................10

S. 371, 110th Cong., 1st Sess. (2007) ........................10

## OPINIONS BELOW

The decision of the United States District Court for the District of Alaska granting summary judgment for the plaintiffs is found at Appendix (App.) p. 20. The District Court's Order Re Motion for Reconsideration is at App. 12.

The Ninth Circuit's decision reversing the District Court is at App. 1. The Ninth Circuit denied rehearing and rehearing *en banc* on August 18, 2011, and this order is found at App. 35.

————◆————

## JURISDICTION

The United States District Court for the District of Alaska had jurisdiction pursuant to 28 U.S.C. §1331. This Court has jurisdiction pursuant to review the final judgment of the Court of Appeals pursuant to 28 U.S.C. §1254(1).

————◆————

## STATUTORY PROVISIONS INVOLVED

Fair Labor Standards Act, 29 U.S.C. §§206(a)(1), 207(a)(1). Specifically, §203(r)(2)(A):

[I]n connection with the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such

2

institution, a school for mentally or physically handicapped or gifted children, a preschool, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is operated for profit or not for profit).

———————◆———————

## STATEMENT OF THE CASE

Plaintiffs are married couples who worked as "house parents" in Family Centered Services of Alaska's (FCSA) Homes. FCSA is a non-profit corporation. Each home houses up to five children. All the children are "severely emotionally disturbed" as defined by the Alaska law that qualifies the homes for Medicaid funding, 7 Alaska Admin. Code §43.471, and each of the children has at least one diagnosed mental disorder under Axis-I of the current Diagnostic and Statistical Manual of Mental Disorders. The children participate in group therapy conducted by clinicians in the homes and receive other services outside the homes. Plaintiffs are not licensed medical or social service professionals, but the children certainly benefit from the plaintiff's care as house parents. App. 2-3, 7. House parents provide treatment, such as by administering psychotropic medications to the children. App. 27. The house parents work as much as 98 hours a week and are on duty seven days a week, 24 hours a day, for weeks on end.

3

Because of this, Plaintiff Loretta Probert was paid an effective wage of $3.13 an hour.[1]

FCSA advertises that it provides quality residential care to emotionally disturbed children. ER 204. All or nearly all the children that are in therapeutic family homes are on psychotropic medication. In its "Therapeutic Family Home Policy and Procedures Manual," FCSA acknowledges it provides services to the children who are experiencing mental health issues.

> FCSA's Therapeutic Family Homes provide quality residential care to male and female youth ages 6-18 that are experiencing mental health and behavioral issues and are at imminent risk of psychiatric placement outside their community.

Order re: Second Motion for Partial Summary Judgment at Docket 53 (App. 32).

Plaintiffs sued FCSA for overtime pay under the FLSA. After denying Plaintiffs' first motion for partial summary judgment, the district court granted a similar motion for partial summary judgment in their favor, concluding that FCSA through its homes, was operating "an institution primarily engaged in the

---

[1] Loretta Probert worked as a "part-time" houseparent. She was paid $397.26 ($22.07 x 18 hours) per week. This divided by 127 hours (40 hours straight time plus 58 hours x 1.5 to arrive at a straight time rate) puts Loretta at an hourly rate of $3.13. App. 3, n.1. ER 453, 466-469.

4

care of the . . . mentally ill . . . who reside on the premises of such institution," 29 U.S.C. §203(r)(2)(A), and was therefore an enterprise subject to the FLSA's overtime provisions, 29 U.S.C. §207(a)(1). App. 33-34. The district court looked to a federal Medicaid regulation that defined "institution" as "an establishment that furnishes (in single or multiple facilities) food, shelter, and some treatment or services to four or more persons unrelated to the proprietor," 42 CFR §435.1010. The court also relied on FCSA's own website, which described the Homes as "provid[ing] quality residential care to male and female youth ages 6-18 that are experiencing mental health and behavioral issues." Doc. 63, App. 30-32.

The United States Court of Appeals for the Ninth Circuit reversed. It concluded that "the Homes are not covered by that statute because they are not an 'institution primarily engaged in the care of the sick, the aged, mentally ill or defective who reside on the premises of such institution.' 29 U.S.C. §203(r)(2)(A)." App. 2. First, the Ninth Circuit said that the homes are not primarily engaged in providing "care." The court said: "[W]e understand 'care' in this context to include something more like treatment. What the Homes primarily provided, as their name suggests, was a home or a residence." App. 6.

The Ninth Circuit then said that the plaintiffs were not "institutions" as used in the FLSA. The court declared: "Second, the Homes do not appear to us to be 'institutions' as that term is used in this statute." App. 7. The court relied on the Oxford English

Dictionary's definition of "institution" and its reading of the legislative history to support this interpretation. App. 7-9. Because it concluded that plaintiffs neither were providing "care" nor an "institution," the court held that the FLSA does not apply and that its minimum wage overtime provisions were inapplicable.

————◆————

## REASONS FOR GRANTING
## THE WRIT OF CERTIORARI

**I.  THIS COURT SHOULD GRANT CERTIORARI TO RESOLVE A CONFLICT BETWEEN THE NINTH CIRCUIT'S DECISIONS AND THE PRIOR RULINGS OF THIS COURT CONCERNING HOW THE FAIR LABOR STANDARDS ACT SHOULD BE INTERPRETED.**

Throughout the country, in literally every state, there are facilities like those involved in this litigation and this question as to the application of the Fair Labor Standards Act truly has national importance. The Ninth Circuit found that the homes involved in this case were not covered by the FLSA because they were not providing "care" and they were not "institutions."

This Court has declared that the FLSA is to be liberally construed to apply to the furthest reaches consistent with Congressional direction. *Mitchell v. Lublin, McGaughy & Associates*, 358 U.S. 207, 211 (1959).

The Ninth Circuit flouted this by substituting the word "treatment" for "care" in 29 U.S.C. §203(r) and (s). The court said that plaintiffs were not covered by the Act because they were not medical or service professionals and thus not primarily focused on providing the type of "care that service professionals provide." App. 7.

There is nothing in the FLSA or its legislative history that suggests such a limit. By any understanding of the word "care," and certainly by an expansive reading of that term, the plaintiffs' homes are providing domiciliary care for severely emotionally disturbed children. In fact, even the defendants' own website describes the homes as providing "care." It states: "Each Home is supervised by live-in parents who are responsible for the overall *care* of up to five children." FCSA website http://www.familycentered services.com/Programs.htm#TFH (last viewed Nov. 13, 2011) (emphasis added).

A definition of "care" is found in the Department of Labor Field Operation Handbook (FOH) §12g15(b): "[C]are therein is defined as domiciliary, meaning to look after the residents and provide routine custodial care." This is exactly what plaintiffs were providing.

This Court has commanded that "we cannot, under the guise of interpretation . . . rewrite congressional acts." *Confederated Bands of Ute Indians v. United States* 330 U.S. 169, 179 (1947). But in redefining "care" to mean "treatment," this is exactly what the Ninth Circuit did.

Similarly, the Ninth Circuit interpreted "institution" in a manner at odds with this Court's requirement that the FLSA be expansively interpreted and with this Court's repeated command that judges give great deference to interpretation of statutes by federal agencies.

In *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), this Court emphasized the need for such deference, specifically to the Department of Labor's Field Operations Handbook. The Court explained: "The Field Operations Handbook provides administrative guidance and is entitled to great weight. The well-reasoned views of the agencies implementing a statute "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Id*. at 139-140.[2]

The Department of Labor Field Operations Handbook, §12g02, defines "institutions" in a way that clearly includes plaintiff's homes:

---

[2]  Moreover. *Skidmore* is codified at 29 CFR 779.8:

On matters which have not been determined by the courts, it is necessary for the Secretary of Labor and the Administrator to reach conclusions as to the meaning and the application of provisions of the law in order to carry out their responsibilities of administration and enforcement (Skidmore v. Swift, 323 U.S. 134) . . . As included in the regulations in this part, these interpretations are believed to express the intent of the law as reflected in its provisions as constructed by the courts and evidenced by its legislative history. 29 CFR §779.8.

*Institutions primarily engaged in the care of the sick, the aged, the mentally ill or defective residing on the premises defined.*

Such an institution (other than a hospital) is an institution primarily engaged in (i.e., more that [sic] 50% of the income is attributable to) providing *domiciliary care* to individuals who reside on the premises and who, if suffering from physical or *mental infirmity or sickness of any kind*, will require only general treatment or observation of a less critical nature than that provided by a hospital. *Such institutions are not limited to nursing homes*, whether licensed or not licensed, *but include those institutions* generally known as nursing homes, rest homes, convalescent homes, homes for the elderly and infirm, *and the like.* (emphasis added)

*See also* Field Operations Handbook §25i and §12g12. (§12g12 App. 38, Institutions for Care of the Emotionally Disturbed).[3]

---

[3] The Ninth Circuit opinion said that the Department of Labor website says the Field Operations Handbook is not used as a device for establishing interpretive policy. App. 10. Quite the contrary, the Department of Labor website declares: "The Field Operations Handbook (FOH) is an operations manual that provides Wage and Hour Division (WHD) investigators and staff with interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance. The FOH was developed by the WHD under the general authority to administer laws that the agency is charged with enforcing. The FOH reflects policies established through changes in legislation, regulations, court decisions and the decisions and

(Continued on following page)

Numerous provisions in federal and state statutes and regulations by context demonstrate that "institutions" or "child care institutions" include group homes providing domiciliary care. *See*, *e.g.*, 42 U.S.C. §671(a)(10), AS 47.07.020(b)(3), 7 AAC 100.002(c)(5)(A), 45 CFR §1356.71(g), 45 CFR §1356.60(c)(2)(vii), 45 CFR §1356.30(f), 45 CFR §1356.21(m)(2) (referring to childcare "institutions" in a way that includes homes.") Similarly, federal Medicaid regulations that define "institution" as "an establishment that furnishes (in single or multiple facilities) food, shelter, and some treatment or services to four or more persons unrelated to the proprietor," 42 CFR §435.1010.

Alaska law, too, treats these homes as "institutions." FCSA has licenses for these homes and these licenses indicate that they are subject to all rules, administrative code, and regulations (ER 383). Under Alaska law, a Certificate of Need is required prior to the licensing of any residential facility if the facility costs more than $1 million to construct. AS 47.80.140.

The Ninth Circuit bases its narrow definition of "institution" on the Oxford English Dictionary and the legislative history of the FLSA. App. 8-9. As for the former, it is notable that the court used the 1933 edition (reprinted in 1961) for its definition and its conclusion that group homes are not institutions.

---

opinions of WHD administrator." www.dol.gov/whd/FOH/ (last viewed 11-08-2011).

App. 8. But group homes did not come into existence until the late 1960s and '70s. The first known use of a group home was in 1967. *See* http://mw4.mw.com/dictionary/grouphome (last visited 7/14/2011). It is hardly surprising that group home is not found under the definition of institution in the edition of a dictionary from a foreign county that was written before the advent of group homes. Nor should a definition in the Oxford English Dictionary matter when the Department of Labor's Field Operations Handbook and other federal regulations clearly treat homes as "institutions" in situations like this.

As for the legislative history, the Ninth Circuit erred because it ignored the fact that Congress expressly decided to include institutions for the emotionally disturbed in the FLSA, Pub. L. No. 89-601, 80 Stat. 830 (1966), and on four subsequent occasions expressly rejected an effort to create a house parent exception to the Act. *See* H.R. 2531, 104th Cong., 2d Sess. (1995); S. 1554, 104th Cong., 2d Sess. (1996); H.R. 4778, 105th Cong., 2d Sess. (1998); S. 371, 110th Cong., 1st Sess. (2007).

Thus, the Ninth Circuit's narrow definition of "care" and "institutions" directly conflicts with many prior decisions of this Court commanding that the FLSA be construed "liberally to apply to the furthest reaches consistent with congressional direction." *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 296 (1985); *Mitchell v. Lublin, McGaughy & Associates*, 358 U.S. 207, 211 (1959).

The Ninth Circuit decision also conflicts with this Court's prior rulings defining "institution." In *Connecticut Dept. of Income Maintenance v. Heckler*, 471 U.S. 524 (1985), this Court found that the institution in question was an institution for the treatment of mental diseases and an intermediate care facility, and that an "intermediate care facility" was not mutually exclusive from the term of "institution for the treatment of mental diseases." The Court there used the Department of Health and Human Service's regulation, 42 CFR §435.1009 E, to decide that the primary purpose of the institution was to treat the mentally ill. The Court further said in language exactly on point to this case:

> "We have often noted that the interpretation of an agency charged with the administration of a statute is entitled to substantial deference." *Blum v. Bacon*, 857 U.S. 132, 141 (1982). Moreover, the agency's construction need not be the only reasonable one in order to gain judicial approval. It follows that the secretary was authorized to determine that. . . . ICFs . . . are primarily engaged in the care of the mentally ill. . . . *Heckler* at 531, 532.

This Court should grant certiorari to resolve the conflict between the Ninth Circuit's decision and this Court's command that the FLSA be expansively interpreted and its repeated requirement that courts defer to federal agencies in their interpretation of statutes. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

## II. THIS COURT SHOULD GRANT CER-TIORARI TO RESOLVE AN ISSUE OF NATIONAL IMPORTANCE AND A SPLIT AMONG THE CIRCUITS AS TO THE MEANING OF THE FAIR LABOR STAN-DARDS ACT.

Not surprisingly, the Ninth Circuit's narrow definition of "care" and "institutions" within the FLSA directly conflicts with decisions of several other Circuits.

For example, the Fourth Circuit, in *Dole v. Odd Fellows Home Endowment Bd.*, 912 F.2d 689 (4th Cir. 1990), specifically found that homes like those in this case are "institutions" providing "care" within the meaning of the FLSA. The case involved Odd Fellows Home ("the Home") in Elkins, West Virginia, a home which cares for "Odd Fellows members in good standing who are unable to earn a livelihood due to infirmities, age, or physical affliction, and are without means of support. The Home also provides care for infirm or helpless wives or widows of such members, and helpless children of members." *Id*. at 691. The issue, exactly as in this case, was whether the Federal Labor Standards Act applied to the home. In coming to exactly the opposite conclusion of the Ninth Circuit in this case, the Fourth Circuit explained that "residents are checked regularly, medicines are dispensed, and a physician visits the home at least once a week to see residents in need of a doctor's care. . . . The home is an institution primarily engaged in the care of its sick or aged residents." *Id*. at

694. There is no doubt that this case would have come out differently if it had been litigated in the Fourth Circuit under the *Dole* decision.

Similarly, the Ninth Circuit's decision directly conflicts with the Tenth Circuit's ruling in *Briggs v. Sagers*, 424 F.2d 130, 131 (10th Cir. 1970), which held that the FLSA applies to the "American Forks Training School, a Utah-owned institution for the custody and treatment of mentally deficient children." The School was like the homes in this case in that it was residential and housed children with mental and emotional disabilities.

In a more recent decision, the Tenth Circuit, found that the provisions of the FLSA applied to the provision of care in homes. *Welding v. Bios Corp.,* 353 F.3d 1214 (10th Cir. 2004). The court explained that "[i]n evaluating where each living unit lies on the continuum, we conclude that the key inquiries are who has ultimate management control of the living unit and whether the living unit is maintained primarily to facilitate the provision of assistive services." *Bios* at 1219. Under the criteria articulated in this case, plaintiffs' homes are institutions covered by the FLSA.

Contrary to the Ninth Circuit's conclusion, many other courts have found that group homes are "institutions" within the meaning of the FLSA. *See*, *e.g.*, *Lott v. Rigby*, 746 F. Supp. 1084 (N.D. Ga. 1990) (*see* esp. n.6: state funded "Group Residence" is clearly a type of institution and not a private home); *Thomas v. Cohen*, 453 F.3d 657 (6th Cir. 2006); *Burke v. Oxford*

*House of Oregon, Chapter V*, 103 P.3d 1184 (Oregon 2004); *Sunrise Group Homes v. Ferguson*, 777 P.2d 553 (Wash. App. 1989); *Marshall v. Sunshine & Leisure, Inc.*, 496 F. Supp. 354, 357-58 (M.D. Fla. 1980); *Bowrin v. Catholic Guardian Society*, 417 F. Supp. 2d 449 (S.D.N.Y. 2006) (ACT homes covered by FLSA, at 464.); *Bailey v. Youth Villages*, 2009 WL 104564 (W.D. Tenn. 2009). *But see Jacobs v. New York Foundling Hospital*, 577 F.3d 93 (2d Cir. 2009) (finding no FLSA coverage because the Foundling home only took care of "regular" children and not the sick or mentally ill.) *Kitchings v. Fla. United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282 (M.D. Fla. 2005) (emphasizing that the institution should be primarily engaged in the treatment of the mentally ill).

All of these cases illustrate that the issues presented in this case concerning the meaning of §203(r)(2)(A) of the Fair Labor Standards Act frequently arise and that the Ninth Circuit's approach is far narrower than that followed in all Circuit Courts and all District Courts but the *Kitchings* court.

This case would have been decided differently in those other Circuits. This Court should grant review to resolve the conflict between the Ninth Circuit's decision and those of other courts across the country on this question of national importance.

———————◆———————

## CONCLUSION

For these reasons, the petition for a writ of certiorari should be granted.

Respectfully submitted,

KENNETH L. COVELL
LAW OFFICES OF
  KENNETH L. COVELL
712 8th Avenue
Fairbanks, AK 99701
(907) 452-4377

ERWIN CHEMERINSKY
(*Counsel of Record*)
UNIVERSITY OF CALIFORNIA,
  IRVINE
SCHOOL OF LAW
401 E. Peltason
Irvine, CA 92697
(949) 824-7722
EChemerinsky@law.uci.edu

*Attorneys for Petitioners Robert Probert, et al.*

App. 1

651 F.3d 1007

United States Court of Appeals,
Ninth Circuit.
Robert PROBERT; Loretta Probert,
Plaintiffs-Appellees,
Gene Grissom; Sandra Grissom; Donna Grimes;
Kenneth McDaniels; John Grimes; Leona
McDaniels; Eric Cloninger; Debra Cloninger,
Plaintiff-Intervenors-Appellees,
v.
FAMILY CENTERED SERVICES OF ALASKA,
INC.; John W. Regitano; Kathy Cannoe;
Susan Dale; Lonnie Hovde; Deborah L. Coxon,
Defendants-Appellants.

No. 09-35703.
Argued and Submitted July 26, 2010.
Filed June 23, 2011.

\*      \*      \*

Kenneth L. Covell (argued), Law Offices of Kenneth L.
Covell, Fairbanks, AK, for plaintiffs-appellees Loretta
and Robert Probert and plaintiffs-intervenors Debra
and Eric Cloninger, Donna and John Grimes, Gene and
Sandra Grissom, and Kenneth and Leona McDaniels.

Richard D. Monkman (argued), Sonosky, Chambers,
Sachse, Miller & Munson, LLP, Juneau, AK, for
defendants-appellants Family Centered Services of
Alaska, John W. Regitano, Kathy Cannoe, Susan
Dale, Lonnie Hovde, and Deborah L. Coxon.

Appeal from the United States District Court for the
District of Alaska, Ralph R. Beistline, Chief District
Judge, Presiding. D.C. No. 4:07-cv-00030-RRB.

App. 2

Before: MARY M. SCHROEDER, DIARMUID F. O'SCANNLAIN and RICHARD R. CLIFTON, Circuit Judges.

## OPINION

CLIFTON, Circuit Judge:

Defendants Family Centered Services of Alaska ("FCSA") and its officers filed this interlocutory appeal challenging the district court's conclusion that FCSA's Therapeutic Family Homes ("Homes") are covered by the Fair Labor Standards Act ("FLSA") and are subject to its overtime provisions. We conclude that the Homes are not covered by that statute because they are not an "institution primarily engaged in the care of the sick, the aged, mentally ill or defective who reside on the premises of such institution." 29 U.S.C. § 203(r)(2)(A). As a result, we reverse and remand for further proceedings.

## I.    Background

Plaintiffs Loretta and Robert Probert and Plaintiffs-Intervenors Debra and Eric Cloninger, Donna and John Grimes, Gene and Sandra Grissom, and Kenneth and Leona McDaniels are married couples who worked as "house parents" in FCSA's Homes. Each Home housed up to five children. All the children were "severely emotionally disturbed" as defined by the Alaska law that qualifies the Homes for Medicaid funding, 7 Alaska Admin. Code § 43.471,

App. 3

and each of the children had at least one diagnosed mental disorder under Axis-I of the current Diagnostic and Statistical Manual of Mental Disorders. The children attended local public schools and participated in other activities away from the Homes. The children participated in group therapy conducted by clinicians in the Homes, but received most of their medical and psychological treatment outside the Homes. Plaintiffs were not licensed medical or social service professionals.

Plaintiffs sued FCSA for overtime pay under the FLSA.[1] After denying Plaintiffs' first motion for partial summary judgment, the district court granted a similar motion for partial summary judgment in their favor, concluding that FCSA through its Homes, was operating "'an institution primarily engaged in the care of the . . . mentally ill or defective who reside on the premises of such institution,'" 29 U.S.C. § 203(r)(2)(A), and was therefore an enterprise subject

---

[1] FCSA's contracts with the house parents stated the annual compensation and said that the house parents were exempt from overtime compensation. Probert's contract required him to work 40 hours per week, and Loretta Probert's required her to work at least 10 hours per week. But Plaintiffs claim that full-time and part-time house parents alike frequently worked as many as 98 hours per week. FCSA disputes the number of hours each Plaintiff worked, but that dispute is not before us on this interlocutory appeal. The parties also debate whether the house parents were salaried employees, but that question is not before us on appeal, either. We determine only whether the district court correctly determined that FCSA's homes qualified as an "enterprise" subject to the FLSA's over-time provision.

App. 4

to the FLSA's overtime provisions, *id.* § 207(a)(1). The district court observed that the FLSA does not define "institution." As an analogy, the district court looked to a federal Medicaid regulation, not directly applicable to this situation, that defined "institution" as "an establishment that furnishes (in single or multiple facilities) food, shelter, and some treatment or services to four or more persons unrelated to the proprietor," 42 C.F.R. § 435.1010, and concluded that the "Homes (either individually or as a group) could be considered an 'institution.'" The court also relied on FCSA's own website, which described the Homes as "provid[ing] quality residential care to male and female youth ages 6-18 that are experiencing mental health and behavioral issues and are at imminent risk of psychiatric placement outside of their community."

After denying FCSA's motion for reconsideration, the district court certified both orders for an immediate appeal under 28 U.S.C. § 1292(b). We granted FCSA permission to appeal.

## II.  Discussion

The FLSA sets a national minimum wage, 29 U.S.C. § 206(a)(1), and requires overtime pay of one and a half times an employee's hourly wage for every hour worked over 40 hours in a week. *Id.* § 207(a)(1). With certain exceptions not relevant to this case, *see id.* § 213, these requirements apply both on an individual basis to any employee "who in any workweek is

App. 5

engaged in commerce or in the production of goods for commerce," and on an enterprise-wide basis to all employees "employed in an enterprise engaged in commerce or in the production of goods for commerce." *Id.* §§ 206(a)(1), 207(a)(1). Because of the use of the terms "commerce" and "enterprise," it was originally understood that these statutes did not cover employees of most non-profit organizations.

In 1966, however, Congress amended the FLSA to bring certain kinds of non-profit institutions within the scope of "enterprise" coverage. Under the relevant amendment, "'[e]nterprise' means . . . activities performed . . . by any person or persons for a common business purpose." *Id.* § 203(r)(1). Activities are deemed to have a business purpose when they are performed

> in connection with the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, a preschool, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is operated for profit or not for profit).

*Id.* § 203(r)(2)(A). The amendment further provides that such an institution qualifies as an "[e]nterprise engaged in commerce or in the production of goods for commerce." *Id.* § 203(s)(1)(B). Institutions covered by

App. 6

these provisions are therefore subject to FLSA's minimum wage and overtime requirements even if they are operated not for profit.

Plaintiffs argue that each of the FCSA Homes in which they worked is covered by the statute as "an institution primarily engaged in the care of . . . the mentally ill . . . who reside on the premises of such institution."[2] The FLSA is a remedial statute that is "to be liberally construed to apply to the furthest reaches consistent with Congressional direction." *Dent v. Cox Communications Las Vegas, Inc.,* 502 F.3d 1141, 1146 (9th Cir.2007) (internal quotation marks omitted); *see also* 29 C.F.R. § 779.101 ("An employer who claims an exemption under the Act has the burden of showing that it applies."). Nonetheless, we conclude that the language of the statute does not cover the FCSA Homes, for two primary reasons.

The first reason is that the Homes were not "primarily engaged" in providing "care," as that term is used in the statute. The statute refers to "care" in relation to groups with special needs, namely "the sick, the aged, the mentally ill or defective." 29 U.S.C. § 203(r)(2)(A). As such, we understand "care" in this context to include something more like treatment. What the Homes primarily provided, as their name suggests, was a home or a residence. As noted above, the children attended school, engaged in

_____

[2] We assume for the purposes of this appeal that residents of the Homes qualify as "mentally ill."

activities, and received most of their medical and psychological treatment from medical and mental health professionals outside the Homes. Obviously, for children a home should be more than simply a place to live, and the children presumably benefitted from Plaintiffs' "care" as house parents. But Plaintiffs were not medical or social service professionals and were not primarily focused on providing the type of "care" that those professionals provide.

The language of the statute clearly suggests a covered institution must provide more than the general care of a residence. In addition to requiring that the institution's patrons "reside on the premises of [the] institution," the institution must provide "care" of the type that is provided to "the sick, the aged, the mentally ill or defective." If residing on the premises were enough by itself to define the given premises as covered by the statute, then the requirement that the institution be "primarily engaged" in the "care" of the individuals residing there would be superfluous. We are to avoid interpreting a statute in that manner. *See TRW Inc. v. Andrews,* 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal quotation marks omitted)).

Second, the Homes do not appear to us to be "institutions" as that term is used in this statute. Around the time the 1966 amendment was drafted,

App. 8

the Oxford English Dictionary offered the following definition of "institution":

> An establishment, organization, or association, instituted for the promotion of some object, esp. one of public or general utility, religious, charitable, educational, etc., e.g. a church, school, college, hospital, asylum, reformatory, mission, or the like; as a literary and philosophical institution, a deaf and dumb institution, the Royal National Lifeboat Institution, the Royal Masonic Benevolent Institution . . . , the Railway Benevolent Institution, etc.

5 Oxford English Dictionary 354 (1933, reprinted 1961). The FCSA Homes do not fit well within that definition.

Nor do the Homes fit well with the neighboring parts of the relevant statute. They are not very much like

> a hospital, . . . , a school for mentally or physically handicapped or gifted children, a preschool, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is operated for profit or not for profit).

29 U.S.C. § 203(r)(2)(A).

In ascertaining the meaning of an ambiguous term, "we may use canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent." *Ileto v. Glock, Inc.,* 565 F.3d

1126, 1133 (9th Cir.2009) (internal quotation marks omitted). One of those canons of statutory construction is *noscitur a sociis,* which counsels that an ambiguous term "is given more precise content by the neighboring words with which it is associated." *United States v. Williams,* 553 U.S. 285, 294, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). Thus, our interpretation of "institution" should be informed by the other establishments listed in that statute, namely hospitals and schools. Those facilities are staffed by professionals and provide more comprehensive medical, psychological, or educational programs, usually for a much larger population. The FCSA Homes, run by two house parents and housing no more than five children each, seem by comparison out of place. We conclude, therefore, that they are not meant to be included within that list of establishments.

The legislative history of the 1966 amendment to the FLSA does not point to a different conclusion. The Senate report, for example, frequently refers to "hospitals and related institutions" as shorthand for the "enterprises," other than schools, covered by § 203(r)(2)(A). *See* S.Rep. No. 89-1487, at 5, 8, 13, 25, 26, 28, 1966 U.S.C.C.A.N. 3002 (1966). The report never mentions foster homes or group homes or any other facility similar to the FCSA Homes.

Plaintiffs argue that we should interpret § 203(r)(2)(A) to include FCSA's Homes because guidance from the Department of Labor indicates that a reference to "nursing homes" in that provision should be interpreted broadly. *See* Dep't of Labor, Wage and

App. 10

Hour Division, Field Operations Handbook (FOH), ch. 12, § 12g02 ("[Institutions primarily engaged in the care of the aged] are not limited to nursing homes, . . . but include those institutions generally known as nursing homes, rest homes, convalescent homes, homes for the elderly and infirm, and the like."). Plaintiffs argue that by the same reasoning, "institution primarily engaged in the care of the . . . mentally ill" should be interpreted broadly to include FCSA's Homes. We disagree.

The FCSA Homes are very different from nursing homes and the related facilities listed in the handbook. The children who live at the FCSA Homes spend much of their time, perhaps a majority of their waking hours, elsewhere. They leave the Homes to attend school, participate in activities, and receive medical and psychological treatment. Residents of nursing homes are not necessarily confined completely to those facilities, but the expectation is that the vast majority of their time is spent there. Those facilities are also staffed with professionals, not simply house parents, and residents may be expected to receive substantially greater "care" in those facilities.

Furthermore, it does not appear to us that the FOH is a proper source of interpretive guidance. *See Christensen v. Harris Cnty.,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). The handbook itself says that it "is not used as a device for establishing interpretative policy." FOH, Foreword at 1,

App. 11

*available at* http://www.dol.gov/whd/FOH/index.htm
(last checked June 15, 2011).

## III. Conclusion

We conclude, therefore, that the Homes operated
by FCSA are not covered by the overtime provisions
of the FLSA. We reverse the district court's interloc-
utory order granting partial summary judgment and
remand for further proceedings consistent with this
opinion.

**REVERSED** and **REMANDED**.

\*      \*      \*

App. 12

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ROBERT PROBERT, LORETTA E. PROBERT, GENE GRISSOM, SANDRA GRISSOM, and others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>FAMILY CENTERED SERVICES OF ALASKA, INC., and DOES I to X (Managerial Employees Jointly Liable),<br><br>        Defendants. | Case No.<br>  4:07-cv-0030-RRB<br><br>**ORDER RE MOTION FOR RECONSIDERATION AT DOCKET 68 AND MOTION TO STRIKE AT DOCKET 72**<br><br>(Filed Feb. 26, 2009) |

This matter arises from an employment dispute between Robert and Loretta Probert and their former employer, Family Centered Services of Alaska, Inc. ("FCSA"). The Court granted a motion for summary judgment which was brought on behalf of the Proberts and others similarly situated who have joined in this action. Defendants seek reconsideration of the Court's ruling at Docket 68. Separately, Plaintiffs, at Docket 72, have moved to strike an exhibit to Defendant's motion for reconsideration as irrelevant hearsay that lacks foundation.

App. 13

The threshold issue in this case is whether the Fair Labor Standards Act applies.[1] The FLSA applies in this case if the FCSA is "engaged in the operation of . . . an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution," regardless of whether or not the institution is operated for profit or not for profit.[2] Plaintiffs argue that FCSA is an institution of a type specially designated by Congress to be subject to FLSA protections under 29 U.S.C. §203(r). FCSA argues it is not subject to FLSA because the children who reside in the Therapeutic Family Homes are not "mentally ill or defective." FCSA asserts that children are referred to the family home because they lack a safe and stable home to cope with their problems and foster healthy development.

In sharp contrast to Defendant's assertions, Plaintiffs argue that FCSA's promotional materials and 2008 grant application, together with internal guidelines, *require* that a child be mentally ill and/or severely emotionally disturbed in order to be eligible for placement.[3] Plaintiffs draw on numerous statements by John Regitano, Executive Director of FCSA, to support their argument, including Regitano's statement that the children residing in Therapeutic

---

[1]  29 U.S.C. § 201 et. seq ("FLSA").

[2]  29 U.S.C. § 203(s)(1)(B).

[3]  Docket 35 at 5.

App. 14

Family Homes have Axis I diagnoses and that the children experience "emotional and behavior problems" and that they are at risk of placement in institutions.[4] Plaintiffs further rely on FCSA's own advertising literature and its 2005 Annual Report to show that services provided by FCSA are related to sickness, infirmity, or mental health related issues.[5]

The Court found in its previous order that FCSA is "engaged in the operation of . . . an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution," and that therefore the FLSA applies in this case.[6] The sole issue on reconsideration is whether Plaintiffs met their burden of proof in showing that the children residing in the Therapeutic Family Homes are "sick," or "mentally ill or defective."

Defendant disputed both the authenticity and the relevance of many of the documents relied upon by Plaintiffs.[7] Defendant's Executive Director, John Regitano, stated under oath that children with serious

---

[4]  Docket 53 at 10.

[5]  Docket 53 at 15.

[6]  It is undisputed that the children reside on the premises of the Therapeutic Family Homes. It is also undisputed that the house parents are hired primarily to engage in the care of these children. The Court found that the Therapeutic Family Homes fall under at least one definition of "institution," and the Motion for Reconsideration does not argue otherwise.

[7]  Docket 46 at 4-5.

App. 15

mental illnesses were not admitted into Therapeutic Family Homes. The Court noted that in order to survive summary judgment, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a factfinder to resolve the parties' differing versions of the truth at trial. In light of the exhibits, as well as statements on FCSA's own web site, the Court found that John Regitano's statements amounted to "mere denials" insufficient to overcome summary judgment.[8] In its Motion for Reconsideration, FCSA argues that the Proberts had the ultimate burden of proof, that the FLSA should not be interpreted broadly, and that John Regitano's affidavits created genuine issues of material fact.[9] A third affidavit of John Regitano suggests that both the Mission Statement, as well as the description of the Therapeutic Family Homes on

––––––––––

[8] See www.familycenteredservices.com. Specifically, the Court noted that FCSA's Mission Statement states: "Today the organization provides individualized mental health and substance abuse treatment, and education services to children, young adults, and their families in the least restrictive setting possible." The 2005 Annual Report further boasts: "FCSA has become recognized as a forerunner in the delivery of individualized mental health services," and in the next sentence cites the Therapeutic Family Homes as one of its newest developments, impliedly designed to provide such services. This was followed by the claim that "as the needs of Alaskan children and their families requiring mental health and dual diagnoses services have changed overtime FCSA has continually changed over the years to meet those needs."

[9] Docket 68.

App. 16

its website (and presumably in the exhibits produced
by Plaintiffs), are "outdated." The Mission Statement,
he now argues, was drafted years before the first
Therapeutic Family Home was opened in 2004, and
the description of the Therapeutic Family Homes was
drafted at an "early stage of the development of the
program."[10] Regitano states that the children ***actually***
residing in the Therapeutic Family Homes are **not**
at imminent risk of psychiatric placement outside of
their community, contrary to the plain language on
the web site. Regitano says his statements in the
2005 Annual report reflected "our original vision for
the program, and not the population of children
served in the actual homes as the program developed
in later years."[11]

Regitano states that 26 children received services
in the Therapeutic Family Homes between July 2005

---

[10]  Docket 68, Exhibit C.

[11]  Docket 68, Ex. C. Elsewhere, Defendant argues "[t]his
Court should have determined whether the Therapeutic Family
Homes was an institution primarily engaged in the care of the
mentally ill based upon their actual operations, the actual
services provided, and the mental health status of their actual
residents, and not based upon the contents of Family Centered
Services' website." Docket 76. Supplemental citations filed at
Docket 78 further support this argument, noting that "a compa-
ny's website is a marketing tool. Often, marketing material is
full of imprecise puffery that no one should take at face value."
However, because Defendants do not dispute that the state-
ments on the web site were accurate at the time they were
published, the Court need not address this argument. The Court
notes that other areas of the web site are updated through 2009.

App. 17

and June 2007, and their diagnoses included: Reactive Attachment Disorder, Attention-Deficit/ Hyperactivity Disorder, Major Depressive Disorder, Posttraumatic Stress Disorder, Oppositional Defiant Disorder, Conduct Disorder, Sexual Abuse of a Child, Victim, and Adjustment Disorder.[12] Regitano argues that none of these diagnoses were recognized under the first edition of the Diagnostic and Statistical Manual for Mental Disorders (DSM-I), which was published in 1952 and used in 1966. This was the DSM in place when the FLSA was conceived and contained approximately 100 disorders. In contrast, the DSM-IV lists more than 300 disorders and has been criticized as "medicalizing common life challenges and adolescent behaviors."[13]

Plaintiffs oppose reconsideration, arguing that the motion merely reiterates earlier arguments and offers only "semantics and loose reasoning" to avoid its overtime obligation. Furthermore, Plaintiffs complain that any argument regarding changes in the DSM is a new argument and not subject to reconsideration.[14] In response to the argument that the information in the exhibits and web site is "outdated," Plaintiffs note that as recently as 2008, FCSA sought a grant for a quarter million dollars to build therapeutic youth homes, which indicated that the homes

_____

[12] Docket 68, Ex. C.

[13] Docket 68 at 3.

[14] Docket 79.

App. 18

were for children "who are experiencing some form of mental health illness, often combined with substance abuse and at risk of psychiatric placement outside their community."[15]

According to the reasoning offered by FCSA and John Regitano, despite the Mission Statement and the original stated purpose of the Therapeutic Family Homes, the FLSA should not be applied to house parents in light of the nature of the actual children residing in the homes. If the Court followed this reasoning to its logical conclusion, it could reach a different result for each set of house parents involved, because some of the homes may have had more "mentally ill" children than others. Indeed, whether or not the FLSA applied, under this reasoning, could change regarding each individual home every time the residents of that home changed. The Court doubts that the FLSA was intended to be applied in such a manner.

In any event, the Court is not persuaded that the diagnoses listed by John Regitano do not qualify as "sick" or "mentally ill or defective" as required by the FLSA. The 26 children identified by Regitano suffer from a number of "disorders," many of which are identified in the DSM-IV. Defendants engage in an unsuccessful semantics argument by trying to state that the disorders do not fall under "sick" or "mentally ill or defective" under the FLSA.

_____

[15] See Docket 53, Exhibit 8.

App. 19

The Court finds that Defendant, through its Therapeutic Family Homes, is clearly "engaged in the operation of . . . an institution primarily engaged in the care of the sick, . . . mentally ill or defective who reside on the premises of such institution." 29 U.S.C. §203(r). Accordingly, Defendant is subject to the overtime provisions of the Fair Labor Standards Act.

Based on the foregoing, the Motion for Reconsideration at **Docket 68** is **DENIED** and the Motions to Strike at **Dockets 80 and 82** are **DENIED AS MOOT**.

**IT IS SO ORDERED.**

ENTERED this 26th day of February, 2009.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

App. 20

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ROBERT PROBERT, LORETTA E. PROBERT, GENE GRISSOM, SANDRA GRISSOM, and others similarly situated,<br><br>     Plaintiffs,<br><br>vs.<br><br>FAMILY CENTERED SERVICES OF ALASKA, INC., and DOES I to X (Managerial Employees Jointly Liable),<br><br>     Defendants. | Case No. 4:07-cv-0030-RRB<br><br>**ORDER RE SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AT DOCKET 53**<br><br>(Filed Jan. 22, 2009) |

## I.   INTRODUCTION

Plaintiffs Robert and Loretta Probert previously filed a Motion for Partial Summary Judgment seeking determination of liability only at Docket 9. The Court denied the motion at Docket 50. Now, the Proberts have filed a Second Motion for Partial Summary Judgment at Dockets 53, which has been fully briefed. The motion was brought on behalf of the Proberts and others similarly situated who have joined in this action.[1] A hearing was requested and

---

[1] Specifically, Donna and John Grimes, and Gene and Sandra Grissom. See Dockets 7, 8, 14 & 15.

was held on January 9, 2009, during which the Defendant orally requested summary judgment in their favor. The Court now enters the following order.

## II.   STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing that there is no genuine dispute as to material fact.[2] The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[3] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[4] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[5] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to

_____

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[3] *Id.* at 323-325.

[4] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986).

[5] *Id.* at 255.

App. 22

require a fact-finder to resolve the parties' differing versions of the truth at trial.[6]

## III.  BACKGROUND

This matter arises from an employment dispute between Robert and Loretta Probert and their former employer, Family Centered Services of Alaska, Inc. ("FCSA"). The background is summarized at Docket 50. The dispute revolves around the Proberts' payment as house parents in a FCSA family home. The Proberts argue that they were entitled to overtime payment under the Federal Fair Labor Standards Act and seek reimbursement for past unpaid overtime wages. FCSA alleges that Robert and Loretta Probert were salaried employees, and that the Fair Labor Standards Act does not apply.

## IV.  DISCUSSION

### A.  Fair Labor Standards Act – 29 U.S.C. § 201 et. seq ("FLSA")

The FLSA was established to regulate industries engaged in commerce or in the production of goods for commerce in order to maintain the "minimum standard of living necessary for health, efficiency, and general well-being of workers. . . ."[7] Section 207 established the maximum hours employees may work

---

[6]  *Id.* at 248-49.

[7]  29 U.S.C. § 202.

under the Act. Pursuant to §207, an employer is subject to the FLSA's maximum hours provision if either of two conditions exist: (1) the employee is engaged in commerce or in the production of goods for commerce, or (2) the employee is employed by an *enterprise* engaged in commerce or in the production of goods for commerce.

An "enterprise engaged in commerce or in the production of goods for commerce" includes an employer that is "engaged in the operation of . . . an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution," regardless of whether or not the institution is operated for profit or not for profit.[8] The FLSA does not define "institution" or "mentally ill." Once it is established that the FLSA applies, Section 213 establishes numerous exemptions.

## B.  Enterprise Coverage

Plaintiffs assert coverage under the "enterprise" theory, arguing that FCSA is an institution of a type specially designated by Congress to be subject to FLSA protections under 29 U.S.C. §203(r), because it is "engaged in the operation of . . . an institution primarily engaged in the care of the . . . mentally ill

---

[8]  29 U.S.C. § 203(s)(1)(B).

or defective who reside on the premises of such institution."

FCSA argues it is not subject to FLSA. Specifically, FCSA argues that it is a non-profit organization that does not engage in interstate commerce for any business purpose, that all of the children in the therapeutic family homes are residents of the state of Alaska, and that the homes are not "institutions" and the children are not "mentally ill or defective." The homes are licensed as a "residential child care facility," not a mental institution or residential psychiatric treatment center. While many of the children are diagnosed with emotional and/or behavioral problems, they are not suffering from severe mental illnesses, nor do they require institutionalization. FCSA asserts that children are referred to the family home because they lack a safe and stable home to cope with their problems and foster healthy development.

In sharp contrast to Defendant's assertions, Plaintiffs argue that FCSA's promotional materials and grant application, together with internal guidelines, *require* that a child be mentally ill and/or severely emotionally disturbed in order to be eligible for placement.[9]

In the previous Order at Docket 50, the Court noted that although the determination of "enterprise

---

[9] Docket 35 at 5.

coverage" under the FLSA is a question of law, it must be resolved on the facts of each case.[10] The Court found it could not determine if the FLSA applies to this matter absent clear resolution of the mental status of the children involved, and that the record before the Court was, at best, contradictory. Accordingly, the Motion for Partial Summary Judgment at Docket 9 was denied without prejudice.

In their renewed Motion for Partial Summary Judgment at Docket 53, Plaintiffs broaden their argument, seeking application of the FLSA because the children housed in the family homes are "admittedly sick, defective, or in need of care in some way." They argue that "mental illness is not required to trigger 29 U.S.C. §203(r) and (s). What is required is serving those who require care because of any infirmity, when the care required is less than that requiring institutionalization in a hospital."[11] There is no definition of "sick" or "defective" in the statute. Plaintiffs argue that "this court's duty [is] to interpret the statute in light of its intent, history, purpose and structure."[12]

In support of their interpretation of the statute, Plaintiffs rely on the Wage and Hour Division's (WHD's) Field Operations Handbook (FOH),

---

[10] *Donovan v. Weber,* 723 F.2d 1388, 1392 (8th Cir. 1984).

[11] Docket 53 at 3.

[12] Docket 53 at 9, citing *Resident Councils v. Leavitt*, 500 F.3d 1025, 1031 (9th Cir. 2007).

an operations manual that provides WHD investi-
gators and staff with interpretations of statutory pro-
visions, procedures for conducting investigations,
and general administrative guidance. The FOH states
that 29 USC §203 applies to:

> I]ndividuals who reside on the premises and
> who, **if suffering from physical or mental
> infirmity or sickness of any kind**, will re-
> quire only general treatment and observa-
> tions of a less critical nature than that
> provided by a hospital. Such institutions are
> not limited to nursing homes, . . . but include
> those institutions generally known as nurs-
> ing homes, rest homes, convalescent homes,
> homes for the elderly and infirm, and the
> like.[13]

Plaintiffs observe a similarity between the insti-
tutions described in the FOH and the Therapeutic
Family Homes, arguing that the children admitted to
the Therapeutic Family Homes have a physical or
mental infirmity and require only general treatment
and observation of a less critical nature than supplied
by a hospital. They argue that a Therapeutic Family
Home is a home for the "infirm and/or the like."

Plaintiffs draw on numerous statements by John
Regitano, Executive Director of FCSA, to support their
argument that FCSA is subject to the Fair Labor
Standards Act, including Regitano's statement that

---

[13] Docket 53, citing FOH 12g02 (emphasis added).

the children residing in therapeutic family homes have Axis I diagnoses, and that the children experience "emotional and behavior problems," and that they are at risk of placement in institutions.[14] Plaintiffs further rely on FCSA's own advertising literature and its 2005 Annual Report to show that services provided by FCSA are related to sickness, infirmity, or mental health related issues.[15]

Plaintiffs also rely on statutory construction to support their argument. They argue that the plain meaning of the statutory language, read in conjunction with the FOH, yields the conclusion that the Therapeutic Family Homes are covered by the FLSA:

> Examine FCSA's Therapeutic Family Home's purpose, the nature of the patients it serves, the type of care it provides, and the number of sick, infirm and/or mentally ill or severely emotionally disturbed children residing on the premises with a mental health diagnosis from the DSM-IV, AXIS I. (Regitano I, ¶10) Taken together with the fact that at least some, and perhaps many, children are receiving psychotropic medications, there is no other reasonable interpretation but that FCSA is primarily engaged in the care of the sick, infirm, defective, mentally ill, severely

---

[14] Docket 53 at 10.

[15] Docket 53 at 15.

emotionally disturbed, or the like (as interpreted in the FOH).[16]

In response, Defendant argues that the FOH provides the following relevant definition for application of 29 U.S.C. § 203(r)-(s):

> **Institutions for neglected and dependent children.** Private nonprofit institutions providing care for neglected and dependent children are **not** covered by the enterprise provisions of the FLSA, provided that such institution is not operated in conjunction with a hospital, covered institution, or school within the meaning of Secs 3(r) and 3(s) of the Act. However, there may be employees who are covered on an "individual" bases.

FOH 12g18 (emphasis added). Accordingly, argues Defendant, under the FLSA, regulations, FOH, and case law, the children residing in Therapeutic Family Homes were not "the sick, the aged, the mentally ill or defective," and the Therapeutic Family Homes were not "institutions" primarily caring for "the sick, the aged, the mentally ill or defective." According to FOH 12g18, 29 U.S.C. § 203(r)-(s) does not cover nonprofit organizations providing care to neglected or dependent children.

---

[16]  Docket 53 at 16-17.

App. 29

## V.   ANALYSIS

This is a matter of first impression in this Circuit. Plaintiffs' argument rests on the enterprise analysis. An "enterprise engaged in commerce or in the production of goods for commerce" includes an employer that is "engaged in the operation of . . . an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution," regardless of whether or not the institution is operated for profit or not for profit.[17]

In order to survive summary judgment, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[18]

It is undisputed that the children reside on the premises of the Therapeutic Family Homes. It is also undisputed that the house parents are hired primarily to engage in the care of these children.[19] The only issues that remain, therefore, are whether the Therapeutic Family Homes qualify as an "institution," and whether the children are "sick," "mentally ill" or "defective."

---

[17]  29 U.S.C. § 203(s)(1)(B).

[18]  *Id.* at 248-49.

[19]  "No child is allowed to be left unsupervised in a Therapeutic Family Home." Docket 53, Exhibit 3 at 2.

App. 30

The FLSA does not define "institution." Defendant suggests that the definition of "institution for mental diseases" in federal Medicaid regulations should be considered. Under those regulations, "institution for mental diseases" is defined as "a hospital, nursing facility, or other institution of more than 16 beds. . . ." 42 C.F.R. § 435.1010. Because the Therapeutic Family Homes house only five children, Defendant suggests that the Homes should not be considered an "institution" under the FLSA. However, § 435.1010 separately defines "Institution" as "an establishment that furnishes (in single or multiple facilities) food, shelter, and some treatment or services to four or more persons unrelated to the proprietor." Accordingly, under the Medicaid regulations, the Therapeutic Family Homes (either individually or as a group) could be considered an "institution."

The only remaining issue is whether the children are "sick," "mentally ill," or "defective." In considering the Motion at Docket 53, the Court has revisited the pleadings and exhibits associated with the first Motion for Partial Summary Judgment at Docket 9.

In earlier pleadings, Defendant disputed both the authenticity and the relevance of many of the documents relied upon by Plaintiffs.[20] Defendant complained that Plaintiffs failed to distinguish those exhibits which pertain to the therapeutic family homes, versus FCSA's other programs and services.

---

[20] Docket 46 at 4-5.

App. 31

In addition, several of the exhibits are dated as early as 1998, before FCSA opened its therapeutic family homes program in 2003, and even the 2005 manual cited by Plaintiffs pre-dates the Plaintiffs' 2006-07 employment. Defendant argued that some of the documents were incomplete, and other exhibits combine pages from multiple documents. Defendant's Executive Director, John Regitano, stated under oath that children with serious mental illnesses were not admitted into therapeutic family homes.

Based on the conflicting information from Plaintiffs and Defendant, the Court found in its prior order that "the mental status of the children housed in FCSA's therapeutic family homes is a genuine issue of material fact. The Court cannot determine if the FLSA applies to this matter absent clear resolution of this issue. The record before the Court is, at best, contradictory."

Upon further review of the exhibits as well as review of Defendant's current web site, www.family centeredservices.com, the Court concludes that Defendant's Therapeutic Family Homes are "primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises." Under the heading "Mission," Defendant's web site reads as follows:

> Family Centered Services of Alaska (FCSA) is a nationally accredited nonprofit 501(c)(3) corporation founded in 1989 and managed by a nine member board of directors. The original founders of the organization were

App. 32

community members with a diverse range of professional backgrounds committed to helping children with a wide spectrum of mental health disabilities. Today the organization provides individualized mental health and substance abuse treatment, and education services to children, young adults, and their families in the least restrictive setting possible.

The Therapeutic Family Homes are described by Defendant as follows:

FCSA's Therapeutic Family Homes provide quality residential care to male and female youth ages 6-18 **that are experiencing mental health and behavioral issues and are at imminent risk of psychiatric placement outside of their community**. The family atmosphere of the homes help children avoid the stigmatization that often accompanies youth living in an institutional setting. The homes are supervised by dedicated live-in parents who provide unconditional therapeutic care and supervision for up to five youth per home.

Elsewhere, the site indicates that the Therapeutic Family Homes program "uniquely addresses the needs of Alaskan youth by providing services far beyond mere residential placement. . . ." The most current "Annual Report" found on Defendant's web site is dated 2005. This report contains a letter from the

App. 33

Executive Director, John Regitano, which stated in part:

> Within our area of expertise, FCSA continued to be an innovator in the development of new ways to address some of the many unmet needs of **mental health consumers** in Alaska in a cost effective quality manner. . . . This current year FCSA took the initiative to expand the number of **residential beds** available for children to help prevent them from leaving Alaska to receive service and because of those efforts we were able to double the number of beds available for children in the community of Fairbanks.

The Annual Report further boasts: "FCSA has become recognized as a forerunner in the delivery of individualized mental health services," and in the next sentence cites the Therapeutic Family Homes as one of its newest developments, impliedly designed to provide such services. This was followed by the claim that "as the needs of Alaskan children and their families requiring mental health and dual diagnoses services have changed overtime FCSA has continually changed over the years to meet those needs."

Despite the affidavits stating otherwise, which amount to nothing more than "mere denials," the Court finds that Defendant, through its Therapeutic Family Homes, is clearly "engaged in the operation of . . . an institution primarily engaged in the care of the . . . mentally ill or defective who reside on the premises of such institution." 29 U.S.C. §203(r).

App. 34

Accordingly, Defendant is subject to the overtime provisions of the Fair Labor Standards Act.

## VI. CONCLUSION

In light of the foregoing, and the Supreme Court's direction that the FLSA is to be construed "liberally,"[21] the Motion for Partial Summary Judgment at Docket 9, renewed at **Docket 53** is **GRANTED**. Defendant's oral Motion for Summary Judgment is DENIED.

**IT IS SO ORDERED.**

ENTERED this 22nd day of January, 2009.

S/RALPH R. BEISTLINE
UNITED STATES
  DISTRICT JUDGE

---

[21] See *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 296 (1985).

App. 35

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ROBERT PROBERT;
LORETTA PROBERT,

      Plaintiffs-Appellees,

GENE GRISSOM; SANDRA
GRISSOM; JOHN GRIMES;
DONNA GRIMES;
KENNETH MCDANIELS;
LEONA MCDANIELS;
ERIC CLONINGER;
DEBRA CLONINGER,

      Plaintiff-Intervenors-
      Appellees,

    v.

FAMILY CENTERED
SERVICES OF ALASKA, INC.;
JOHN W. REGITANO;
KATHY CANNOE; SUSAN
DALE; LONNIE HOVDE;
DEBORAH L. COXON,

      Defendants-Appellants.

No. 09-35703

D.C. No.
4:07-cv-00030-RRB

ORDER

(Filed Aug. 18, 2011)

Before: SCHROEDER, O'SCANNLAIN, and CLIFTON,
Circuit Judges.

    The panel has voted to deny the petition for rehearing and petition for rehearing en banc.

    The full court has been advised of the petition for rehearing en banc and no judge has requested a vote

App. 36

on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing and petition for rehearing en banc, filed July 14, 2011, are denied.

App. 37

United States Department of Labor
Wage and Hour Division
Field Operations Handbook
Chapter 12, Enterprise Coverage –
Fair Labor Standards Act
June 22, 1990

\*      \*      \*

**FOH §12g00**

*Statutory Provisions*

(a)   Sec 3(s)(5) brings within the coverage of the Act employees employed in an enterprise which "is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution a school for mentally or physically handicapped or gifted children, an elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is public or private or operated for profit or not for profit)".

(b)   Effective 7/1/72, the Education Amendments of 1972 amended Sec 3(s)(5) to include preschools within the coverage of the act. Sec 3(s)(5) as amended reads as follows:

\*      \*      \*

"(5)   is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution, a school for mentally

App. 38

or physically handicapped or gifted children, a pre-school, elementary or secondary school or an institution of higher education (regardless of whether or not such hospital, institution, or school is public or private or operated for profit or not for profit), or"

*    *    *

### FOH §12g02

*Institutions primarily engaged in the care of the sick, the aged, the mentally ill or defective residing on the premises defined*

Such an institution (other than a hospital) is an institution primarily engaged in (i.e., more that 50% of the income is attributable to) providing domiciliary care to individuals who reside on the premises and who, if suffering from physical or mental infirmity or sickness of any kind, will require only general treatment or observation of a less critical nature than that provided by a hospital. Such institutions are not limited to nursing homes, whether licensed or not licensed, but include those institutions generally known as nursing homes, rest homes, convalescent homes, homes for the elderly and infirm, and the like. (*See also* Field Operations Handbook 25i and 12g12.)

*    *    *

### FOH §12g12

*Institutions for the residential care of emotionally disturbed persons*

For enforcement purposes, a private institution for the residential care of emotionally disturbed persons

would come within the coverage of Sec 3(s)(5) of the Act if more than 50% of its residents have been admitted by a qualified physician, psychiatrist, or psychologist. For purposes of the 50% test, the term "admitted" includes evaluations of mental or emotional disturbance by a qualified physician, psychiatrist, or psychologist either subsequent to admission to the institution or preceding admission and being the cause for referral.

*       *       *

## FOH §12g14

*"Community living centers" and "halfway houses" for retarded persons*

For enforcement purposes, a private institution for mentally retarded persons, sometimes called a "community living center" or a "halfway house", would come within the coverage of Sec 3(s)(5) of the Act, if more than 50% of its residents have an IQ of 69 or less as determined on the basis of a valid test administered by a qualified professional, and a reasonable degree of "care" is being provided. An IQ of 69 or below is considered "mentally defective". "Care" may include such services as waking up residents in the morning to see that they get breakfast in time to leave for work, picking some up at night after work, special counseling, instruction in money management and health matters and generally keeping an eye on them and listening to problems. (*See also* Field Operations Handbook 12g02 and 12g12.)

App. 40

**FOH §12g15**

*"Care" of the aged and infirm*

(a)   apartments", "homes for . . . ", "senior citizens retirement homes" and the like provide residences and other services for older persons. In order to determine whether such an establishment may qualify as an "institution primarily engaged in the care of the . . . aged . . . ", one of the key questions is whether "care" is provided.

(b)   The word "care" as it is used in Sec 3(s)(5) is subject to a broad interpretation and encompasses routine custodial services and attention. Institutions which care for the aged, (as well as other institutions which care for the sick, or for the mentally ill or defective), can vary from extremely well-serviced establishments to those of a custodial type of servicing. Where an establishment must take full responsibility of any nursing home or hospital care a resident requires, this constitutes "care" of the resident. However, it does not necessarily follow that to be a home for the aged, the establishment must be a nursing home or otherwise medically oriented. If the aged occupants, in addition to receiving food, shelter, and laundry, must be closely watched because their senile condition necessitates their being supervised and guided, even though they receive no medical attention, they may, depending upon all the facts, be receiving "care" for the aged within the meaning of Sec 3(s)(S). (*See also* Field Operations Handbook 12g02, 12g12, and 12g14.)